UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TOM JAMES COMPANY, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 303 CV 0596 (JBA) |
| V. | : | |
| TRACE APPAREL LLC and<br>J. TRACY GREEN, | : | |
| Defendants. | : | MAY 19, 2003<br>JURY TRIAL DEMANDED |

### AMENDED VERIFIED COMPLAINT

The plaintiff, Tom James Company ("Tom James" or "Plaintiff"), by and through its attorneys, Halloran & Sage LLP, alleges for its amended complaint against the defendants, Trace Apparel LLC ("Trace Apparel") and J. Tracy Green ("Mr. Green") (collectively "Defendants"), as follows:

### PARTIES

1. Tom James is a Tennessee corporation with its principal place of business in Franklin, Tennessee, and conducts business in the State of Connecticut.

2. Trace Apparel is a limited liability company organized pursuant to the laws of the State of Connecticut with its principal place of business in Bloomfield, Connecticut.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

3.  Mr. Green is an individual and a Connecticut citizen and is believed to be residing at 13 Pheasant Lane, Bloomfield, Connecticut 06002. Mr. Green serves as managing director of Trace Apparel.

## JURISDICTION AND VENUE

4.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.  The Court has personal jurisdiction over Defendants because they are citizens of the State of Connecticut as Trace Apparel transacts business and Mr. Green resides in the District of Connecticut.

6.  Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(a), as Defendants reside in the District of Connecticut and a substantial part of the events or omissions giving rise to these claims occurred in the District of Connecticut.

## BACKGROUND AND FACTS COMMON TO ALL COUNTS

7. This case involves unlawful, unfair, and unethical competitive conduct by Defendants. Tom James has commenced this action to protect its legitimate business interests, to enjoin Defendants' unlawful, unfair, and unethical business conduct, and to recover significant economic losses caused by Defendants' unlawful, unfair, and unethical conduct.

-2-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### Tom James

8. Tom James' business involves the manufacture and retail sale of garments and wardrobe accessories, including high-quality men's and women's custom-made and made-to-measure clothing.

9. Tom James does not operate retail stores. Additionally, Tom James does not engage in traditional forms of advertising. Rather, Tom James advertises through its sales professionals' efforts, its customer service, word of mouth, the Internet, and distribution of selected literature.

10. Tom James obtains sales through personal presentations made by its trained sales persons ("sales professionals") to qualified customers in their offices and homes.

### Tom James' Customer Information and Trade Secrets and Tom James' Efforts to Keep Its Information and Secrets Confidential

11. Tom James' financial success is based largely on Tom James' ability, through its sales professionals' training, networking, and effort, to identify, sell, and service financially successful customers.

12. Tom James' customers are not easily obtained. Tom James establishes customer relationships through direct person-to-person sales that require sales professionals to take a systematic approach to each workday, utilize good communication skills, utilize perseverance, and engage in considerable follow-up with customers and potential customers.

– 3 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

13. In order for Tom James to obtain a single order from one of Tom James' current customers, a sales professional and his or her sales assistant generally will make as many as twenty-five telephone calls to current customers. These twenty-five calls result in as few as six appointments. These appointments, in turn, result in typically no more than two or three presentations. These presentations, in turn, result in one order.

14. In order for Tom James to obtain a single order from a potential customer, the process is more difficult. A sales professional and his or her sales assistant may place telephone calls to the offices of as many as eighty prospective customers. During these eighty telephone calls, Tom James' sales professionals and sales assistants will speak personally with approximately only seventeen prospects. These prospects, in turn, result in up to seven appointments. These appointments, in turn, result in five presentations. These presentations, in turn, typically result in two orders.

15. Each order requires the sales professional to measure the customer, enter the order, coordinate with the origin of manufacture or distribution, assist in shipping, fitting, and follow-up customer service, and manage the account receivable. The sales professionals are given significant administrative support by Tom James in terms of their office staff, customer services, accounting, manufacturing, deliveries, and tailoring necessary to consummate each customer order.

