UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TOM JAMES COMPANY,                    :    CIVIL ACTION NO.:
                                      :    303 CV 0596 (JBA)
        Plaintiff,                    :
                                      :
V.                                    :
                                      :
TRACE APPAREL LLC and                 :
J. TRACY GREEN,                       :
                                      :
        Defendants.                   :    MAY 19, 2003
                                           JURY TRIAL DEMANDED

## AMENDED VERIFIED COMPLAINT

The plaintiff, Tom James Company ("Tom James" or "Plaintiff"), by and through

its attorneys, Halloran & Sage LLP, alleges for its amended complaint against the

defendants, Trace Apparel LLC ("Trace Apparel") and J. Tracy Green ("Mr. Green")

(collectively "Defendants"), as follows:

### PARTIES

1.    Tom James is a Tennessee corporation with its principal place of business

in Franklin, Tennessee, and conducts business in the State of Connecticut.

2.    Trace Apparel is a limited liability company organized pursuant to the laws

of the State of Connecticut with its principal place of business in Bloomfield,

Connecticut.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

3.    Mr. Green is an individual and a Connecticut citizen and is believed to be residing at 13 Pheasant Lane, Bloomfield, Connecticut 06002.  Mr. Green serves as managing director of Trace Apparel.

## JURISDICTION AND VENUE

4.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.    The Court has personal jurisdiction over Defendants because they are citizens of the State of Connecticut as Trace Apparel transacts business and Mr. Green resides in the District of Connecticut.

6.    Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(a), as Defendants reside in the District of Connecticut and a substantial part of the events or omissions giving rise to these claims occurred in the District of Connecticut.

## BACKGROUND AND FACTS COMMON TO ALL COUNTS

7.  This case involves unlawful, unfair, and unethical competitive conduct by Defendants.  Tom James has commenced this action to protect its legitimate business interests, to enjoin Defendants' unlawful, unfair, and unethical business conduct, and to recover significant economic losses caused by Defendants' unlawful, unfair, and unethical conduct.

- 2 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**Tom James**

8. Tom James' business involves the manufacture and retail sale of garments and wardrobe accessories, including high-quality men's and women's custom-made and made-to-measure clothing.

9. Tom James does not operate retail stores. Additionally, Tom James does not engage in traditional forms of advertising. Rather, Tom James advertises through its sales professionals' efforts, its customer service, word of mouth, the Internet, and distribution of selected literature.

10. Tom James obtains sales through personal presentations made by its trained sales persons ("sales professionals") to qualified customers in their offices and homes.

**Tom James' Customer Information and Trade Secrets and
Tom James' Efforts to Keep Its Information and Secrets Confidential**

11. Tom James' financial success is based largely on Tom James' ability, through its sales professionals' training, networking, and effort, to identify, sell, and service financially successful customers.

12. Tom James' customers are not easily obtained. Tom James establishes customer relationships through direct person-to-person sales that require sales professionals to take a systematic approach to each workday, utilize good communication skills, utilize perseverance, and engage in considerable follow-up with customers and potential customers.

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

13. In order for Tom James to obtain a single order from one of Tom James' current customers, a sales professional and his or her sales assistant generally will make as many as twenty-five telephone calls to current customers. These twenty-five calls result in as few as six appointments. These appointments, in turn, result in typically no more than two or three presentations. These presentations, in turn, result in one order.

14. In order for Tom James to obtain a single order from a potential customer, the process is more difficult. A sales professional and his or her sales assistant may place telephone calls to the offices of as many as eighty prospective customers. During these eighty telephone calls, Tom James' sales professionals and sales assistants will speak personally with approximately only seventeen prospects. These prospects, in turn, result in up to seven appointments. These appointments, in turn, result in five presentations. These presentations, in turn, typically result in two orders.

15. Each order requires the sales professional to measure the customer, enter the order, coordinate with the origin of manufacture or distribution, assist in shipping, fitting, and follow-up customer service, and manage the account receivable. The sales professionals are given significant administrative support by Tom James in terms of their office staff, customer services, accounting, manufacturing, deliveries, and tailoring necessary to consummate each customer order.

16. Tom James' relationship with each of its customers is dependent in part upon the trust and competency placed by the customer in his or her sales professional. To

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

maintain these customer relationships, Tom James' sales professionals keep extensive customer lists with specific information regarding the identity, specifications, and purchasing patterns of each customer. This customer information created and maintained by Tom James is a valuable asset belonging to Tom James.

17. Tom James expends substantial effort to maintain the confidentiality of its customer information. For example, Tom James requires each employee to sign and agree to the terms of an employment agreement, pursuant to which the employee agrees not to disclose any of Tom James' customer information to anyone outside of Tom James.

18. Additionally, Tom James requires each employee to sign and agree to the terms set forth in Tom James' conflict of interest policy. The conflict of interest policy provides that lists of customer identities and contact information are considered Tom James' proprietary information. The conflict of interest policy also identifies a number of potential conflicts of interest that must be avoided, including: (1) use of confidential information; (2) rendition of services to other concerns; (3) failing to give full-time services to the company; and (4) competition with the company.

19. Additionally, Tom James requires each employee to sign and agree to the terms set forth in Tom James' electronic mail policy. Tom James' electronic mail policy specifically prohibits employees from using Tom James' electronic mail system to communicate trade secrets and other confidential information to anyone outside of Tom James.

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

20. Additionally, the Information Systems Department of Tom James has implemented a confidentiality banner on Tom James' website. It has also incorporated a confidentiality banner on a number of important business records and forms that are used in the daily ordinary course of business of Tom James and its hundreds of sales professionals and office professionals. These business forms, which are automatically maintained with a confidentiality banner incorporated in them, include, but are not limited to, contact information, order summaries, outstanding tickets, and return worksheets. Samples of these forms demonstrating Tom James' use of the confidentiality banners are incorporated herein and are attached hereto as Exhibit 1.

