4/88

# EMPLOYMENT AGREEMENT

THIS AGREEMENT, made and entered into this ___30th___ day of ___August___, 1988 by and between Tom James of ___Hartford___, (herein called "Employer" or "Company"), and ___Tracy Green___ (hereinafter called "Salesperson").

1. **Employment.** The Employer hereby employs the Salesperson, and the Salesperson hereby accepts employment on the terms and conditions hereinafter set forth and agrees to follow all Company policies and procedures.

2. **Term.** The term of this Agreement shall extend from the date hereof until terminated (by either party at any time by giving notice in writing to the other party), except that certain provisions of this Agreement shall continue to bind the Salesperson to the extent stated herein.

3. **Compensation.** For all services rendered by the Salesperson under this Agreement, the Employer shall compensate him or her in accordance with the schedule which is attached hereto as Exhibit A; and which shall be deemed for all purposes a part of this Agreement. This schedule may be changed from time to time by the mutual agreement of both parties.

4. **Extent of Services.** The Salesperson shall devote his or her time, attention, skills and energies to the business and exclusive sale only of the products of the Employer, he or she shall not during the term of this Agreement be engaged in any other business

EMPLOYMENT AGREEMENT

activity or sell any product which conflicts with, is not authorized by, detracts from his or her duty to the Employer, or is in competition in any manner with the business of the Employer whether or not such business activity is pursued for gain, profit or other pecuniary advantage. This shall not be construed as preventing the Salesperson from investing his or her assets in such a form or manner as will not require any services on the part of the Salesperson in the operation of the affairs of the Company.

5. <u>Disclosure of Information.</u> The Salesperson recognizes and acknowledges that as a result of his or her employment by Employer he or she has received and will become familiar with and acquire knowledge of confidential information and trade secrets including, among other things, the Employer's customer list, customer requirements, products, prices, costs, and sales techniques and methods developed by the Company. The Salesperson therefore agrees that during the term of his or her employment and for two (2) years after the termination of his or her employment with Employer for any reason whatsoever, he or she will not disclose to any person, firm, or corporation information or trade secrets in any capacity except as an employee of the Employer and in the furtherance of the interests of the Employer. In the event of a breach or threatened breach by the Salesperson of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Salesperson from disclosing or using, in whole or in part, such confidential information or trade secrets as have been disclosed or are threatened to be disclosed. The parties

hereto agree that nothing herein shall be construed as prohibiting the Employer from pursuing any other remedies available to it for any such breach or threatened breach, including the recovery of damages from the Salesperson. Salesperson agrees that should injunctive or other legal or equitable action be necessary and if successful that he or she will be liable to the Company for its legal fees, expenses and court costs required to obtain and enforce the court relief in question.

6. <u>Company Materials</u>.  In order to assist the Salesperson in the performance of his or her duties and obligations in the territory assigned to him or her by the Employer, the Employer agrees to furnish the Salesperson with sales catalogs, brochures, samples, price list and other sales aids, and will from time to time during the employment of Salesperson furnish additional sales aids.  It is understood and agreed that all such property and sales aids furnished to the Salesperson are and shall remain the property of the Employer.  The Salesperson recognizes and agrees that the sales aids which have been provided him or her have been carefully developed by the Employer, and that if such sales aids and other property are not returned to the Employer, the Employer will suffer losses and damages.  The parties hereto therefore agree that in the event the employment of the Salesperson with the Employer is terminated for any reason whatsoever, the Salesperson shall return all such sales aids and property to the Employer.  In the event the Salesperson fails or refuses to return such sales aids and other property to the Employer at the

time of the termination of his or her employment, the Salesperson shall pay to the Employer, at its principal office, a sum equal to the cost of all such sales aids which are not returned. The cost of such sales aids shall be the cost stated in the Policy Manual of the Employer or as established elsewhere by the Employer at the time of termination of the Saleperson's employment.

