32

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TOM JAMES COMPANY,                    :        CIVIL ACTION NO.
                                      :        303 CV 0596 (JBA)
          Plaintiff,                  :
                                      :
V.                                    :
                                      :
TRACE APPAREL LLC and                 :
J. TRACY GREEN,                       :
                                      :
          Defendants.                 :        NOVEMBER 26, 2003

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PREJUDGMENT REMEDY AND IN SUPPORT OF MOTION FOR DISCLOSURE OF ASSETS

HALLORAN & SAGE LLP
Thomas J. Finn
Federal Bar No.: ct 20929
Paula Cruz Cedillo
Federal Bar No.: ct 23485
One Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
(860) 522-6103

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN**
**& SAGE LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## INTRODUCTION

The plaintiff, Tom James Company ("Plaintiff" or "Tom James"), submits this Memorandum of Law in Support of its Application for Prejudgment Remedy and in Support of its Motion for Disclosure of Assets, dated November 26, 2003, brought pursuant to sections 52-278a to 52-278n of the Connecticut General Statutes, made applicable to federal court proceedings pursuant to Rule 64 of the Federal Rules of Civil Procedure.

## FACTS

This case involves unfair, unethical, and unlawful competitive conduct by the defendants, Trace Apparel LLC ("Trace Apparel") and J. Tracy Green ("Mr. Green") (Trace Apparel and Mr. Green are collectively referred to as "Defendants"). See Amended Verified Complaint, dated May 19, 2003 ("Verified Complaint"), at ¶ 7 (attached to the Application for Prejudgment Remedy as Exhibit A). Tom James has commenced this action to protect its legitimate business interests, to enjoin Defendants' unlawful, unfair, and unethical business conduct, and to recover significant economic losses caused by Defendants' unlawful, unfair, and unethical conduct. See Verified Complaint at ¶ 7.

## Tom James

Tom James' business involves the manufacture and retail sale of garments and wardrobe accessories, including high-quality men's and women's custom-made and made-to-measure clothing. See Verified Complaint at ¶ 8. Tom James does not

– 2 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

operate retail stores. <u>See</u> Verified Complaint at ¶ 9. Additionally, Tom James does not engage in traditional forms of advertising. <u>See</u> Verified Complaint at ¶ 9. Rather, Tom James advertises and markets through its sales professionals' efforts, its customer service, word of mouth, the Internet, and distribution of selected literature. <u>See</u> Verified Complaint at ¶ 9. Tom James obtains sales through personal presentations made by its trained sales persons ("sales professionals") to qualified customers in their offices and homes. <u>See</u> Verified Complaint at ¶ 10.

### Tom James' Customer Information and Trade Secrets and Tom James' Efforts to Keep Its Information and Secrets Confidential

Tom James' financial success is based largely on Tom James' ability, through its sales professionals' training, networking, and effort, to identify, sell, and service financially successful customers. <u>See</u> Verified Complaint at ¶ 11. Tom James' customers are not easily obtained. <u>See</u> Verified Complaint at ¶ 12. Tom James establishes customer relationships through direct person-to-person sales that require sales professionals to take a systematic approach to each workday, utilize good communication skills, utilize perseverance, and engage in considerable follow-up with customers and potential customers. <u>See</u> Verified Complaint at ¶ 12.

In order for Tom James to obtain a single order from one of Tom James' current customers, a sales professional and his or her sales assistant generally will make as many as twenty-five telephone calls to current customers. <u>See</u> Verified Complaint at ¶ 13. These twenty-five calls result in as few as six appointments. <u>See</u> Verified

- 3 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Complaint at ¶ 13. These appointments, in turn, result in typically no more than two or three presentations. See Verified Complaint at ¶ 13. These presentations, in turn, result in one order. See Verified Complaint at ¶ 13.

In order for Tom James to obtain a single order from a potential customer, the process is more difficult. See Verified Complaint at ¶ 14. A sales professional and his or her sales assistant may place telephone calls to the offices of as many as eighty prospective customers. See Verified Complaint at ¶ 14. During these eighty telephone calls, Tom James' sales professionals and sales assistants will speak personally with only approximately seventeen prospects. See Verified Complaint at ¶ 14. These prospects, in turn, result in up to seven appointments. See Verified Complaint at ¶ 14. These appointments, in turn, result in five presentations. See Verified Complaint at ¶ 14. These presentations, in turn, typically result in two orders. See Verified Complaint at ¶ 14.