16. Tom James' relationship with each of its customers is dependent in part upon the trust and competency placed by the customer in his or her sales professional. To

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

maintain these customer relationships, Tom James' sales professionals keep extensive customer lists with specific information regarding the identity, specifications, and purchasing patterns of each customer. This customer information created and maintained by Tom James is a valuable asset belonging to Tom James.

17. Tom James expends substantial effort to maintain the confidentiality of its customer information. For example, Tom James requires each employee to sign and agree to the terms of an employment agreement, pursuant to which the employee agrees not to disclose any of Tom James' customer information to anyone outside of Tom James.

18. Additionally, Tom James requires each employee to sign and agree to the terms set forth in Tom James' conflict of interest policy. The conflict of interest policy provides that lists of customer identities and contact information are considered Tom James' proprietary information. The conflict of interest policy also identifies a number of potential conflicts of interest that must be avoided, including: (1) use of confidential information; (2) rendition of services to other concerns; (3) failing to give full-time services to the company; and (4) competition with the company.

19. Additionally, Tom James requires each employee to sign and agree to the terms set forth in Tom James' electronic mail policy. Tom James' electronic mail policy specifically prohibits employees from using Tom James' electronic mail system to communicate trade secrets and other confidential information to anyone outside of Tom James.

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

20. Additionally, the Information Systems Department of Tom James has implemented a confidentiality banner on Tom James' website. It has also incorporated a confidentiality banner on a number of important business records and forms that are used in the daily ordinary course of business of Tom James and its hundreds of sales professionals and office professionals. These business forms, which are automatically maintained with a confidentiality banner incorporated in them, include, but are not limited to, contact information, order summaries, outstanding tickets, and return worksheets. Samples of these forms demonstrating Tom James' use of the confidentiality banners are incorporated herein and are attached hereto as Exhibit 1.

### The Commencement of Mr. Green's Employment with Tom James

21. Mr. Green was employed by Tom James for more than 13 years, from 1988 to 2001.

22. At the time Mr. Green was hired, in consideration for his employment, he entered into an employment agreement, dated August 30, 1988, with Tom James (the "Employment Agreement"). The Employment Agreement has remained in effect since that date. It was supplemented from time to time with different pay plans. A copy of the Employment Agreement is incorporated herein and is attached hereto as Exhibit 2.

23. Pursuant to the Employment Agreement, Mr. Green agreed that he would devote his time, attention, skills, and energies to the business and exclusive sales of the products of Tom James.

– 6 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

24. Pursuant to the Employment Agreement, Mr. Green also agreed to a "Disclosure of Information" provision, which sets forth as follows:

> [Mr. Green] recognizes and acknowledges that as a result of his . . . employment by [Tom James] he . . . has received and will become familiar with and acquire knowledge of confidential information and trade secrets including, among other things, [Tom James'] customer list, customer requirements, products, prices, costs, and sales techniques and methods developed by [Tom James]. [Mr. Green] therefore agrees that during the term of his . . . employment and for two (2) years after the termination of his . . . employment with [Tom James] for any reason whatsoever, he . . . will not disclose to any person, firm, or corporation information or trade secrets in any capacity except as an employee of [Tom James] and in the furtherance of the interests of [Tom James]. In the event of a breach or threatened breach by [Mr. Green] of the provisions of this paragraph, [Tom James] shall be entitled to an injunction restraining [Mr. Green] from disclosing or using, in whole or in part, such confidential information or trade secrets as have been disclosed or are threatened to be disclosed. The parties hereto agree that nothing herein shall be construed as prohibiting [Tom James] from pursuing any other remedies available to it for any such breach or threatened breach, including the recovery of damages from [Mr. Green]. [Mr. Green] agrees that should injunctive or other legal or equitable action be necessary and if successful that he . . . will be liable to [Tom James] for its legal fees, expenses and court costs required to obtain and enforce the court relief in question.

25. Tom James has not authorized Mr. Green, either orally or in writing, to use or disclose, or to permit any unauthorized person or entity to use or disclose, the confidential and proprietary information Mr. Green obtained regarding Tom James' customers during his employment at Tom James. Additionally, Tom James has not

– 7 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

authorized Mr. Green to interfere with Tom James' customer relationships through the use of any such information in the business of any person or entity other than Tom James.