### The Commencement of Mr. Green's Employment with Tom James

21. Mr. Green was employed by Tom James for more than 13 years, from 1988 to 2001.

22. At the time Mr. Green was hired, in consideration for his employment, he entered into an employment agreement, dated August 30, 1988, with Tom James (the "Employment Agreement"). The Employment Agreement has remained in effect since that date. It was supplemented from time to time with different pay plans. A copy of the Employment Agreement is incorporated herein and is attached hereto as Exhibit 2.

23. Pursuant to the Employment Agreement, Mr. Green agreed that he would devote his time, attention, skills, and energies to the business and exclusive sales of the products of Tom James.

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

24. Pursuant to the Employment Agreement, Mr. Green also agreed to a

"Disclosure of Information" provision, which sets forth as follows:

> [Mr. Green] recognizes and acknowledges that as a result of
> his . . . employment by [Tom James] he . . . has received
> and will become familiar with and acquire knowledge of
> confidential information and trade secrets including, among
> other things, [Tom James'] customer list, customer
> requirements, products, prices, costs, and sales techniques
> and methods developed by [Tom James]. [Mr. Green]
> therefore agrees that during the term of his . . . employment
> and for two (2) years after the termination of his . . .
> employment with [Tom James] for any reason whatsoever,
> he . . . will not disclose to any person, firm, or corporation
> information or trade secrets in any capacity except as an
> employee of [Tom James] and in the furtherance of the
> interests of [Tom James]. In the event of a breach or
> threatened breach by [Mr. Green] of the provisions of this
> paragraph, [Tom James] shall be entitled to an injunction
> restraining [Mr. Green] from disclosing or using, in whole or
> in part, such confidential information or trade secrets as
> have been disclosed or are threatened to be disclosed. The
> parties hereto agree that nothing herein shall be construed
> as prohibiting [Tom James] from pursuing any other
> remedies available to it for any such breach or threatened
> breach, including the recovery of damages from [Mr. Green].
> [Mr. Green] agrees that should injunctive or other legal or
> equitable action be necessary and if successful that he . . .
> will be liable to [Tom James] for its legal fees, expenses and
> court costs required to obtain and enforce the court relief in
> question.

25. Tom James has not authorized Mr. Green, either orally or in writing, to use or

disclose, or to permit any unauthorized person or entity to use or disclose, the

confidential and proprietary information Mr. Green obtained regarding Tom James'

customers during his employment at Tom James. Additionally, Tom James has not

– 7 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

authorized Mr. Green to interfere with Tom James' customer relationships through the use of any such information in the business of any person or entity other than Tom James.

26. Pursuant to the Employment Agreement, Mr. Green further agreed to the following "Restrictive Covenant" provision, which sets forth that:

> [Mr. Green] expressly recognizes and agrees that, as a result of employment by and training by [Tom James], he will acquire valuable information and knowledge concerning [Tom James'] customers, products, prices, and sales techniques and methods developed by [Tom James]. [Mr. Green], therefore, agrees that, during the period of his employment and for a period of two (2) years after termination of his employment with [Tom James] for any reason whatsoever (and regardless of whether such termination is due to [Mr. Green's] quitting or his . . . being discharged by [Tom James]), he will not engage, either individually or as an owner, employee, promoter, officer, or director of any other person or corporation directly or indirectly, in any made-to-measure or custom-tailored clothing business that is competitive with the business of [Tom James] within geographical boundaries of the sales territory in which [Mr. Green] calls on, solicits, or deals with customers or is assigned as a Salesperson while employed by [Tom James]. The parties agree that the present sales territory is hereby defined as the following: the City of Hartford, CT, plus fifty (50) miles in every direction measured from the city boundaries.

> [Mr. Green] and [Tom James] agree that the aforementioned sales territory may be modified by a written addendum to a different sales territory in the event of a mutually agreed-upon transfer.

> [Mr. Green] expressly agrees that, upon a breach or violation of any of the provisions of the restrictive covenant, [Tom James], in addition to all other remedies as provided by law,

- 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

shall be entitled as a matter of right to injunctive relief in any
court of competent jurisdiction.

27.  Upon information and belief, Mr. Green never complained to any supervisor
or executive of Tom James during his employment with Tom James that either the
"Disclosure of Information" provision or the "Restrictive Covenant" provision set forth in
the Employment Agreement, as set forth in Paragraphs 23 and 25 of this Amended
Verified Complaint, was unfair or unreasonable.  To the contrary, Mr. Green, as a sales
leader, had other newly-hired sales professionals sign similar employment agreements
that contained essentially the same provisions.

28.  Additionally, Mr. Green signed Tom James' Conflict of Interest Policy on or
about February 15, 1994.  A copy of the Conflict of Interest Policy is incorporated herein
and is attached hereto as Exhibit 3.

29.  Additionally, Mr. Green signed Tom James' Electronic Mail Policy.  A copy of
Tom James' Electronic Mail Policy is incorporated herein and is attached hereto as
Exhibit 4.

## The Tom James Way

30.  Following commencement of his employment with Tom James, Mr. Green
attended and completed Tom James' sales school during August and September 1988.
During sales school, Mr. Green was trained by experienced Tom James sales leaders,
executive leadership, and other sales professionals.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

31. At sales school, Mr. Green was provided with intensive training on the various aspects of Tom James' method of conducting business. In addition to learning, among other things, established and proven direct-selling principles in general, Mr. Green also received from Tom James (at sales school and thereafter) specific training regarding product features, body types, identifying likely Tom James customers, cold-calling, scheduling, one-on-one presentations, measuring, order entry, deliveries, fitting, promoting wardrobe accessories, collecting purchase payments, obtaining and calling on referrals, follow-up, how to attain leadership in Tom James, and how to increase his personal net worth while working for Tom James (collectively, all of these methods are referred to in this Amended Verified Complaint as the "Tom James Way").