7.  <u>Restrictive Covenant</u>.  The salesperson expressly recognizes and agrees that, as a result of employment by and training by the Employer, he will acquire valuable information and knowledge concerning the Employer's customers, products, prices, and sales techniques and methods developed by the Employer. The Salesperson, therefore, agrees that, during the period of his employment and for a period of two (2) years after termination of his employment with the Employer for any reason whatsoever (and regardless of whether such termination is due to the salesperson's quitting or his/her being discharged by the employer), he will not engage, either individually or as an owner, employee, promoter, officer, or director of any other person or corporation, directly or indirectly, in any made-to-measure or custom-tailored clothing business that is competitive with the business of the Employer within geographical boundaries of the sales territory in which the salesperson calls on, solicits, or deals with customers or is assigned as a Salesperson while employed by the Employer. The parties agree that the present sales territory is hereby defined as the following: the city of Hartford, CT, plus fifty (50) miles in every direction measured from the city boundaries.

The Salesperson and Employer agree that the aforementioned sales territory may be modified by a written addendum to a different sales territory in the event of a mutually agreed-upon transfer.

The Salesperson expressly agrees that, upon a breach or violation of any of the provisions of this restrictive covenant, the Employer, in addition to all other remedies as provided by law, shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction.

8. <u>Obligation for Cost of Training</u>. Salesperson acknowleges that he or she has received from Tom James extensive and specialized sales school training in the techniques of prospecting, selling, fitting and customer service of made-to-measure clothing. This school included travel expenses, lodging cost, materials, instruction, plus a nominal compensation. It is agreed that the value of said training is $5,000.00 (five thousand dollars).

9. The Salesperson, in consideration for said training and in consideration for his or her employment with the Employer, hereby agrees that if he or she is terminated or if he or she terminates and leaves the employ of the Employer for any reason and engages in competition with the Employer in any manner, directly or indirectly, within a period of two (2) years from the date of his or her employment with the Employer ceases, then in addition to all other remedies provided to the company, salesperson shall repay the sum of $5,000.00 to the Tom James Company for the value and cost of training furnished to him or her. Attorney's fees - in the event that any action is instituted by Tom James Company

to enforce any of the terms and conditions of this agreement or an action for injunction or other legal or equitable relief is commenced for a breach or threatened breach by the employee, the Salesperson shall pay all costs and expenses, including reasonable attorney's fees, incurred by Tom James Company in exercising any of its rights and remedies hereunder.

10. <u>Waiver of Breach.</u>  The waiver of the Employer of a breach of any provision of this Agreement by the Salesperson shall not operate or be construed as a waiver of any subsequent breach by the Salesperson.

11. <u>Termination.</u>

   (a) In the event the Salesperson is no longer employed by Tom James Company, for any reason, the Salesperson understands he or she is obligated to pay amounts owed on his or her Clothing Account, Special Account, and Overdraw Account to Tom James upon demand; also the Salesperson hereby agrees to pay any collection cost, including reasonable attorney's fees, in the event the above accounts are not paid upon demand.

   (b) The Company will pay to the Salesperson all earnings from activity through his or her termination date but will have no further obligation unless specifically spelled out in his or her pay plan or by an addendum attached to this document.

12. <u>Successors</u>. This Agreement shall be binding upon and accrue to the benefit of any successors and assigns of both parties to this agreement.

13. <u>Construction</u>. This Agreement shall be construed under and enforced in accordance with the laws of the State of __CT__, or, if the salesperson transfers to a new sales territory in another state, the laws of the new state wherein the salesperson's assigned territory exists (if the transferring salesperson works in more than one state, the applicable laws shall be those of one of the states in which the salesperson works, the choice of such state to be at the discretion of the employer).

14. <u>Reformation and Severability Clause</u>. It is the intention of the parties hereto that the provisions of this Agreement and any Appendicies thereto shall be enforced to the fullest extent permissible under the laws and public policies of each state and jurisdiction in which such enforcement is sought. Accordingly, if any provision of this Agreement shall be determined to be invalid or unenforceable, either in whole or in part, this Agreement shall be deemed amended to delete or modify, as necessary, the invalid or unenforceable provisions, or portions thereof, and to alter the balance of this Agreement in order to render the same valid or enforceable.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

TOM JAMES OF

_Hartford_ / _[signature]_
SALES MANAGER

8/30/88
DATE

_[signature]_
SALESPERSON

8-30-88
DATE

# CONFLICT OF INTEREST POLICY

## A. STATEMENT OF POLICY

Tom James Company (herein "Company") has confidence in the loyalty and integrity of all of its employees. Proof of the high ethical standards of employees has been demonstrated on numerous occasions. With the current emphasis being given to the subject of Conflict of Interests, however, the Company considers it desirable to publicize a policy statement as a guide to employees who might, by reason of their corporate duties, find themselves in a position where their personal interest could conflict with those of the Company.