Each order requires the sales professional to measure the customer, enter the order, coordinate with the origin of manufacture or distribution, assist in shipping, fitting, and follow-up customer service, and manage the account receivable. See Verified Complaint at ¶ 15. The sales professionals are given significant administrative support by Tom James in terms of their office staff, customer services, accounting, manufacturing, deliveries, and tailoring necessary to consummate each customer order. See Verified Complaint at ¶ 15.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Tom James' relationship with each of its customers is dependent, in part, upon the trust and competency placed by the customer in his or her sales professional.  See Verified Complaint at ¶ 16.  To maintain these customer relationships, Tom James' sales professionals keep extensive customer lists with specific information regarding the identity, specifications, and purchasing patterns of each customer.  See Verified Complaint at ¶ 16.  This customer information, created and maintained by Tom James, is a valuable asset belonging to Tom James.  See Verified Complaint at ¶ 16.

Tom James expends substantial effort to maintain the confidentiality of its customer information.  See Verified Complaint at ¶ 17.  For example, Tom James requires each employee to sign and agree to the terms of an employment agreement, pursuant to which the employee agrees not to disclose any of Tom James' customer information to anyone outside of Tom James.  See Verified Complaint at ¶ 17.

Additionally, Tom James requires each employee to sign and agree to the terms set forth in Tom James' conflict of interest policy.  See Verified Complaint at ¶ 18.  The conflict of interest policy provides that lists of customer identities and contact information are considered Tom James' proprietary information.  See Verified Complaint at ¶ 18.  The conflict of interest policy also identifies a number of potential conflicts of interest that must be avoided, including:  (1) use of confidential information; (2) rendition of services to other concerns; (3) failing to give full-time services to the company; and (4) competition with the company.  See Verified Complaint at ¶ 18.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Additionally, Tom James requires each employee to sign and agree to the terms set forth in Tom James' electronic mail policy. See Verified Complaint at ¶ 19. Tom James' electronic mail policy specifically prohibits employees from using Tom James' electronic mail system to communicate trade secrets and other confidential information to anyone outside of Tom James. See Verified Complaint at ¶ 19.

Additionally, the Information Systems Department of Tom James has implemented a confidentiality banner on Tom James' website. See Verified Complaint at ¶ 20. It has also incorporated a confidentiality banner on a number of important business records and forms that are used in the daily ordinary course of business of Tom James and its hundreds of sales professionals and office professionals. See Verified Complaint at ¶ 20. These business forms, which are automatically maintained with a confidentiality banner incorporated in them, include, but are not limited to, contact information, order summaries, outstanding tickets, and return worksheets. See Verified Complaint at ¶ 20. Samples of these forms demonstrating Tom James' use of the confidentiality banners are attached to the Verified Complaint as Exhibit 1 and are incorporated herein. See Verified Complaint at ¶ 20.

### The Commencement of Mr. Green's Employment with Tom James

Mr. Green was employed by Tom James for more than 13 years, from 1988 to 2001. See Verified Complaint at ¶ 21. At the time Mr. Green was hired, he entered into an employment agreement, dated August 30, 1988, with Tom James (the "Employment Agreement") in consideration for his employment. See Verified Complaint at ¶ 22. The

- 6 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Employment Agreement remained in effect since that date and throughout the course of Mr. Green's employment. It was supplemented from time to time with different pay plans. <u>See</u> Verified Complaint at ¶ 22. A copy of the Employment Agreement is attached to the Verified Complaint as Exhibit 2 and is incorporated herein. <u>See</u> Verified Complaint at ¶ 22.