26. Pursuant to the Employment Agreement, Mr. Green further agreed to the following "Restrictive Covenant" provision, which sets forth that:

> [Mr. Green] expressly recognizes and agrees that, as a result of employment by and training by [Tom James], he will acquire valuable information and knowledge concerning [Tom James'] customers, products, prices, and sales techniques and methods developed by [Tom James]. [Mr. Green], therefore, agrees that, during the period of his employment and for a period of two (2) years after termination of his employment with [Tom James] for any reason whatsoever (and regardless of whether such termination is due to [Mr. Green's] quitting or his . . . being discharged by [Tom James]), he will not engage, either individually or as an owner, employee, promoter, officer, or director of any other person or corporation directly or indirectly, in any made-to-measure or custom-tailored clothing business that is competitive with the business of [Tom James] within geographical boundaries of the sales territory in which [Mr. Green] calls on, solicits, or deals with customers or is assigned as a Salesperson while employed by [Tom James]. The parties agree that the present sales territory is hereby defined as the following: the City of Hartford, CT, plus fifty (50) miles in every direction measured from the city boundaries.
>
> [Mr. Green] and [Tom James] agree that the aforementioned sales territory may be modified by a written addendum to a different sales territory in the event of a mutually agreed-upon transfer.
>
> [Mr. Green] expressly agrees that, upon a breach or violation of any of the provisions of the restrictive covenant, [Tom James], in addition to all other remedies as provided by law,

– 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

      shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction.

27. Upon information and belief, Mr. Green never complained to any supervisor or executive of Tom James during his employment with Tom James that either the "Disclosure of Information" provision or the "Restrictive Covenant" provision set forth in the Employment Agreement, as set forth in Paragraphs 23 and 25 of this Amended Verified Complaint, was unfair or unreasonable. To the contrary, Mr. Green, as a sales leader, had other newly-hired sales professionals sign similar employment agreements that contained essentially the same provisions.

28. Additionally, Mr. Green signed Tom James' Conflict of Interest Policy on or about February 15, 1994. A copy of the Conflict of Interest Policy is incorporated herein and is attached hereto as Exhibit 3.

29. Additionally, Mr. Green signed Tom James' Electronic Mail Policy. A copy of Tom James' Electronic Mail Policy is incorporated herein and is attached hereto as Exhibit 4.

### The Tom James Way

30. Following commencement of his employment with Tom James, Mr. Green attended and completed Tom James' sales school during August and September 1988. During sales school, Mr. Green was trained by experienced Tom James sales leaders, executive leadership, and other sales professionals.

-9-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

31. At sales school, Mr. Green was provided with intensive training on the various aspects of Tom James' method of conducting business. In addition to learning, among other things, established and proven direct-selling principles in general, Mr. Green also received from Tom James (at sales school and thereafter) specific training regarding product features, body types, identifying likely Tom James customers, cold-calling, scheduling, one-on-one presentations, measuring, order entry, deliveries, fitting, promoting wardrobe accessories, collecting purchase payments, obtaining and calling on referrals, follow-up, how to attain leadership in Tom James, and how to increase his personal net worth while working for Tom James (collectively, all of these methods are referred to in this Amended Verified Complaint as the "Tom James Way").

32. Upon completion of sales school, Mr. Green received from Tom James a kit that included measuring devices, clothing swatch cards, product promotional items, sales booklets, motivational literature, and other accessories to help Mr. Green get started in his new clothing career. The value of Tom James' training, training aids, and sales aids received by Mr. Green totaled more than $5,000.00.

33. Upon information and belief, the training described above relative to the direct sales of quality garments and wardrobe accessories, which Mr. Green received as a result of being hired by Tom James, was not generally available in retailing in the United States at the time of his hire.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### Mr. Green's Employment with Tom James

34. Upon signing the Employment Agreement and completing sales school, Mr. Green was assigned to a territory under the daily supervision of a sales leader. Mr. Green was expected to, and paid by Tom James to, begin his clothing career of growing Tom James' business by calling on prospects, customers, and referrals in his assigned territory.