32. Upon completion of sales school, Mr. Green received from Tom James a kit that included measuring devices, clothing swatch cards, product promotional items, sales booklets, motivational literature, and other accessories to help Mr. Green get started in his new clothing career. The value of Tom James' training, training aids, and sales aids received by Mr. Green totaled more than $5,000.00.

33. Upon information and belief, the training described above relative to the direct sales of quality garments and wardrobe accessories, which Mr. Green received as a result of being hired by Tom James, was not generally available in retailing in the United States at the time of his hire.

– 10 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### Mr. Green's Employment with Tom James

34.    Upon signing the Employment Agreement and completing sales school, Mr. Green was assigned to a territory under the daily supervision of a sales leader.  Mr. Green was expected to, and paid by Tom James to, begin his clothing career of growing Tom James' business by calling on prospects, customers, and referrals in his assigned territory.

35.    Mr. Green worked as a sales professional and as a sales leader for Tom James, and was assigned principally to the greater Hartford, Connecticut, area.  Mr. Green's sales territory and duties were part of the Achiever Division of Tom James, which covers essentially the northeast corridor of the United States from New York to Boston.

36.    Mr. Green quickly learned and utilized The Tom James Way to become a promising sales professional with unusually high sales.  He achieved Tom James' President's Club recognition for selling over 1,000 units of merchandise in only his second year at Tom James – a uniquely successful achievement.  Mr. Green proceeded to receive President's Club recognition, as well as extra Diamond recognition, in a number of years during his thirteen-year employment with Tom James, becoming one of Tom James' top sales professionals over that period of time.

37.    Through Mr. Green's foregoing training and mentoring, and by seeking and servicing Tom James' customers, Mr. Green received, became familiar with, and acquired special knowledge of, Tom James' customer information, as well as additional

- 11 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

confidential and proprietary information and trade secrets, including, among other things, Tom James' products, manufacturing plans, marketing plans, unpublished financial information, unpublished personnel information, unpublished legal information, product roll-outs, swatch cards, cost information, and price information, as well as sales techniques and methods uniquely developed by Tom James over many years of considerable effort, experience, and expense.

### Mr. Green's Compensation

38.  Tom James compensated Mr. Green for his employment with Tom James. Throughout his employment with Tom James, Mr. Green received a monthly draw that was advanced against commissions earned.

39.  Mr. Green received total earnings in excess of $1.8 Million in connection with his employment with Tom James.  In his last full five years of employment with Tom James, Mr. Green received total earnings (i.e., earned commissions, profit bonuses, and leadership pay), in excess of $881,000.00, averaging approximately $176,000.00 per year in total annual earnings.

40.  Tom James also gave Mr. Green leadership responsibilities, starting in the years 1989-1990. Tom James expected Mr. Green to grow Tom James' leadership organization by recruiting and hiring qualified and promising sales persons, training and mentoring them, managing their clothing careers and personal habits of success, promoting their personal financial growth.  For those extra duties, Tom James paid Mr.

- 12 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Green leadership pay, which was part of his total earnings, based on the sales revenue and profits generated by the sales professionals within the organization that Mr. Green was expected to build and grow.  Tom James paid Mr. Green leadership pay exceeding $683,000.00 during his employment with Tom James, averaging more than $56,500.00 per year in leadership pay, excluding his first and last years of employment with Tom James.

41.  Additionally, Tom James afforded Mr. Green several opportunities to be an equity owner of Tom James' privately-held stock.  The value of the stock is determined annually by the Board of Directors of Tom James.  The Board of Directors uses a formula of dividing the projected after-tax profits by the projected number of shares issued in order to calculate projected earnings per share.  The Board of Directors then multiplies the earnings per share by a multiple to produce the stock value.  Principally, the stock value is determined by the sales revenues generated by Tom James' sales force and by the success or lack of success of Tom James' sales leaders.  As Tom James nets more profit, projected earnings increase and the value per share increases correspondingly.

42.  Mr. Green benefited significantly from a number of stock ownership opportunities made available to him by Tom James.  During his employment with Tom James, Mr. Green either subscribed to, or was awarded as a bonus, 56,806 shares of stock in Tom James with a value of greater than $343,000.00, for which he paid a total of $128,775.87.  Over time, Tom James has bought back a certain amount of that stock,

- 13 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Case 3:03-cv-00596-JBA    Document 30-3    Filed 11/26/2003    Page 14 of 39

and has paid Mr. Green $200,882.17 for it. Mr. Green has enjoyed only gains for these stock holdings since the date he began his employment with Tom James. The current value of the remaining stock held by Mr. Green totals approximately $142,595.00.

43. Tom James also maintains a 401K Plan and a Profit-Sharing Plan for its qualified employees, including Mr. Green, who was 100-percent vested in both the 401K Plan and the Profit-Sharing Plan when he terminated his employment with Tom James. The Schwab Plan account that Tom James maintained for Mr. Green was over $137,000.00 in December 2002. Of this amount, Mr. Green's personal investments and investment earnings totaled approximately $87,274.00, which Tom James matched with contributions that also have accrued investment earnings of $16,181.00. In addition, Tom James has contributed to Mr. Green's profit sharing account. These contributions, with accrued investment earnings, totaled approximately $39,370.00 in December 2002.

### Mr. Green's Resignation from Tom James

44. During most of the 1990s, Mr. Green managed, and was compensated to lead, Tom James' employees within the Achiever Division of Tom James. This division of Tom James was once known as Infinity, and later became known as Achiever Northeast.

45. Mr. Green's management of the sales professionals over which Mr. Green had direct supervision came into question during the last few years of his leadership at Tom James.

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

46. The organization of Tom James for which Mr. Green was responsible was restructured in the Fall of 2000. Mr. Green was subsequently relieved of certain leadership responsibilities.