Conflicts of interest may be considered to exist in those instances where the actions or activities of an employee on behalf of the Company also involves: (a) the obtaining of an improper personal gain or advantage; (b) an adverse effect upon the interest of the Company; or (c) the obtaining by a third party of an improper gain or advantage. All employees have a clear duty in conducting Company business to place the interests of the Company ahead of their personal interest.

For this reason, it is the policy of the Company that all employees must avoid any situation which involves a potential conflict between their personal interest and the interest of the Company. Only by adhering to this policy can the integrity of the Company's business relationships be preserved and the financial and other interest of the Company and its shareholders be protected.

The purpose of this policy statement is to indicate certain areas in which this policy particularly applies so that conflicts of interest in the future may be avoided.

## B. DEFINITIONS

For the purpose of this Policy statement, the terms defined herein shall have the meaning set forth in the definition of each such term.

1. *"Company"* includes Tom James Company, and its subsidiaries and/or affiliates.

2. *"Employee"* means any employee of the Company.

3. *"Immediate family"* includes an employee's spouse and the children, parents, brothers and sisters of both the employee or the spouse, as well as other relatives of either the employee or spouse who share the employee's home or otherwise are dependent on the employee or the spouse for their support.

4. *"Confidential information"* means any information concerning the affairs of the Company which has not been publicly disclosed by the Company.

5. *"Concern"* means any type of business entity, regardless of its form, e.g., corporations, partnerships, sole proprietorships, trusts, and joint ventures.

6. *"Competing concern"* means any concern which competes with the Company or which competes with anyone who sells the products of the Company.

7. *"Substantial financial interest"* means the direct or indirect ownership of a beneficial interest having a value of such magnitude that (a) it represents a substantial part of the equity in the concern or (b) for other reasons the interest would be regarded as significant to the employee. No interest in a mutual fund or in the securities of any publicly held corporation regularly traded on the open market shall be deemed to constitute a substantial value if the market value of such interest is less than $50,000.

8. *"Indirect ownership"* includes beneficial interests in a concern held either (a) by a trust, corporation, partnership, or other venture in which the employee holds an interest or (b) by or through a nominee, agent, option or other device, as well as beneficial interests derived from loan agreements or other contractual agreements.

## C. PERSONNEL SUBJECT TO THIS POLICY

All employees of the Company are subject to this policy.

## D. ILLUSTRATIONS OF POTENTIAL CONFLICTS OF INTEREST

The basic factor in all conflict situations is the division of loyalty between the Company's best interests and the personal interest of the individual. Although it is impossible to list every circumstance giving rise to possible conflict of interest, the following illustrations will serve as a guide to the types of activity involving potential conflicts.

1. *Interest in Competing Concern.* Ownership of a substantial financial interest in any competing concern by an employee or by any member of his or her immediate family.

2. *Interest in Any Other Concern.* Ownership by an employee or by any member of his or her immediate family of a substantial financial interest in any other concern with which the Company does business directly or indirectly, or which is seeking to do business with the Company.

3. *Interest in Transaction.* Representation of the Company by an employee in any transaction in which such employee or any relative of the employee or his or her spouse has an interest.

4. *Representation by Relative.* Representation of the Company by an employee in any transaction where the other concern is represented by a relative of the employee or his or her spouse.

5. *Use of Confidential Information.* (a) Confidential information with respect to Company's customers and suppliers acquired by an employee through his employment or service, is considered to be privileged and must be held in the strictest of confidence. It is to be used solely for corporate purposes and not as a basis for personal gain by the employee or his family. In no case shall such information be transmitted to an employee's immediate family or to persons or associates outside the Company or even to other employees who do not need to know such information in discharging duties as employees.

(b) Financial or other corporate information regarding the Company is not to be released, nor shall such information be used for an employee or his immediate family for personal gain. No employee may trade in the stock of the Company on the basis of such information.

(c) Use of or disclosure to outsiders or to members of the immediate family of any employee of any other confidential information is a conflict of interest.