Pursuant to the Employment Agreement, Mr. Green agreed that he would devote his time, attention, skills, and energies to the business and exclusive sale of Tom James' products. <u>See</u> Verified Complaint at ¶ 23. Additionally, pursuant to the Employment Agreement, Mr. Green also agreed to a "Disclosure of Information" provision, which sets forth as follows:

> [Mr. Green] recognizes and acknowledges that as a result of his . . . employment by [Tom James] he . . . has received and will become familiar with and acquire knowledge of confidential information and trade secrets including, among other things, [Tom James'] customer list, customer requirements, products, prices, costs, and sales techniques and methods developed by [Tom James]. [Mr. Green] therefore agrees that during the term of his . . . employment and for two (2) years after the termination of his . . . employment with [Tom James] for any reason whatsoever, he . . . will not disclose to any person, firm, or corporation information or trade secrets in any capacity except as an employee of [Tom James] and in the furtherance of the interests of [Tom James]. In the event of a breach or threatened breach by [Mr. Green] of the provisions of this paragraph, [Tom James] shall be entitled to an injunction restraining [Mr. Green] from disclosing or using, in whole or in part, such confidential information or trade secrets as have been disclosed or are threatened to be disclosed. The parties hereto agree that nothing herein shall be construed as prohibiting [Tom James] from pursuing any other

- 7 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> remedies available to it for any such breach or threatened
> breach, including the recovery of damages from [Mr. Green].
> [Mr. Green] agrees that should injunctive or other legal or
> equitable action be necessary and if successful that he . . .
> will be liable to [Tom James] for its legal fees, expenses and
> court costs required to obtain and enforce the court relief in
> question.

See Employment Agreement at ¶ 5; Verified Complaint at ¶ 24. Tom James has not

authorized Mr. Green, either orally or in writing, to use or disclose, or to permit any

unauthorized person or entity to use or disclose, the confidential and proprietary

information Mr. Green obtained regarding Tom James' customers during his

employment at Tom James. See Verified Complaint at ¶ 25. Additionally, Tom James

has not authorized Mr. Green to interfere with Tom James' customer relationships

through the use of any such information in the business of any person or entity other

than Tom James. See Verified Complaint at ¶ 25.

Additionally, pursuant to the Employment Agreement, Mr. Green further agreed

to the following "Restrictive Covenant" provision, which sets forth that:

> [Mr. Green] expressly recognizes and agrees that, as a
> result of employment by and training by [Tom James], he will
> acquire valuable information and knowledge concerning
> [Tom James'] customers, products, prices, and sales
> techniques and methods developed by [Tom James]. [Mr.
> Green], therefore, agrees that, during the period of his
> employment and for a period of two (2) years after
> termination of his employment with [Tom James] for any
> reason whatsoever (and regardless of whether such
> termination is due to [Mr. Green's] quitting or his . . . being
> discharged by [Tom James]), he will not engage, either
> individually or as an owner, employee, promoter, officer, or
> director of any other person or corporation directly or

- 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> indirectly, in any made-to-measure or custom-tailored
> clothing business that is competitive with the business of
> [Tom James] within geographical boundaries of the sales
> territory in which [Mr. Green] calls on, solicits, or deals with
> customers or is assigned as a Salesperson while employed
> by [Tom James].  The parties agree that the present sales
> territory is hereby defined as the following:  the City of
> Hartford, CT, plus fifty (50) miles in every direction measured
> from the city boundaries.
>
> [Mr. Green] and [Tom James] agree that the aforementioned
> sales territory may be modified by a written addendum to a
> different sales territory in the event of a mutually agreed-
> upon transfer.
>
> [Mr. Green] expressly agrees that, upon a breach or violation
> of any of the provisions of the restrictive covenant, [Tom
> James], in addition to all other remedies as provided by law,
> shall be entitled as a matter of right to injunctive relief in any
> court of competent jurisdiction.

See Employment Agreement at ¶ 7; Verified Complaint at ¶ 26.  Mr. Green never

complained to any supervisor or executive of Tom James during his employment with

Tom James that either the "Disclosure of Information" provision or the "Restrictive

Covenant" provision set forth in the Employment Agreement, as set forth in Paragraphs

23 and 25 of the Verified Complaint, was unfair or unreasonable.  See Verified

Complaint at ¶ 27.  To the contrary, Mr. Green, as a sales leader, had other newly-hired

sales professionals sign similar employment agreements that contained essentially the

same provisions.  See Verified Complaint at ¶ 27.