35. Mr. Green worked as a sales professional and as a sales leader for Tom James, and was assigned principally to the greater Hartford, Connecticut, area. Mr. Green's sales territory and duties were part of the Achiever Division of Tom James, which covers essentially the northeast corridor of the United States from New York to Boston.

36. Mr. Green quickly learned and utilized The Tom James Way to become a promising sales professional with unusually high sales. He achieved Tom James' President's Club recognition for selling over 1,000 units of merchandise in only his second year at Tom James – a uniquely successful achievement. Mr. Green proceeded to receive President's Club recognition, as well as extra Diamond recognition, in a number of years during his thirteen-year employment with Tom James, becoming one of Tom James' top sales professionals over that period of time.

37. Through Mr. Green's foregoing training and mentoring, and by seeking and servicing Tom James' customers, Mr. Green received, became familiar with, and acquired special knowledge of, Tom James' customer information, as well as additional

– 11 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

confidential and proprietary information and trade secrets, including, among other things, Tom James' products, manufacturing plans, marketing plans, unpublished financial information, unpublished personnel information, unpublished legal information, product roll-outs, swatch cards, cost information, and price information, as well as sales techniques and methods uniquely developed by Tom James over many years of considerable effort, experience, and expense.

### Mr. Green's Compensation

38. Tom James compensated Mr. Green for his employment with Tom James. Throughout his employment with Tom James, Mr. Green received a monthly draw that was advanced against commissions earned.

39. Mr. Green received total earnings in excess of $1.8 Million in connection with his employment with Tom James. In his last full five years of employment with Tom James, Mr. Green received total earnings (i.e., earned commissions, profit bonuses, and leadership pay), in excess of $881,000.00, averaging approximately $176,000.00 per year in total annual earnings.

40. Tom James also gave Mr. Green leadership responsibilities, starting in the years 1989-1990. Tom James expected Mr. Green to grow Tom James' leadership organization by recruiting and hiring qualified and promising sales persons, training and mentoring them, managing their clothing careers and personal habits of success, promoting their personal financial growth. For those extra duties, Tom James paid Mr.

– 12 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Green leadership pay, which was part of his total earnings, based on the sales revenue and profits generated by the sales professionals within the organization that Mr. Green was expected to build and grow. Tom James paid Mr. Green leadership pay exceeding $683,000.00 during his employment with Tom James, averaging more than $56,500.00 per year in leadership pay, excluding his first and last years of employment with Tom James.

41. Additionally, Tom James afforded Mr. Green several opportunities to be an equity owner of Tom James' privately-held stock. The value of the stock is determined annually by the Board of Directors of Tom James. The Board of Directors uses a formula of dividing the projected after-tax profits by the projected number of shares issued in order to calculate projected earnings per share. The Board of Directors then multiplies the earnings per share by a multiple to produce the stock value. Principally, the stock value is determined by the sales revenues generated by Tom James' sales force and by the success or lack of success of Tom James' sales leaders. As Tom James nets more profit, projected earnings increase and the value per share increases correspondingly.

42. Mr. Green benefited significantly from a number of stock ownership opportunities made available to him by Tom James. During his employment with Tom James, Mr. Green either subscribed to, or was awarded as a bonus, 56,806 shares of stock in Tom James with a value of greater than $343,000.00, for which he paid a total of $128,775.87. Over time, Tom James has bought back a certain amount of that stock,

- 13 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and has paid Mr. Green $200,882.17 for it. Mr. Green has enjoyed only gains for these stock holdings since the date he began his employment with Tom James. The current value of the remaining stock held by Mr. Green totals approximately $142,595.00.