47. Upon information and belief, Mr. Green advised his supervisor that he intended to leave the employ of Tom James following the restructuring. Following conversations and correspondence with members of Tom James' management, Mr. Green elected to remain with Tom James in late 2000.

48. In conjunction with Mr. Green electing to remain with Tom James, Tom James provided Mr. Green with a special and enhanced pay plan not made generally available to others. Additionally, Tom James excused Mr. Green from attending or presenting daily and weekly sales meetings, as is required of all other sales professionals and their leaders. Tom James directed Mr. Green to sell as best he could in the greater Hartford, Connecticut, area under the supervision of an experienced sales leader in Texas whom Mr. Green had known and admired for most of his career at Tom James.

49. Under Mr. Green's new pay plan, Mr. Green received an increase in his commissions earned on personal sales to offset the loss of his leadership pay.

50. Mr. Green continued his employment with Tom James throughout 2001 under the foregoing preferential conditions following the restructuring of the organization and implementation of the new pay plan.

- 15 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

51. Despite the restructuring, the reduction in leadership duties, and the new pay plan, while selling under the supervision of a close friend in management, and contrary to his stellar sales record at Tom James from 1988 to 2000, Mr. Green's performance with Tom James, and the sales revenues generated by his orders with Tom James, significantly declined during 2001.

52. Total revenues from Mr. Green's sales dropped from $529,881.00 in 2000 to $344,888.00 in 2001. Units sold by Mr. Green declined from 1189.03 units in 2000 to 767.79 units in 2001, a 35.43-percent decrease.

53. Mr. Green tendered a letter of resignation, dated December 12, 2001, to his supervisor announcing that he intended to resign from Tom James.

54. When a sales professional leaves Tom James, Tom James employs transitional measures to ensure that it maintains the customer relationships that were developed by Tom James through that sales professional. These transitional measures include communicating with the former sales professional and his customers, assigning other sales professionals to those customers, and offering those customers discounts and other incentives to encourage them to continue to purchase products from Tom James. If Tom James is not able to employ these measures, it is likely to lose customers serviced by the former sales professionals.

55. Mr. Green failed to follow reasonable transitional measures normally employed by Tom James upon the departure of a sales professional. Mr. Green knew

- 16 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that Tom James normally employed transitional measures to ensure that customer relationships did not decrease upon the departure of a sales professional.

56.  Specifically, upon information and belief, Mr. Green provided his supervisor with very short notice of his resignation.  Additionally, Mr. Green did not advise the customers with whom he worked that Tom James would continue to be available to provide for their wardrobe needs.  Further, Mr. Green did not introduce these customers to a newly-assigned Tom James sales professional, and Mr. Green did not discuss the information regarding these customers, including the identity of the customers, with any newly-assigned sales professional.

### Mr. Green's Misappropriation of Tom James' Customer Information and Trade Secrets

57.  On or about December 28, 2001, Mr. Green formed Trace Apparel for purposes of unfairly competing directly with Tom James.  Upon information and belief, Mr. Green continues to engage in the custom-made and made-to-measure clothing business within a fifty-mile radius of Hartford, Connecticut, by and through his operation of Trace Apparel.

58.  Upon information and belief,  Defendants solicited sales in 2002, and continue to solicit sales of custom clothing to customers of Tom James to whom Mr. Green previously sold Tom James' products while employed by Tom James.

59.  Upon information and belief, Defendants have utilized, and continue to utilize, and have otherwise disclosed Tom James' customer information and other confidential

- 17 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and proprietary information in their business operations in order to directly compete with Tom James and give themselves a competitive advantage to Tom James' detriment.

60.    Upon information and belief, Defendants have utilized, and continue to utilize, Tom James' customer information, trade secrets, and other confidential information to solicit Tom James' customers in their business operations in an effort to divert business from Tom James, and for Defendants' own profit.

61.    Upon information and belief, Defendants have encouraged, advised, induced, or otherwise solicited other Tom James sales professionals to leave their respective employment with Tom James to sell clothing in competition with Tom James.

62.    On May 7, 2002, Tom James sent correspondence to Mr. Green, by certified mail and overnight courier, informing him that it was Tom James' position that he was violating the terms of the Employment Agreement by directly taking away Tom James' customers by using customer lists and/or recollections of Tom James' customers' identities and customer histories, and that Tom James fully intended to use all resources to uphold and enforce the Employment Agreement and its covenants.  In the May 7, 2002, correspondence, legal counsel for Tom James informed Mr. Green that the identity and customer information regarding the individual clients in the Hartford area were protected trade secrets and proprietary information of Tom James.  Tom James requested that Mr. Green refrain from making unauthorized contact with these customers.  A true and accurate copy of the May 7, 2002, correspondence is incorporated herein and is attached hereto as Exhibit 5.

- 18 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

63. In the May 7, 2002, correspondence, corporate legal counsel for Tom James also demanded the immediate return of all documents and electronic media containing Tom James' customer information and other confidential information and trade secrets.

64. Mr. Green did not respond to Tom James' May 7, 2002, correspondence.

65. On October 18, 2002, Tom James sent additional correspondence to Mr. Green, by overnight courier, informing him again that it was Tom James' position that Mr. Green was violating the terms of the Employment Agreement. Tom James requested that Mr. Green cease any activities involving solicitation of Tom James' clients in the Hartford area. A copy of the October 18, 2002, correspondence is incorporated herein and is attached hereto as Exhibit 6.

66. Mr. Green did not respond to Tom James' October 18, 2002, correspondence.

67. During the fall of 2002, the founder of Tom James attempted on a number of occasions to contact Mr. Green for the purpose of meeting with him personally to discuss Mr. Green's stock in the company and to encourage Mr. Green to cease harming Tom James and its employees by misappropriating or otherwise interfering with its customer relations. Although Mr. Green did speak briefly with the founder on one occasion and indicated that he would later speak with the founder, Mr. Green refused to meet with the founder of Tom James for further discussions.