6. *Gifts and Gratuities.* Except as provided in Section E, acceptance by an employee or any member of his or her immediate family, from any competing concern or any other concern with which the Company does business or which is seeking to do business with the Company of gifts or merchandise of more than nominal value, cash or gift certificates in any amount whatever, loans (except from established banking or financial institutions), excessive entertainment or other substantial gifts of goods or services.

7. *Rendition of Services to Other Concerns.* Rendition of managerial, consultant or any other substantial services to any concern (including service as a director) by an employee.

8. *Full Time Service.* Engaging in outside business or employment incompatible with the Company's right to full time and efficient service of its employees.

9. *Use of Position to Influence Others.* Use of one's position with the Company to influence any other concern in its dealing with other parties for the personal profit or advantage of any person.

10. *Competition with the Company.* Competing with the Company, directly or indirectly, in the acquisition or disposition of property, rights or interest of any kind, including those in which it is known that the Company might be interested in the future.

11. *Outside Activities.* Engaging in outside activities of any kind whatsoever that materially encroach on the time or attention which should be devoted to the employee's corporate duties or adversely affect the quality of the employee's work performed, or which involve any significant use of the Company's equipment, supplies, or facilities, or which infer sponsorship or support by the corporation of the outside activity, or which adversely affect the good name of the Company.

12. *Political Activity.* The Company encourages employees to take an active interest in political and governmental affairs and to keep themselves well informed concerning political affairs and candidates. However, in all cases of participation, in such activities, an employee must act as an individual and not as a representative of the Company. The use of Company's funds or any other Company asset for political purposes is prohibited by law. This includes time spent by an employee during normal working hours, use of corporate equipment, office space, clerical help, and advertising facilities. Any employee desiring to run for political office or to accept an appointment to government office should discuss the matter in advance with the Board of Directors of the Company.

13. *Honorariums.* Acceptance of monetary honorariums offered by organizations for speaking engagements and similar activities are permitted only when the activity is clearly not related to business and the activity is completely performed on personal time.

## E. APPROVAL BY THE COMPANY

No interest in another concern or participation in any transaction shall be deemed to involve a conflict of interest if the interest or participation has been disclosed fully in writing to, and has been approved in writing by, the Chief Executive Officer of the Company and the employee's immediate supervisor.

All gifts and gratuities described in Section D(5) must be reported to and approved by the Chief Executive Officer of the Company and the employee's immediate supervisor.

## ACKNOWLEDGEMENT

I hereby acknowledge that I have received and reviewed the Company's Conflict of Interest Policy, and I agree to comply with its terms.

Date: FEB 15, 1994

J. Tracy Green
(Name)

Sr. Sales Leader
(Title)

# ELECTRONIC MAIL POLICY

Tom James Company reserves the right to monitor all electronic mail communications.

The company electronic mail system is a business resource provided and owned by Tom James company to the employee as a productivity tool intended to enhance daily business processes and activities. The employee is entrusted to utilize this business resource exercising prudent judgement concerning the creation or inclusion of message and file attachment contents. Employees can not use the Company electronic mail system to communicate trade secrets and other confidential information to anyone outside the Company or organization.

Sending or requesting the receipt of offensive or improper messages using the Company electronic mail system is strictly prohibited. This includes, but is not limited of, content involving racial or sexual slurs and pornographic material.

Incidental and occasional personal use of electronic mail is permitted within the Company, but such messages will be treated no differently from other messages. Please use discretion when sending messages to the entire distribution list. Using email as a source of selling tickets, personal home furnishing, etc, is frowned upon and should be posted on the company bulletin board in the breakroom. The Company electronic mail system can not be used to promote personal interests which includes, but is not limited to, outside business ventures, political campaigns, and religious causes.

The scope of the company electronic mail system includes distribution of messages within the Tom James Company local area network and distribution of messages with the global Internet.

Employees should be aware that all messages sent to and received from recipients within the global Internet are insecure and susceptible to interception and examination by other parties.

Tom James Company reserves the right to access and disclose the contents of employee electronic mail messages, without prior notification, in order to protect corporate information and assets.

Tom James Company reserves the right to disclose any electronic mail message to law enforcement officials.