Additionally, Mr. Green signed Tom James' Conflict of Interest Policy on or about

February 15, 1994.  See Verified Complaint at ¶ 28.  A copy of the Conflict of Interest

- 9 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Policy is attached to the Verified Complaint as Exhibit 3 and is incorporated herein.  See

Verified Complaint at ¶ 28.  Mr. Green signed Tom James' Electronic Mail Policy.  See

Verified Complaint at ¶ 29.  A copy of Tom James' Electronic Mail Policy is attached to

the Verified Complaint as Exhibit 4 and is incorporated herein.  See Verified Complaint

at ¶ 29.

### The Tom James Way

Following commencement of his employment with Tom James, Mr. Green

attended and completed Tom James' sales school during August and September 1988.

See Verified Complaint at ¶ 30.  During sales school, Mr. Green was trained by

experienced Tom James sales leaders, executive leadership, and other sales

professionals.  See Verified Complaint at ¶ 30.

At sales school, Mr. Green was provided with intensive training on the various

aspects of Tom James' method of conducting business.  See Verified Complaint at ¶ 31.

In addition to learning, among other things, established and proven direct-selling

principles in general, Mr. Green also received from Tom James (at sales school and

thereafter) specific training regarding product features, body types, identifying likely

Tom James customers, cold-calling, scheduling, one-on-one presentations, measuring,

order entry, deliveries, fitting, promoting wardrobe accessories, collecting purchase

payments, obtaining and calling on referrals, follow-up, as well as how to attain

leadership in Tom James and how to increase his personal net worth while working for

- 10 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Tom James (collectively, all of these methods are referred to as the "Tom James Way"). <u>See</u> Verified Complaint at ¶ 31.

Upon completion of sales school, Mr. Green received from Tom James a kit that included measuring devices, clothing swatch cards, product promotional items, sales booklets, motivational literature, and other accessories to help Mr. Green get started in the clothing profession. <u>See</u> Verified Complaint at ¶ 32. The value of Tom James' training, training aids, and sales aids received by Mr. Green totaled more than $5,000.00. <u>See</u> Verified Complaint at ¶ 32. Upon information and belief, the training described above relative to the direct sales of quality garments and wardrobe accessories, which Mr. Green received as a result of being hired by Tom James, was not generally available in retailing in the United States at the time of his hire. <u>See</u> Verified Complaint at ¶ 33.

### Mr. Green's Employment with Tom James

Upon signing the Employment Agreement and completing sales school, Mr. Green was assigned to a territory under the daily supervision of a sales leader. <u>See</u> Verified Complaint at ¶ 34. As part of his employment, Mr. Green was required to generate business by calling on Tom James' prospects, customers, and referrals in his assigned territory. <u>See</u> Verified Complaint at ¶ 34.

Mr. Green worked as a sales professional and as a sales leader for Tom James, and was assigned principally to the greater Hartford, Connecticut, area. <u>See</u> Verified Complaint at ¶ 35. Mr. Green's sales territory and duties were part of the Achiever

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Division of Tom James, which covers essentially the northeast corridor of the United States from New York to Boston. <u>See</u> Verified Complaint at ¶ 35.

Mr. Green quickly learned and utilized The Tom James Way to become a promising sales professional with unusually high sales. <u>See</u> Verified Complaint at ¶ 36. He achieved Tom James' President's Club recognition for selling over 1,000 units of merchandise in only his second year at Tom James – a uniquely successful achievement. <u>See</u> Verified Complaint at ¶ 36. Mr. Green proceeded to receive President's Club recognition, as well as extra Diamond recognition, in a number of years during his thirteen-year employment with Tom James, becoming one of Tom James' top sales professionals over that period of time. <u>See</u> Verified Complaint at ¶ 36.

Through Mr. Green's foregoing training and mentoring, and by seeking and servicing Tom James' customers, Mr. Green received, became familiar with, and acquired special knowledge of, Tom James' customer information, as well as additional confidential and proprietary information and trade secrets, including, among other things, Tom James' products, manufacturing plans, marketing plans, unpublished financial information, unpublished personnel information, unpublished legal information, product roll-outs, swatch cards, cost information, and price information, as well as sales techniques and methods uniquely developed by Tom James over many years of considerable effort, experience, and expense. <u>See</u> Verified Complaint at ¶ 37.