43. Tom James also maintains a 401K Plan and a Profit-Sharing Plan for its qualified employees, including Mr. Green, who was 100-percent vested in both the 401K Plan and the Profit-Sharing Plan when he terminated his employment with Tom James. The Schwab Plan account that Tom James maintained for Mr. Green was over $137,000.00 in December 2002. Of this amount, Mr. Green's personal investments and investment earnings totaled approximately $87,274.00, which Tom James matched with contributions that also have accrued investment earnings of $16,181.00. In addition, Tom James has contributed to Mr. Green's profit sharing account. These contributions, with accrued investment earnings, totaled approximately $39,370.00 in December 2002.

### Mr. Green's Resignation from Tom James

44. During most of the 1990s, Mr. Green managed, and was compensated to lead, Tom James' employees within the Achiever Division of Tom James. This division of Tom James was once known as Infinity, and later became known as Achiever Northeast.

45. Mr. Green's management of the sales professionals over which Mr. Green had direct supervision came into question during the last few years of his leadership at Tom James.

– 14 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

46. The organization of Tom James for which Mr. Green was responsible was restructured in the Fall of 2000. Mr. Green was subsequently relieved of certain leadership responsibilities.

47. Upon information and belief, Mr. Green advised his supervisor that he intended to leave the employ of Tom James following the restructuring. Following conversations and correspondence with members of Tom James' management, Mr. Green elected to remain with Tom James in late 2000.

48. In conjunction with Mr. Green electing to remain with Tom James, Tom James provided Mr. Green with a special and enhanced pay plan not made generally available to others. Additionally, Tom James excused Mr. Green from attending or presenting daily and weekly sales meetings, as is required of all other sales professionals and their leaders. Tom James directed Mr. Green to sell as best he could in the greater Hartford, Connecticut, area under the supervision of an experienced sales leader in Texas whom Mr. Green had known and admired for most of his career at Tom James.

49. Under Mr. Green's new pay plan, Mr. Green received an increase in his commissions earned on personal sales to offset the loss of his leadership pay.

50. Mr. Green continued his employment with Tom James throughout 2001 under the foregoing preferential conditions following the restructuring of the organization and implementation of the new pay plan.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

51. Despite the restructuring, the reduction in leadership duties, and the new pay plan, while selling under the supervision of a close friend in management, and contrary to his stellar sales record at Tom James from 1988 to 2000, Mr. Green's performance with Tom James, and the sales revenues generated by his orders with Tom James, significantly declined during 2001.

52. Total revenues from Mr. Green's sales dropped from $529,881.00 in 2000 to $344,888.00 in 2001. Units sold by Mr. Green declined from 1189.03 units in 2000 to 767.79 units in 2001, a 35.43-percent decrease.

53. Mr. Green tendered a letter of resignation, dated December 12, 2001, to his supervisor announcing that he intended to resign from Tom James.

54. When a sales professional leaves Tom James, Tom James employs transitional measures to ensure that it maintains the customer relationships that were developed by Tom James through that sales professional. These transitional measures include communicating with the former sales professional and his customers, assigning other sales professionals to those customers, and offering those customers discounts and other incentives to encourage them to continue to purchase products from Tom James. If Tom James is not able to employ these measures, it is likely to lose customers serviced by the former sales professionals.

55. Mr. Green failed to follow reasonable transitional measures normally employed by Tom James upon the departure of a sales professional. Mr. Green knew

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that Tom James normally employed transitional measures to ensure that customer relationships did not decrease upon the departure of a sales professional.

56. Specifically, upon information and belief, Mr. Green provided his supervisor with very short notice of his resignation. Additionally, Mr. Green did not advise the customers with whom he worked that Tom James would continue to be available to provide for their wardrobe needs. Further, Mr. Green did not introduce these customers to a newly-assigned Tom James sales professional, and Mr. Green did not discuss the information regarding these customers, including the identity of the customers, with any newly-assigned sales professional.

### Mr. Green's Misappropriation of Tom James'
### Customer Information and Trade Secrets

57. On or about December 28, 2001, Mr. Green formed Trace Apparel for purposes of unfairly competing directly with Tom James. Upon information and belief, Mr. Green continues to engage in the custom-made and made-to-measure clothing business within a fifty-mile radius of Hartford, Connecticut, by and through his operation of Trace Apparel.