- 19 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**Tom James' Loss of Revenues**

68. As a result of the foregoing conduct by Defendants, Tom James has been damaged. Since Mr. Green resigned from Tom James, other Tom James sales professionals have attempted to sell to the customers previously serviced by Mr. Green. Many of those customers have not purchased from Tom James since Mr. Green left its employ. Tom James has experienced a loss in revenues caused by these lost purchasing opportunities.

69. Additionally, Tom James has suffered considerable loss of business opportunity that would have been realized by purchases from the customers formerly serviced by Mr. Green who now conduct their clothing business with Defendants.

70. During his employment with Tom James, Mr. Green sold products to and serviced hundreds of Tom James' customers. During the period of 1997-2002, Mr. Green sold and serviced approximately 427 customers of Tom James. At least eighty customers of that total group each purchased over $10,000.00 worth of merchandise between 1997 and 2002.

71. During 2001, sales revenues for Tom James generated from Mr. Green's orders amounted to approximately $344,888.00, for average sales of $1,254.00 per customer. In 2000, these sales revenues totaled approximately $529,881.00, for average sales of $960.00 per customer. Those high numbers compare with sales revenues of approximately $608,000.00 in 1999, $537,000.00 in 1998, and $493,000.00 in 1997, all generated by Mr. Green's sales to Tom James' customers.

- 20 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

72. As of February 6, 2003, only about thirty-nine customers of the 427 customers of Tom James that had purchased Tom James' products from Mr. Green between 1997 and 2002 purchased Tom James products from another Tom James sales professional since Mr. Green resigned from Tom James. Those purchases totaled $56,483.00.

73. Additionally, Mr. Green's departure has caused damage to Tom James' manufacturing operations. When a custom garment is ordered, manufacturing work is created for a Tom James factory and its workers. When orders decline, manufacturing production and the need for factory workers decreases. Mr. Green's departure and Defendants' subsequent wrongful competition set forth in this Amended Verified Complaint adversely affected and damaged Tom James' manufacturing operations and contributed to the loss of Tom James' factory workers' jobs in Tom James' factories.

## Tom James' Loss of Referrals

74. Much of the success of Tom James and Mr. Green while employed by Tom James, as with the other successful sales professionals, is based on customer referrals.

75. Upon information and belief, over time, a Tom James customer can provide a Tom James sales professional with as many as ten potential customers (referrals) each year. Of those ten referrals, an average of six prospects become Tom James customers. Thus, when Tom James loses one customer to competition, it can lose up to six additional customers within a year of losing that customer.

- 21 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN
& SAGE LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

76. Upon information and belief, Tom James lost the economic benefit of Mr. Green's numerous prospects or referrals whom he had compiled and/or contacted as of the date of his termination as a result of his departure, the nature of his departure, and his subsequent wrongful business activities.

77. Tom James' efforts to recreate Mr. Green's prior referral list have been substantially unsuccessful. Accordingly, Tom James's ability to receive the benefit of referral business from existing customers in the Hartford area has been damaged.

### FIRST COUNT
**(Breach of Contract -- Disclosure of Information Provision)**
**(Against Mr. Green)**

78. Tom James incorporates the allegations contained in Paragraphs 1-77 of this Amended Verified Complaint as if fully set forth here.

79. Tom James and Mr. Green entered into the Employment Agreement, including the Disclosure of Information provision, which was supported by fair and adequate consideration and constitutes a valid and binding obligation between the parties.

80. Mr. Green has breached the Disclosure of Information provision of the Employment Agreement by, _inter alia_, disclosing Tom James' contractually protected confidential information, trade secrets, and proprietary customer information to Trace Apparel and by using this protected information for his own benefit in his competing operation of Trace Apparel.

- 22 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

81. Because Defendants are currently engaged in the same line of business as Tom James and because Defendants' current activity is similar to Mr. Green's activity while employed by Tom James, Defendants will be compelled to make use of or disclose Tom James' contractually-protected information.

82. Tom James has fully performed its contractual obligations to Mr. Green and has satisfied all conditions precedent, if any, to Tom James' right to recover under the Employment Agreement.

83. As a direct and proximate result of Mr. Green's breach of the Disclosure of Information provision of the Employment Agreement, Tom James has been damaged as previously set forth.

84. Additionally, Mr. Green's breach of the Disclosure of Information provision of the Employment Agreement was intentional, malicious, wanton, and done with reckless indifference to Tom James' interests, thereby entitling Tom James to recover punitive damages and attorneys' fees and costs.

## SECOND COUNT
### (Breach of Contract -- Restrictive Covenant Provision)
### (Against Mr. Green)

85. Tom James incorporates the allegations contained in Paragraphs 1-77 of this Amended Verified Complaint as if fully set forth here.

- 23 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

86. Tom James and Mr. Green entered into the Employment Agreement, including the Restrictive Covenant provision, which was supported by fair and adequate consideration and constitutes a valid and binding obligation between the parties.

87. Mr. Green has breached the Restrictive Covenant provision of the Employment Agreement by, inter alia, engaging in the made-to-measure or custom-tailored clothing business by his operation of Trace Apparel in direct competition with Tom James within a fifty (50) mile radius of Hartford, Connecticut.

88. Tom James has fully performed its contractual obligations to Mr. Green and the conditions precedent, if any, to Tom James' right to recover under the Employment Agreement.

89. As a result of Mr. Green's breach of the Restrictive Covenant provision of the Employment Agreement, Tom James has been damaged as previously set forth.

90. Additionally, Mr. Green's breach of the Restrictive Covenant provision of the Employment Agreement was intentional, malicious, wanton, and done with reckless indifference to Tom James' interests, thereby entitling Tom James to recover punitive damages and attorneys' fees and costs.

### THIRD COUNT
**(Breach of Covenant of Good Faith and Fair Dealing)**
**(Against Mr. Green)**

91. Tom James incorporates the allegations contained in Paragraphs 1-90 of this Amended Verified Complaint as if fully set forth here.