Electronic "snooping" by any employee is a violation of Company policy and grounds for dismissal. "Snooping" is defined as the act by any employee, including system administrators and supervisors, to use the electronic mail system to satisfy idle curiosity about the affairs of others, with no substantial business purpose for obtaining access to the files or communications of others.

_____    _____
Employee Signature                Supervisor

J. TRACY GREEN
Print Name (please) 2/4/04



TOM JAMES

May 7, 2002

Mr. Tracy Green  
13 Pheasant Lane  
Bloomfield, CT 06002

*Via Overnight Courier*  
IMPORTANT NOTICE

Re: Post-Termination Business Conduct and Fair Trade Practices

Dear Mr. Green:

Tom James management has asked me to contact you. The Company is concerned over recent discovery of your soliciting Tom James customers for the sale of custom made clothing. In my capacity as in-house legal counsel for Tom James Company, it is my duty to remind you of your ongoing legal duties arising from your former employment with the Company that ended on December 19, 2001.

I direct your attention to the Employment Agreement that you signed in conjunction with being hired by Tom James on August 30, 1988. I enclose a copy as a courtesy for your review. In addition, you also acknowledged in writing the Company's Conflict of Interest Policy on August 6, 1993. Further, you acknowledged in writing the Company's Electronic Mail Policy. All of these important documents together with Tom James daily practices and procedures clearly demonstrate our resolve to protect Tom James' trade secrets and other confidential information, including not the least the Company's valued customer information. We now ask that you simply honor those promises you made years ago that you essentially re-affirmed each day you came to work and earned a pay check.

Tracy, I must insist that you not compete unfairly against Tom James and please do not any further use or disposition of the Company's property, including its trade secrets and other confidential information[1].

You should not have, nor ever possess, alter, use, copy, share, disclose, transfer, or otherwise misappropriate, directly or indirectly, any tangible or intangible property of Tom James including any version or portion of its customer list and customer information. To the extent that you currently possess or have access to Tom James' customer list (in tangible or intangible form), immediately return same c/o John Hitt, I.S. Director, at the Accounting

---

[1] Generally, the terms "trade secrets" and "confidential information" are defined, in part, by statute and case law. In addition, as intended in each Employment Agreement and certainly by this letter, all references to trade secrets and other confidential information of Tom James Company also include, without limitation, not only unpublished financial data, business plans and legal matters of the Company but also the Company's customer list which further embodies each and every customer list and file (tangible, intangible and otherwise) maintained by Tom James and its employees including information developed about the identity, location, personal data, wardrobe requirements and specifications, garment purchasing history and pattern, as well as all other private information relative to each customer of Tom James and its affiliates. This proscription applies as much to confidential information stored in your memory as it does to such information set forth in any tangible or intangible form.

Tom James Company • 263 Seaboard Lane • Franklin, Tennessee 37067  
(615) 771-1122 • Fax (615) 771-8242  
Customer Service # 1-800-234-7848

Tracy Green  
May 7, 2002  
Page 2                                                      IMPORTANT NOTICE

Office at 263 Seaboard Lane, Franklin, TN 37067. Insofar as you maintain any memory recollection of any part of Tom James' customer list, do not use, disclose or exploit it for your personal gain or to the detriment of the Company.

Similarly, you should refrain from encouraging or assisting any other person or firm to possess, alter, use, copy, share, disclose, transfer, or otherwise misappropriate, directly or indirectly, Tom James' trade secrets and other confidential information including its customer list and information.

Please refrain from wrongly competing against Tom James in the custom-made and made-to-measure clothing business within fifty miles of Hartford, Connecticut for the balance of your two year restrictive covenant that you accepted at hire. It is imperative that you not intentionally interfere with or damage the goodwill and business relationship that Tom James enjoys with its employees, customers and suppliers.

To the extent that you may have already wrongly contacted Tom James customers for the purpose of promoting your own custom made clothing business within fifty miles of Hartford, Connecticut during the time you worked for Tom James and certainly since December, 2001, I must ask for an accounting and hereby make demand upon you to provide Charles Spencer at the Accounting Office or me a list by names, location and phone numbers of the Tom James customers whom you have already solicited.

It should go without saying that Tom James reserves all rights and will take appropriate legal action to protect its employees, customer relations and other assets in furtherance of its legitimate business interests.