- 12 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## Mr. Green's Compensation

Tom James compensated Mr. Green for his employment with Tom James. <u>See</u> Verified Complaint at ¶ 38. Throughout his employment with Tom James, Mr. Green received a monthly draw that was advanced against commissions earned. <u>See</u> Verified Complaint at ¶ 38. Mr. Green received total earnings in excess of $1.8 Million in connection with his employment with Tom James. <u>See</u> Verified Complaint at ¶ 39. In his last full five years of employment with Tom James, Mr. Green received total earnings (i.e., earned commissions, profit bonuses, and leadership pay), in excess of $881,000.00, averaging approximately $176,000.00 per year in total annual earnings. <u>See</u> Verified Complaint at ¶ 39.

Tom James also gave Mr. Green leadership responsibilities, starting in the years 1989 to1990. <u>See</u> Verified Complaint at ¶ 40. Tom James expected Mr. Green to grow Tom James' leadership organization by recruiting and hiring qualified and promising sales persons, training and mentoring them, managing their clothing careers and personal habits of success, promoting their personal financial growth. <u>See</u> Verified Complaint at ¶ 40. For those extra duties, Tom James paid Mr. Green leadership pay, which was part of his total earnings, based on the sales revenue and profits generated by the sales professionals within the organization that Mr. Green was expected to build and grow. <u>See</u> Verified Complaint at ¶ 40. Tom James paid Mr. Green leadership pay exceeding $683,000.00 during his employment with Tom James, averaging more than

- 13 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

$56,500.00 per year in leadership pay, excluding his first and last years of employment with Tom James. See Verified Complaint at ¶ 40.

Additionally, Tom James afforded Mr. Green several opportunities to be an equity owner of Tom James' privately-held stock. See Verified Complaint at ¶ 41. The value of the stock is determined annually by the Board of Directors of Tom James. See Verified Complaint at ¶ 41. The Board of Directors uses a formula of dividing the projected after-tax profits by the projected number of shares issued in order to calculate projected earnings per share. See Verified Complaint at ¶ 41. The Board of Directors then multiplies the earnings per share by a multiple to produce the stock value. See Verified Complaint at ¶ 41. Principally, the stock value is determined by the sales revenues generated by Tom James' sales force and by the success or lack of success of Tom James' sales leaders. See Verified Complaint at ¶ 41. As Tom James nets more profit, projected earnings increase and the value per share increases correspondingly. See Verified Complaint at ¶ 41.

Mr. Green benefited significantly from a number of stock ownership opportunities made available to him by Tom James. See Verified Complaint at ¶ 42. During his employment with Tom James, Mr. Green either subscribed to, or was awarded as a bonus, 56,806 shares of stock in Tom James with a value of greater than $343,000.00, for which he paid a total of $128,775.87. See Verified Complaint at ¶ 42. Over time, Tom James has bought back a certain amount of that stock, and has paid Mr. Green $200,882.17 for it. See Verified Complaint at ¶ 42. Mr. Green has enjoyed only gains

- 14 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

for these stock holdings since the date he began his employment with Tom James. <u>See</u> Verified Complaint at ¶ 42. The current value of the remaining stock held by Mr. Green totals approximately $142,595.00. <u>See</u> Verified Complaint at ¶ 42.

Tom James also maintains a 401K Plan and a Profit-Sharing Plan for its qualified employees, including Mr. Green, who was 100-percent vested in both the 401K Plan and the Profit-Sharing Plan when he terminated his employment with Tom James. <u>See</u> Verified Complaint at ¶ 43. The Schwab Plan account that Tom James maintained for Mr. Green was over $137,000.00 in December 2002. <u>See</u> Verified Complaint at ¶ 43. Of this amount, Mr. Green's personal investments and investment earnings totaled approximately $87,274.00, which Tom James matched with contributions that also have accrued investment earnings of $16,181.00. <u>See</u> Verified Complaint at ¶ 43. In addition, Tom James has contributed to Mr. Green's profit sharing account. <u>See</u> Verified Complaint at ¶ 43. These contributions, with accrued investment earnings, totaled approximately $39,370.00 in December 2002. <u>See</u> Verified Complaint at ¶ 43.