58. Upon information and belief, Defendants solicited sales in 2002, and continue to solicit sales of custom clothing to customers of Tom James to whom Mr. Green previously sold Tom James' products while employed by Tom James.

59. Upon information and belief, Defendants have utilized, and continue to utilize, and have otherwise disclosed Tom James' customer information and other confidential

- 17 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and proprietary information in their business operations in order to directly compete with Tom James and give themselves a competitive advantage to Tom James' detriment.

60. Upon information and belief, Defendants have utilized, and continue to utilize, Tom James' customer information, trade secrets, and other confidential information to solicit Tom James' customers in their business operations in an effort to divert business from Tom James, and for Defendants' own profit.

61. Upon information and belief, Defendants have encouraged, advised, induced, or otherwise solicited other Tom James sales professionals to leave their respective employment with Tom James to sell clothing in competition with Tom James.

62. On May 7, 2002, Tom James sent correspondence to Mr. Green, by certified mail and overnight courier, informing him that it was Tom James' position that he was violating the terms of the Employment Agreement by directly taking away Tom James' customers by using customer lists and/or recollections of Tom James' customers' identities and customer histories, and that Tom James fully intended to use all resources to uphold and enforce the Employment Agreement and its covenants. In the May 7, 2002, correspondence, legal counsel for Tom James informed Mr. Green that the identity and customer information regarding the individual clients in the Hartford area were protected trade secrets and proprietary information of Tom James. Tom James requested that Mr. Green refrain from making unauthorized contact with these customers. A true and accurate copy of the May 7, 2002, correspondence is incorporated herein and is attached hereto as Exhibit 5.

- 18 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

63. In the May 7, 2002, correspondence, corporate legal counsel for Tom James also demanded the immediate return of all documents and electronic media containing Tom James' customer information and other confidential information and trade secrets.

64. Mr. Green did not respond to Tom James' May 7, 2002, correspondence.

65. On October 18, 2002, Tom James sent additional correspondence to Mr. Green, by overnight courier, informing him again that it was Tom James' position that Mr. Green was violating the terms of the Employment Agreement. Tom James requested that Mr. Green cease any activities involving solicitation of Tom James' clients in the Hartford area. A copy of the October 18, 2002, correspondence is incorporated herein and is attached hereto as Exhibit 6.

66. Mr. Green did not respond to Tom James' October 18, 2002, correspondence.

67. During the fall of 2002, the founder of Tom James attempted on a number of occasions to contact Mr. Green for the purpose of meeting with him personally to discuss Mr. Green's stock in the company and to encourage Mr. Green to cease harming Tom James and its employees by misappropriating or otherwise interfering with its customer relations. Although Mr. Green did speak briefly with the founder on one occasion and indicated that he would later speak with the founder, Mr. Green refused to meet with the founder of Tom James for further discussions.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### Tom James' Loss of Revenues

68. As a result of the foregoing conduct by Defendants, Tom James has been damaged. Since Mr. Green resigned from Tom James, other Tom James sales professionals have attempted to sell to the customers previously serviced by Mr. Green. Many of those customers have not purchased from Tom James since Mr. Green left its employ. Tom James has experienced a loss in revenues caused by these lost purchasing opportunities.

69. Additionally, Tom James has suffered considerable loss of business opportunity that would have been realized by purchases from the customers formerly serviced by Mr. Green who now conduct their clothing business with Defendants.

70. During his employment with Tom James, Mr. Green sold products to and serviced hundreds of Tom James' customers. During the period of 1997-2002, Mr. Green sold and serviced approximately 427 customers of Tom James. At least eighty customers of that total group each purchased over $10,000.00 worth of merchandise between 1997 and 2002.

71. During 2001, sales revenues for Tom James generated from Mr. Green's orders amounted to approximately $344,888.00, for average sales of $1,254.00 per customer. In 2000, these sales revenues totaled approximately $529,881.00, for average sales of $960.00 per customer. Those high numbers compare with sales revenues of approximately $608,000.00 in 1999, $537,000.00 in 1998, and $493,000.00 in 1997, all generated by Mr. Green's sales to Tom James' customers.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105