- 24 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

92.  Mr. Green breached his covenant of good faith and fair dealing by, <u>inter alia</u>, willfully breaching both the Disclosure of Information provision and Restrictive Covenant provision of the Employment Agreement, as well as by willfully misappropriating Tom James' confidential information, including, but not limited to, its customer information, for his own competitive advantage to the detriment of Tom James.

93.  As a direct and proximate result of Mr. Green's breach of his covenant of good faith and fair dealing, Tom James has been damaged as previously set forth.

## FOURTH COUNT
### (Tortious Interference with Business Relations)
### (Against Trace Apparel and Mr. Green)

94.  Tom James incorporates the allegations contained in Paragraphs 1- 93 of this Amended Verified Complaint as if fully set forth here.

95.  By using Tom James' contractually-protected information for their own benefit in violation of Mr. Green's Employment Agreement with Tom James, by inducing Tom James' customers not to continue to buy their apparel from Tom James, by attempting to hinder Tom James' ability to service and retain its customers, by Mr. Green's failure to follow reasonable transitional measures upon leaving Tom James' employ, by utilizing valuable information, including, but not limited to, Tom James' customer information, and by soliciting Tom James' current employees to leave Tom James to

- 25 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

work for Defendants, Defendants, without justification or excuse, have unlawfully and tortiously interfered with Tom James' business relations.

96. Defendants' interference was accomplished by improper and inappropriate means.

97. Defendants have acted maliciously and with intent to harm Tom James, or with conscious indifference to the consequences of their actions.

98. Tom James has suffered financial injury, as previously set forth, as a direct and proximate result of Defendants' willful and tortious interference with Tom James' business relations, and is entitled to recover compensatory damages, as well as punitive damages and attorneys' fees and costs.

## FIFTH COUNT
### (Tortious Interference with Prospective Advantage)
### (Against Trace Apparel and Mr. Green)

99. Tom James incorporates the allegations contained in Paragraphs 1- 93 of this Amended Verified Complaint as if fully set forth here.

100. By using Tom James' contractually-protected information for their own benefit in violation of Mr. Green's Employment Agreement with Tom James, by inducing Tom James' customers not to continue to buy their apparel from Tom James, by attempting to hinder Tom James' ability to service and retain its customers, by Mr. Green's failure to follow reasonable transitional measures upon leaving Tom James' employ, by

- 26 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

utilizing valuable information, including, but not limited to, Tom James' customer information and by soliciting Tom James' current employees to leave Tom James to work for Defendants, Defendants, without justification or excuse, have unlawfully and tortiously interfered with Tom James' prospective advantage with its potential customers referred by its existing customers.

101. Defendants' interference was accomplished by improper and inappropriate means.

102. Defendants have acted maliciously and with intent to harm Tom James, or with conscious indifference to the consequences of their actions.

103. Tom James has suffered financial injury, as previously set forth, as a direct and proximate result of Defendants' willful and tortious interference with Tom James' business expectancies, and is entitled to recover compensatory damages, as well as punitive damages and attorneys' fees and costs.

### SIXTH COUNT
**(Violation of the Connecticut Uniform Trade Secrets Act)**
**(Against Trace Apparel and Mr. Green)**

104. Tom James incorporates the allegations contained in Paragraphs 1-103 of this Amended Verified Complaint as if fully set forth here.

105. In connection with Mr. Green's employment, and only after Mr. Green's execution of the Employment Agreement, Tom James provided Mr. Green with

- 27 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

proprietary, confidential, and trade secret information, including, but not limited to, Tom

James' customer information, customer requirements, products, prices, costs, and sales

techniques and methods developed by Tom James.

106.  Defendants misappropriated Tom James' proprietary, confidential, and trade

secret information, including, but not limited to, Tom James' customer information, by

improper means for their own personal and business purposes, such as to develop and

further the business operations of Trace Apparel.  In addition, Defendants have

improperly retained Tom James' proprietary, confidential, and trade secret information,

including, but not limited to, its customer information, for the purpose of unjustly

competing with Tom James.

107.  Tom James took reasonable steps to maintain the secrecy of its proprietary,

confidential, and trade secret information, including, but not limited to, Tom James'

customer information.  As previously set forth herein, these reasonable steps include,

but are not limited to, requiring each employee, including Mr. Green, to sign an

employment agreement pursuant to which the employee agrees not to disclose any of

Tom James' customer information or other confidential and trade secret information to

anyone outside of Tom James, requiring each employee, including Mr. Green, to sign

and agree to the terms of Tom James' Conflict of Interest Policy, requiring each

employee, including Mr. Green, to sign and agree to the terms set forth in Tom James'

Electronic Mail Policy, and by implementing a confidentiality banner on Tom James'

website and on a number of important business records and forms that are used in the

- 28 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

daily ordinary course of business of Tom James and its hundreds of sales professionals and office professionals.

108.  Defendants' retention, use, and possession of Tom James' proprietary, confidential, and trade secret information, including, but not limited to, its customer information, constitute a violation of the Connecticut Uniform Trade Secrets Act -- sections 35-50 to 35-58 of the Connecticut General Statutes.

109.  As a result of the foregoing conduct, Tom James is entitled to permanent injunctive relief, pursuant to section 35-52 of the Connecticut General Statutes, against Defendants to prevent and/or limit their retention, use, dissemination, and misappropriation of Tom James' proprietary, confidential, and trade secret information to compete unfairly with Tom James.

110.  As a result of the foregoing, Tom James is entitled to compensatory damages, punitive damages, and attorneys' fees pursuant to sections 35-53 and 35-54 of the Connecticut General Statutes.

## SEVENTH COUNT
### (Violation of the Connecticut Unfair Trade Practices Act)
### (Against Trace Apparel and Mr. Green)

111.  Tom James incorporates the allegations contained in Paragraphs 1- 110 of this Amended Verified Complaint as if fully set forth here.