These restrictions are reasonable and necessary. The two years allows our salesman newly assigned to your former accounts to build trust and a trading relationship with those valued customers over two cold seasons and two hot seasons. The fifty miles fairly covers the nexus of discriminating clients whom we have identified will purchase custom-made clothing like our fine products. Tom James must ensure business continuity with the valued customers following your resignation.

You, indeed, may continue to sell clothes and wardrobe accessories in Connecticut. For instance, you may sell ready-made clothing anywhere, anytime. You may even sell custom-made garments and wardrobe accessories now, provided you do not compete against Tom James within fifty miles of Hartford, Connecticut until late December, 2003, and, further provided, you do not solicit Tom James' customers.

The customer list and associated information belongs to Tom James and not to you. You developed that information for Tom James while working for Tom James while utilizing the Company's resources and under experienced supervisory guidance. You developed that information during the course of your employment with Tom James and for the many aspects of direct sales that sales management taught you in conjunction with the infrastructure provided you. That customer development was what you were supposed to be doing in the course of working for Tom James while you earned a paycheck.

Tracy Green
May 7, 2002
Page 3

IMPORTANT NOTICE

The enforcement of the contractual obligations that you agreed to does not harm the public's interest. In fact, it would be against the public's interest if we allow you to continue breaching your promises when others are abiding by their promises, especially when you can readily earn a living in the clothing business without breaching your contractual promises with Tom James Company. Tom James vigorously recognizes the duty and commitment to protect its assets and employees – which also is in the public's best interest.

All this having been said, Tracy, Tom James Company certainly wishes you success in any <u>appropriate</u> undertaking that you choose to pursue -- just not at the expense of Tom James' hard-earned customer information and other valuable assets. If you choose to compete, do so fairly and pursuant to your promises previously made and in accordance with applicable law.

Tracy, I need for you or your legal representative to call me, within the next five (5) days. You may call me at phone # 615-391-2605. I want to know if you intend to abide by your legal obligations owing to Tom James. Please note that my Law Department address differs from the Accounting Office which is several miles away.

                      Sincerely,

                      Gary C. Pears
                      Corporate Legal Counsel

Encls.
cc:    Thomas J. Finn, Esq. ✓
        HALLORAN & SAGE LLP

<u>Contact writer at</u>:
Legal Department
2451 Atrium Way
Nashville, TN 37214
Phone # (615) 391-2605
Fax # (615) 231-4064


"Fine Clothing Since 1966"

October 18, 2002

Mr. Tracy Green
13 Pheasant Lane
Bloomfield, CT 06002

*Via Overnight Courier*
IMPORTANT

Re: Post-Termination Business Conduct and Fair Trade Practices

Dear Mr. Green:

This follows my letter to you of May 7, 2002.

I am concerned about recent reports of your calling on Tom James' clients to sell garments and wardrobe accessories. The conduct that is being described to me would be in violation of your contractual promises made to Tom James and contrary to applicable law relative protection of one's customer information and relationships.

Any sales solicitations by you of Tom James' clients in and around Hartford, Connecticut would be deemed quite regrettable. Additional unauthorized contacts with other Tom James customers done for the purpose of diverting their wardrobe purchases from Tom James cannot be allowed. If it continues, you should give serious consideration to damages claims that may be asserted against you, your business partners and your new business under the important legal principles of unjust enrichment, disgorgement, and wrongful interference of a business relationship.

This is not written to threaten but only to help you steer clear of a potential legal entanglement. If you wish to sell wardrobe items and you have questions about what latitude you may have legally *vis-à-vis* the scope of any restrictive covenants, promises of confidentiality, and the protection of Tom James' customer list, I encourage you or your legal representative to call me without delay at 615-391-2605.

On the other hand, to the extent that you and your partners are selling wardrobe items in a lawful manner that does not violate your promises made to Tom James or applicable law, and you are not interfering with our valued customer relationships, we here at Tom James truly wish you the best of luck.

Forthright and meaningful communications between us at this juncture is encouraged.

Sincerely,

Gary Pears
Gary T. Pears
Corporate Legal Counsel

Encl.   Prior letter of May 7, 2002

cc:     Thomas J. Finn, Esq.
        HALLORAN & SAGE LLP