### Mr. Green's Resignation from Tom James

During most of the 1990s, Mr. Green managed, and was compensated to lead, Tom James' employees within the Achiever Division of Tom James. <u>See</u> Verified Complaint at ¶ 44. This division of Tom James was once known as Infinity, and later became known as Achiever Northeast. <u>See</u> Verified Complaint at ¶ 44. Mr. Green's management of the sales professionals over which Mr. Green had direct supervision

- 15 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

came into question during the last few years of his leadership at Tom James.  <u>See</u> Verified Complaint at ¶ 45.

The organization of Tom James for which Mr. Green was responsible was restructured in the Fall of 2000.  <u>See</u> Verified Complaint at ¶ 46.  Mr. Green was subsequently relieved of certain leadership responsibilities.  <u>See</u> Verified Complaint at ¶ 46.  Upon information and belief, Mr. Green advised his supervisor that he intended to leave the employ of Tom James following the restructuring.  <u>See</u> Verified Complaint at ¶ 47.  Following conversations and correspondence with members of Tom James' management, Mr. Green elected to remain with Tom James in late 2000.  <u>See</u> Verified Complaint at ¶ 47.

In conjunction with Mr. Green electing to remain with Tom James, Tom James provided Mr. Green with a special and enhanced pay plan not made generally available to others.  <u>See</u> Verified Complaint at ¶ 48.  Additionally, Tom James excused Mr. Green from attending or presenting daily and weekly sales meetings, as is required of all other sales professionals and their leaders.  <u>See</u> Verified Complaint at ¶ 48.  Tom James directed Mr. Green to sell as best he could in the greater Hartford, Connecticut, area under the supervision of an experienced sales leader in Texas whom Mr. Green had known and admired for most of his career at Tom James.  <u>See</u> Verified Complaint at ¶ 48.  Under Mr. Green's new pay plan, Mr. Green received an increase in his commissions earned on personal sales to offset the loss of his leadership pay.  <u>See</u> Verified Complaint at ¶ 49.

- 16 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Mr. Green continued his employment with Tom James throughout 2001 under the foregoing preferential conditions following the restructuring of the organization and implementation of the new pay plan. <u>See</u> Verified Complaint at ¶ 50.  Despite the restructuring, the reduction in leadership duties, and the new pay plan, while selling under the supervision of a close friend in management, and contrary to his stellar sales record at Tom James from 1988 to 2000, Mr. Green's performance with Tom James, and the sales revenues generated by his orders with Tom James, significantly declined during 2001.  <u>See</u> Verified Complaint at ¶ 51.  Total revenues from Mr. Green's sales dropped from $529,881.00 in 2000 to $344,888.00 in 2001.  <u>See</u> Verified Complaint at ¶ 52.  Units sold by Mr. Green declined from 1189.03 units in 2000 to 767.79 units in 2001, a 35.43-percent decrease.  <u>See</u> Verified Complaint at ¶ 52.

Mr. Green tendered a letter of resignation, dated December 12, 2001, to his supervisor announcing that he intended to quit working for Tom James.  <u>See</u> Verified Complaint at ¶ 53.

When a sales professional leaves Tom James, Tom James employs transitional measures to ensure that it maintains the customer relationships that were developed by Tom James through that sales professional.  <u>See</u> Verified Complaint at ¶ 54.  These transitional measures include communicating with the former sales professional and his customers, assigning other sales professionals to those customers, and offering those customers discounts and other incentives to encourage them to continue to purchase products from Tom James.  <u>See</u> Verified Complaint at ¶ 54.  If Tom James is not able to

- 17 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

employ these measures, it is likely to lose customers serviced by the former sales professionals. <u>See</u> Verified Complaint at ¶ 54.