- 29 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

112. At all relevant times, Defendants have been (and are) engaged in the conduct of trade or commerce, as defined in section 42-110a(4) of the Connecticut General Statutes.

113. The foregoing conduct by Defendants constitutes unfair competition or unfair deceptive acts or practices, or both, in the conduct of trade or commerce, and thereby constitutes a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), sections 42-110a - 42-110q of the Connecticut General Statutes.

114. Tom James has suffered an ascertainable loss of money or property as a result of Defendants' violation of CUTPA, as previously set forth, and is entitled to recover damages, including punitive damages and attorneys' fees and costs.

115. In accordance with the mandates of CUTPA, Tom James has advised the Attorney General of the State of Connecticut, as well as the Commissioner of Consumer Protection for the State of Connecticut, of its CUTPA claim against Defendants by mailing a copy of this Amended Verified Complaint to each respective office.

– 30 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## REQUEST FOR RELIEF

WHEREFORE, the plaintiff, Tom James Company, requests an order granting the following relief:

(1)    Enjoining Trace Apparel, Mr. Green, and their respective agents, employees, officers, servants, attorneys, and representatives from directly or indirectly, or alone or in concert with others, engaging in the following activities:  (a) calling on Tom James' customers for the purpose of soliciting sales in competition with Tom James or for the purpose of injuring Tom James, for a period of 24 months from the date of entry of the order; (b) disclosing or using, in whole or in part, confidential information or trade secrets, including, among other things, Tom James Company's customer lists, customer requirements, products, prices, costs, and sales techniques and methods developed by Tom James Company; and (c) acting either individually or as an owners, employees, promoters, officers, or directors of any other person or corporation, directly or indirectly, in any made-to-measure or custom-tailored clothing business that is competitive with the business of Tom James Company within the city of Hartford, Connecticut, plus fifty (50) miles in every direction measured from the city's boundaries;

(2)    Directing Defendants to return to Tom James Company all originals and copies of Tom James Company's proprietary information, property, and documents, including, but not limited to, customer files, client lists and information concerning such

- 31 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

clients and their accounts, and all other materials, in whatever form, containing Tom James Company's trade secrets and all other confidential information;

(3)    Directing Defendants to account for and pay to Tom James Company all profits earned from business unlawfully diverted from Tom James Company;

(4)    Disgorgement of Defendants' profits derived from the illegal or inequitable conduct serving the basis of this action;

(5)    Compensatory damages in an amount not less than $2,000,000;

(6)    Punitive damages against Defendants in an amount to be determined;

(7)    Attorneys' fees and costs; and

(8)    Such other legal or equitable relief deemed appropriate by the Court.

**JURY TRIAL DEMANDED**

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## VERIFICATION

I, James P. Williams, being duly sworn, state that I am the Chief Financial Officer for Tom James Company, the plaintiff in the above-captioned amended complaint. The allegations contained in the Amended Verified Complaint are based upon my personal knowledge, unless set forth as based upon information and belief, as well as based upon the books and corporate records of Tom James Company, and are true to the best of my knowledge, information, and belief.

_James P. Williams_
James P. Williams

State of Tennessee        )
County of Williamson      )

Sworn and subscribed to on this _15th_ day of May 2003.

_Delna Hearring_
Notary Public

My Commission
Expires May 28, 2006

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Dated:  May 19, 2003
   Hartford, Connecticut

THE PLAINTIFF,

TOM JAMES COMPANY


By: _____
  Thomas J. Finn
  Federal Bar No.: ct 20929
  Paula Cruz Cedillo
  Federal Bar No.: ct 23485
  HALLORAN & SAGE LLP
  One Goodwin Square
  225 Asylum Street
  Hartford, Connecticut 06103
  (860) 522-6103

400617.1(HSFP)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105



**Contact Information for:** (0001000645)

Store: 023  Date: 06/07/02  Time: 17:02:58

Client Name: _____  Prefix: _____  Title: _Admin_  Client Type: _Regular_  Sex: _M_  Sales Professional: _____

Email: _____  Spouse: _____  Birthday: _01/01/01_  Anniversary: / /  Date: _11/05/95_  Last Sale: _01/15/02_

Company: _Insurance Co_  Extension: ____  Fax: ____  Home Address: _____

Office Address: _Thompson Lane_  Tax Zip Code: ____

Po Box 40386 Nashville, TN  37204  Phone: ____  Fax: ____  Mobile: ____

Phone: (615)  ____

Comments: _____

Asst./Sec. Name: _____  Best time to contact: ____  Categories: Client

Hobbies/Interests: _____  Next interest in purchasing: ____  Referred By: ____

What do you normally pay for a suit? $  0   ☐ Fashion  ☒ Traditional  Where do you shop?: ____

**COAT / PANT**

Height: _6'_  1-1/2"  Weight: _250_

Incline: ____  _3-1/2"_

Neck: ☐ Long  ☒ Regular  ☐ Short    _3"_

Left Shoulder: _2-1/4"_

Right Shoulder: _3"_

Overarm: _56-1/2"_    Chest: _49"_   ☐ Chest Full

Coat Fit: ☐ Regular  ☒ Body Builder

R-Coat Sleeve: _17-3/4"_    L-Coat Sleeve: _17-3/4"_

Pant Waist: _43"_    Coat Length: _32"_

Pant Seat: _50"_    Topcoat Length: ____

Pant Fit: ☐ Regular  ☐ Flat    Seat Descr.: ☐ Flat  ☒ Medium  ☐ Prominent
☒ Easy  ☐ Medium
☐ New Pleat  ☐ Prominent    Bow Legs #: _2_