Mr. Green failed to follow reasonable transitional measures normally employed by Tom James upon the departure of a sales professional. <u>See</u> Verified Complaint at ¶ 55. Mr. Green knew that Tom James normally employed transitional measures to ensure that customer relationships did not decrease upon the departure of a sales professional. <u>See</u> Verified Complaint at ¶ 55. Specifically, Mr. Green provided his supervisor with very short notice of his resignation. <u>See</u> Verified Complaint at ¶ 56. Additionally, Mr. Green did not advise the customers with whom he worked that Tom James would continue to be available to provide for their wardrobe needs. <u>See</u> Verified Complaint at ¶ 56. Further, Mr. Green did not introduce these customers to a newly-assigned Tom James sales professional, and Mr. Green did not discuss the information regarding these customers, including the identity of the customers, with any newly-assigned sales professional. <u>See</u> Verified Complaint at ¶ 56.

<b><u>Mr. Green's Misappropriation of Tom James'<br>Customer Information and Trade Secrets</u></b>

Since Mr. Green's resignation from Tom James, Mr. Green engaged in 2002, and continues to engage in 2003, in the custom-made and made-to-measure clothing business, Trace Apparel, within a fifty-mile radius of Hartford, Connecticut, in direct competition with the business of Tom James and in violation of the parties' Employment Agreement. <u>See</u> Verified Complaint at ¶ 57. Indeed, Defendants were unlawfully

- 18 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

selling custom-made and made-to-measure clothing to customers in the Hartford area as early as January 2002, just one month after Mr. Green's resignation from Tom James. See copies of Trace Apparel sales invoices, dated January 2002, attached hereto as Exhibit A.

Mr. Green has utilized, and continues to utilize, Tom James' customer information in operating Trace Apparel. See Verified Complaint at ¶ 59. Mr. Green retained customer lists of Tom James' customers to whom he previously sold Tom James' products while employed by Tom James. See list of Tom James' Clients, attached hereto as Exhibit B. Defendants have used this confidential and proprietary information to solicit sales from these Tom James' customers. See sample copies of sales invoices to Tom James' customers, attached hereto as Exhibit C.

Defendants' conduct is a direct and blatant violation of the Disclosure of Information and Restrictive Covenant provisions set forth in the parties' Employment Agreement. Mr. Green's disclosure of Tom James' confidential and proprietary and trade secret information in connection with operating Trace Apparel has directly damaged Tom James.

Upon information and belief, Mr. Green has also encouraged, advised, induced, or otherwise solicited other Tom James sales professionals to leave their respective employment with Tom James to sell clothing in competition with Tom James. See Verified Complaint at ¶ 61.

- 19 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

On May 7, 2002, Tom James sent correspondence to Mr. Green, by certified mail and overnight courier, informing him that it was Tom James' position that he was violating the terms of the Employment Agreement by directly taking away Tom James' customers by using customer lists and/or recollections of Tom James' customers' identities and customer histories, and that Tom James fully intended to use all resources to uphold and enforce the Employment Agreement and its covenants. See Verified Complaint at ¶ 62. In the May 7, 2002, correspondence, legal counsel for Tom James informed Mr. Green that the identity and customer information regarding the individual clients in the Hartford area were protected trade secrets and proprietary information of Tom James. See Verified Complaint at ¶ 62. Tom James requested that Mr. Green refrain from making unauthorized contact with these customers. See Verified Complaint at ¶ 62. A true and accurate copy of the May 7, 2002, correspondence is attached to the Verified Complaint as Exhibit 5 and is incorporated herein. See Verified Complaint at ¶ 62.

In the May 7, 2002, letter, corporate legal counsel for Tom James also demanded the immediate return of all documents and electronic media containing Tom James' customer information and other confidential information and trade secrets. See Verified Complaint at ¶ 63. Mr. Green did not respond to Tom James' May 7, 2002, correspondence. See Verified Complaint at ¶ 64.

On October 18, 2002, Tom James sent additional correspondence to Mr. Green, by overnight courier, informing him again that it was Tom James' position that Mr. Green

- 20 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

was violating the terms of the Employment Agreement. A copy of the October 18, 2002,

correspondence is attached to the Verified Complaint as Exhibit 6 and is incorporated

herein. Tom James requested that Mr. Green cease any activities involving solicitation

of Tom James' clients in the Hartford area. See Verified Complaint at ¶ 65. Mr. Green

did not respond to Tom James' October 18, 2002, correspondence. See Verified

Complaint at ¶ 66.