☐ Prominent Calves

Knee: _21-3/4"_    L-Outseam: _41-1/2"_

_41"_    Inseam/Rise: _30-1/2"_

Pant Bottom: _19"_    Shoe: ____

**VEST**

Front Opening: ____
Front Length: ____
Back Length: ____

Bicep: ____

Bust Position: ____

Bra: ____

Build: ☐ Slender  ☐ Average  ☐ Mature  ☐ Full Figure

Waist Length: ____

Inseam/Rise: ____

Hips at 9": ____    Abdomen Visual: ☐ Flat  ☐ Full

Seat at 9": ____

Thigh: ____

Calf: ____

Shirt Length: ____

**FOR WOMEN ONLY**

**HEAVIER MIDSECTION**

Coat Waist: ____

Abdomen: ____

**FOR SHORTS ONLY**

Left Outseam: ____

Right Outseam: ____

Inseam/Rise: ____

**SHIRT**

Finished Collar: _17-3/4"_    Inches of Cloth Over Chest: ☐ 6" Tapered  ☒ 8" Regular

Inches of Cloth Over Waist: ☐ 4" Very Fitted  ☐ 5" Standard  ☐ 6" Easy Fit  ☐ 7" Full Fit  ☐ 8" Very Full

Actual Chest: _50"_

Actual Waist: _51"_

L-Shirt Sleeve: ____

L-Actual Wrist: ____

L-Cuff: ____

☐ Specify Pattern/Shaping

Chest Pattern: ____

Shaping: ____    S: ____

Ready-Made Shirt: ____  N: ____    Yoke: _19-1/2"_

Short Sleeve: _21-1/4"_

Shirt Tail: _34"_

R-Shirt Sleeve: ____

R-Actual Wrist: ____

R-Cuff: ____

Pleat Length: ____    Hip: ____

15:59:19
ORDSUM1

# Order Summary for Tom James of    #02

Page:
Store:

Date(s) Ordered:      06/07/02    -    06/07/02
Sequence:
Sales Professional(s):      All

Sales Professional, Date Ordered, Order Number

| Order Number | COF | First Date Ordered | Date Entered | Customer Number | Customer Name | Sales Prof. | Status | Custom Pant | Custom Coat, Pant | Custom Coat, Vest, Pant | Custom Sport Coat | Custom Other | Custom Shirt | Accessory | Ready Made | Sub-Total | Tax | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0007823 | 007823 | /02 | /02 | 0001002804 | | 02310 | Ready For Upload | | | | | | | | 1 | 149.00 | 12.29 | 161.29 |
| 0007824 | 336954 | /02 | /02 | 0001001858 | | 02310 | Ready For Upload | | | | | | 2 | | 1 | 590.00 | 40.68 | 630.68 |
| 0007825 | 336980 | /02 | /02 | 0001000120 | | 02310 | Validated | | | | | | 4 | | 1 | 588.00 | 48.51 | 636.51 |
| Grand Totals: | | | | | | | | | | | | | 6 | | 2 | 1,327.00 | 109.48 | 1,436.48 |

The information on this report is CONFIDENTIAL TRADE SECRET PROPERTY OF TOM JAMES COMPANY, and (i) it shall only be delivered to employees who need to use it, and (ii) it shall not be copied, and (iii) it shall never be used by anyone except Tom James Company and Employees directly concerned, and (iv) it shall only be used in furtherance of the sale of Tom James Company merchandise.

16:45:32

Outstanding Tickets for     (#0001002797)

Page: 1
Store:

BALANCE

| Date | Loc | COF | Sales | Cancels | Returns | Payments | Adjustments | Bal. Due |
|------|-----|-----|-------|---------|---------|----------|-------------|----------|
| 04/05/02 | 023 | 378828 | 1,436.47 | | | -702.00 | | 734.47 |
| 05/03/02 | 023 | 403107 | 129.90 | | | | | 129.90 |
| | | | 1,566.37 | | | -702.00 | | 864.37 |

The Information on this report is CONFIDENTIAL TRADE SECRET PROPERTY OF TOM JAMES COMPANY;
and (i) it shall only be delivered to employees who need to use it, and (ii) it shall not be copied, and (iii) it shall never be used by anyone except Tom James
Company and Employees directly concerned, and (iv) it shall only be used in furtherance of the sale of Tom James Company merchandise.

17:10:33
RTN_DOC

# Return Worksheet

Page:
Store:

**Please fill in the necessary information:**

Client Name: _____

Sales Professional: _____

Date: _____

Authorized By: _____

Tracking #: _____

Auto Order #: _____

COF/Ticket: _____

Mnfr. Order #: _____

Total Items: _____

Instructions: _____

☐ Direct Ship to Client

Address1: _____

Address2: _____

City: _____

State: _____   Zip: _____

**Please circle the appropriate description:**

Return To: Accessories Division; Atlas of Boston; Brown and Church; English American; Individualized Shirts; Kenneth Gordon Division; The Hubbard Company

Type of Return: Alter/Remake; Return To Supplier; Return Unordered Items; Return to Store Inventory

Reason for Return: Client Did Not Like; Damaged Goods; Does Not Fit; Factory Error; Does Not Fit, Sales Prof Error; Double Shipment; Finish Functional Buttonholes; Return Store Inventory; Shipped to Wrong Store/Client; Time It Took For Order; Wrong Item Ordered; Wrong Item Shipped

**Please describe the items being returned:**

| Type | Supplier | Qty | Item | Style | Color | Siz / Dim | Description | Price |
|------|----------|-----|------|-------|-------|-----------|-------------|-------|
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |
| Return: | | | | | | | | |
| Reorder: | | | | | | | | |

The information on this report is CONFIDENTIAL TRADE SECRET PROPERTY OF TOM JAMES COMPANY; and (i) it shall only be delivered to employees who need to use it, and (ii) it shall not be copied, and (iii) it shall never be used by anyone except Tom James Company and Employees directly concerned, and (iv) it shall only be used in furtherance of the sale of Tom James Company merchandise.