During the Fall of 2002, the founder of Tom James attempted on a number of

occasions to contact Mr. Green for the purpose of meeting with him personally to

discuss Mr. Green's stock in the company and to encourage Mr. Green to cease

harming the company and its employees by misappropriating or otherwise interfering

with Tom James' customer relations. See Verified Complaint at ¶ 67. Although Mr.

Green did speak briefly with the founder on one occasion and indicated that he would

later speak with the founder, Mr. Green refused to meet with the founder of Tom James

for further discussions. See Verified Complaint at ¶ 67.

### Tom James' Loss of Revenues

Tom James has suffered considerable loss of business opportunity that would

have been realized by purchases from the customers formerly serviced by Mr. Green

who now conduct business with Defendants' competing clothing business. Since Mr.

Green resigned from Tom James, other Tom James sales professionals have attempted

to sell to the customers previously serviced by Mr. Green. However, many of those

- 21 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

customers have not purchased from Tom James since Mr. Green left Tom James as a result of Defendants' ongoing competition. See Verified Complaint at ¶ 68.

Defendants' gross sales revenues for the period from January 2002 through May 2003 totaled $587,086. See Trace Apparel Profit and Loss by Job, dated January - December 2002, and dated January - May 2003, attached hereto as Exhibit D. $448,682, or 76.4 percent, of this sales revenue is comprised of sales made to previous Tom James' customers. Compare Exhibit B with Exhibit D (evidencing $310,077.89 of sales revenue for 2002 and $138,604.10 of sales revenue for the period January to May 2003 generated from sales to customers serviced by Mr. Green while employed by Tom James). Moreover, the remaining $138,404 is further evidence of Tom James' loss in revenues from lost purchasing opportunities directly caused by Defendants' unlawful competition. See id.

As further illustration of the detrimental impact of Defendants' unfair competition upon Tom James, Mr. Green sold products to, and serviced hundreds of, Tom James' customers during his employment with Tom James. See Verified Complaint at ¶ 70. During the period of 1997 through 2002, Mr. Green sold and serviced approximately 427 Tom James' customers. See Verified Complaint at ¶ 70. Sales revenues generated during this period were approximately $2,513,000.00, or an average of $502,000 per year. See Verified Complaint at ¶ 71. Yet, as a result of Defendants' direct competition, only approximately 39 customers of the 427 previous Tom James' customers have purchased Tom James products from another Tom James sales

- 22 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

professional as of February 6, 2003. <u>See</u> Verified Complaint at ¶ 72. Those purchases totaled only $56,483.00. <u>See</u> <u>id.</u>

Additionally, Mr. Green's departure has caused damage to Tom James' manufacturing operations. <u>See</u> Verified Complaint at ¶ 73. When a custom garment is ordered, manufacturing work is created for a Tom James factory and its workers. <u>See</u> Verified Complaint at ¶ 73. When orders decline, manufacturing production and the need for factory workers decreases. <u>See</u> Verified Complaint at ¶ 73. Mr. Green's departure and subsequent wrongful competition adversely affected and damaged Tom James' manufacturing operations and contributed to the loss of Tom James' factory workers' jobs in Tom James' factories. <u>See</u> Verified Complaint at ¶ 73.

### Tom James' Loss of Referrals

Much of the success of Tom James and Mr. Green while at Tom James, as with the other successful sales professionals, is based on customer referrals. <u>See</u> Verified Complaint at ¶ 74. Upon information and belief, over time, a Tom James customer can provide a Tom James sales professional with as many as ten potential customers (referrals) each year. <u>See</u> Verified Complaint at ¶ 75. Of those ten referrals, an average of six prospects become Tom James customers. <u>See</u> Verified Complaint at ¶ 75. Thus, when Tom James loses one customer to competition, it can lose up to six additional customers within a year of losing that customer. <u>See</u> Verified Complaint at ¶ 75.

- 23 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105