UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOM JAMES COMPANY,<br><br>                            PLAINTIFF<br><br>VS.<br><br>J. TRACY GREEN, ET AL.<br><br>                          DEFENDANTS | CIVIL ACTION NO.<br><br>3:03cv00596 (JBA)<br><br><br><br>December 15, 2003 |

**MEMORANDUM IN OPPOSITION OF MOTION TO DISMISS**

The defendant J. Tracy Green (hereinafter, "Green") hereby submits this memorandum in opposition to the motion to dismiss his counterclaim, dated November 7, 2003, filed by the plaintiff Tom James Company (hereinafter, "Tom James"). For the reasons set forth herein, the motion to dismiss must be denied.

I.  **FACTUAL BACKGROUND**

Tom James initially commenced this action against Green, nearly eighteen months after Green left his employment with Tom James, claiming that Green violated a non-competition agreement and misappropriated trade secrets. Green was employed by Tom James from 1988 to 2001, and during this time period, Green was a Participant in the Tom James Company 401 (k) and Profit Sharing Plan

(hereinafter, the "Plan").  Amended Counterclaim, October 23, 2003, at 8-9.  Green had been employed by Tom James for more than seven (7) years, and as such, the benefits that he had accrued under the Plan were nonforfeitable under the terms of the Plan and under federal statute.  Amended Counterclaim, supra, at ¶ 14.

After Green left Tom James employ, he requested that Tom James distribute his vested, accrued benefits under the Plan. Amended Counterclaim, supra, at ¶ 16. Tom James refused, citing a company policy not to honor the terms of the Plan or federal statute where it, in its own discretion, believed the funds might be used to foster competition with Tom James. Amended Counterclaim, supra, at ¶ 17.

Additionally, during Green's employment with Tom James, he participated in an employee stock ownership plan. Amended Counterclaim, supra, at ¶ 20.  At the time his employment with Tom James concluded, Green owned 48,356 shares of Tom James stock, and was vested with subscription agreements to purchase an additional 2,414 shares. Amended Counterclaim, supra, at ¶ 21.  Green sought to redeem this stock, and Tom James refused to redeem Green's stock, again in an attempt to deprive ex-employees of funds that might finance a competitive venture. Amended Counterclaim, supra, at ¶ 22.

In March, 2003, Tom James further refused to pay to Green a declared dividend, where it paid such dividend to other comparably situated stockholders. Amended Counterclaim, supra, at ¶ 24. These actions, taken together, are nothing more than a heavy-handed attempt by Tom James to suppress competition with it by its ex-employees.

At this point, Tom James owes Green as compensation for his stock and its failure to pay a dividend to Green. Tom James also must release Green's accrued benefits to him. Additionally, however, Tom James must be called onto the carpet for its blatant violation of the federal statutes governing 401 (k) plans, and its illegal actions must be enjoined. Accordingly, Green has filed a counterclaim, seeking not only compensatory damages, but also an injunction, attorneys fees, and punitive damages.

Specifically, Green has alleged claims for breach of contract, payment of benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. (hereinafter, "ERISA"), an injunction against Tom James' continued violations of ERISA, violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110, et seq. (hereinafter, "CUTPA"), and for violations of corporate law.

Tom James has filed this motion to dismiss Green's claim for an injunction against Tom James' continued violations of ERISA , and Green's claim for damages based on Tom James' unfair trade practices.  For the reasons set forth herein, Tom James' motion must be denied.

II.  **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) challenges a pleading for failure to state a cognizable claim upon which relief can be granted, accepting its factual allegations as true and drawing all inferences in the Board's favor. DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003).  The party who is making a motion to dismiss must meet a "heavy burden because such motions run contrary to the strong institutional bias in American jurisprudence to have matters decided on their merits." In re Everfresh Beverages, Inc. v. Charterhouse Group International, Inc., 238 B.R. 558, 570 (S.D.N.Y. 1999) (citing Baker v. Cuomo, 58 F.3d 814, 818 (2d.Cir. 1995)).

"The court may not dismiss a complaint unless it appears beyond reasonable doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Jaghory v. New York State Department of Education, 131 F.3d 326, 329 (2d Cir. 1997) (internal quotation omitted).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support its claims." York v. Association of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

III.    **ARGUMENT**

Rule 8 (a) (2) of the Federal Rules of Civil Procedure requires that a complaint include "only a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. Swierkiewicz, supra, 534 U.S. at 512.

"It bears repeating, therefore, that at this stage of the proceedings, plaintiffs need not establish that they will likely prevail in their claim, but merely that they are entitled to present evidence in support of their claim." Bish v. Aquarion Services Co. Civil Action No. 3:03CV1118 (JBA), 2003 WL 22351018, at *5 (D.Conn 2003). Under the notice pleading standard, a court may dismiss a complaint only if it is clear

that no relief could be granted under <u>any</u> set of facts that could be proved consistent with the allegations. <u>Swierkiewicz</u>, 534 U.S. at 513-14.

Tom James' motion to dismiss completely ignores these liberal federal pleading rules. It quibbles about the definition of terms, attempts to cast narrow limits on the scope of the allegations, and fails to recognize the breadth of the statutory protections invoked by the counterclaim. The counterclaim amply satisfies the notice pleading standards of the federal rules, and the motion to dismiss must be denied.

A. **GREEN'S COUNTERCLAIM STATES A CLAIM FOR AN INJUNCTION AGAINST TOM JAMES FOR ITS REPEATED VIOLATIONS OF ERISA.**

ERISA is a "comprehensive and reticulated statute," which imposes a broad range of requirements on private pension plans. <u>Nachman Corp. v. Pension Benefit Guaranty Corp.</u>, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). ERISA specifically provides for a cause of action by a participant or beneficiary to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan. 29 U.S.C. § 1132 (a) (3) (A).

Count Two of the Amended Counterclaim seeks an injunction against Tom James' violations of two specific provisions of ERISA. First, Green alleges that Tom James, by adopting policies that are designed to withhold accrued benefits from

participants, has violated the minimum vesting schedules set forth in 29 U.S.C. § 1053 (a). Second, Green alleges that these policies also provide for a time of payment of accrued benefits that exceeds that set forth in 29 U.S.C. § 1056 (a). Each of these violations are specifically alleged, and more than satisfy the notice pleading requirements of the federal rules.

Tom James does not challenge the substance of Green's allegations. Instead, it first argues that Green's allegations are insufficient to state a violation of 29 U.S.C. § 1053 (a), because that section does not govern the distribution of benefits, only the time at which such benefits become nonforfeitable.

This argument is a matter of semantics, and must be rejected by the Court. Tom James ignores the <u>effect</u> that its actions have on the distribution of benefits. There is no doubt that Green is fully vested under the terms of the plan and under 29 U.S.C. § 1053 (a). Amended Complaint, supra, at ¶ 14. Accordingly, under the terms of the Plan and 29 U.S.C. § 1056 (a), he should be permitted to an unqualified distribution of benefits twelve (12) months after he left Tom James' employ.

Tom James has refused to permit such a distribution, as a result of the policies that it has adopted in the course of the administration of the plan. Since Tom James' policies refuse to permit the distribution of benefits to participants that

are entitled to an <u>unqualified</u> distribution of such benefits, it has worked a forfeiture of vested benefits.  Thus, even though Green has more than 7 years of service with Tom James, and 29 U.S.C. § 1053 (a) provides that benefits are nonforfeitable after (7) years, Tom James has unilaterally imposed a new, longer vesting schedule.

Accordingly, Tom James has <u>altered</u> the requirements of the Plan and of ERISA.  Green's choice of the phrase "unqualified distribution of benefits" was intended to describe the mechanism by which Tom James worked the alteration and imposition of an illegal vesting schedule.  This phrase is sufficiently related to the vesting schedule concept to state a claim for a violation of 29 U.S.C. § 1053 (a). Tom James should not be permitted to escape repercussions for its blatant violations of ERISA by resort to word games.

Tom James' claim that Green has not stated a violation of 29 U.S.C. § 1056 (a) is even more obscure.  Tom James argues only that Green has not provided any factual support for its allegation that the Plan and/or Policies do not provide for the unqualified distribution of benefits.  This statement ignores the specific reference to Tom James' policies by adoption date.  Amended Counterclaim, supra, at ¶ 18. Green has also alleged that these particular policies violate the provisions of 29 U.S.C. § 1056 (a) because they do not provide for the unqualified distribution of

benefits. Amended Counterclaim, supra, at ¶ 31.  These allegations are more than sufficient to state a claim under federal notice pleading standards.

B.      **GREEN'S CUTPA CLAIM IS NOT PREEMPTED BY ERISA.**

Tom James next focuses its efforts on Green's CUTPA claim, by arguing that it is partially preempted by ERISA itself.  It is important that even should Tom James' preemption argument succeed, the entire CUTPA claim will not be resolved.  This is because Green's CUTPA claim is not based on Tom James' actual violations of ERISA, but rather, its attempts to abuse its ERISA obligations to carry out a scheme to suppress competition.

The scope of preemption under ERISA is well established.  New York State Conference of Blue Cross and Blue Shield v. Travelers Ins. Co., 514 US 645 (1995). Analysis of the preemption clause under ERISA begins with the presumption that "Congress does not intend to supplant state law."  Id. at 654.  Indeed, it is apparent that Congress did not "mean to preempt all laws having any impact on such plans [ERISA plans], no matter how small or how tangential."  Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 145 (2d Cir. 1989).  As a result, the preemption clause must not be read overexpansively.  Id.  A party attempting to overcome the anti-preemption presumption must convince the Court that there is something "[I]n the

practical operation of the challenged statute to indicate that it is the type of law that Congress specifically aimed to have ERISA supersede. DeBuono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806 (1997).

In general, state laws are only subject to preemption under ERISA under two sets of circumstances: (1) where a state law either acts solely on ERISA plans or is contingent upon the existence of such plans for its operation, (2) where a state law makes no reference to ERISA plans but has a clear connection with a plan in a sense that it mandates employee benefit structures or their administration or provides alternative enforcement mechanisms. Plumbing Indus. Bd. v. E.W. Howell Co., Inc., 126 F.3d 61, 66 (2d Cir. 1997). Beyond these two areas, "the presumption against preemption is considerable." Id.

Here, Tom James cannot overcome the presumption against preemption in the context of its 12(b)(6) motion. Specifically, in the instant motion, Tom James erroneously contends that Defendant's CUTPA counterclaim is preempted because: (1) it "refers to an ERISA Plan as the existence and interpretation of the plans at issue are essential to establishing liability under CUTPA; Memo. Supp. Mot. Dis. at 16; and, (2) "[i]t provides Defendant with an alternative relief not afforded by ERISA." Memo. Supp. Mot. Dis. at 16. As set forth below, Tom James' arguments

-10-

misconstrue Green's theory of liability and are misplaced.

As the Amended Counterclaim reveals, Green does not alleging that Tom James incurred liability under CUTPA solely for unlawfully denying him ERISA benefits. Rather, Green's CUTPA counterclaim is supported by, *inter alia,* his allegations that: (1) Tom James adopted unlawful retirement policies; Amended Counterclaim, supra, at ¶ 18; (2) Tom James adopted such unlawful policies to adversely affect employees and ex-employees such as Green; Amended Counterclaim, supra, at ¶19; and, (3) Tom James utilized such unlawful policies to suppress prospective competition from its former employees, such as Green. Amended Counterclaim, supra, at ¶ 25.

Stated another way, Green is alleging that Tom James adopted unlawful policies to improperly deny ERISA benefits, policies that Tom James must prohibited from continuing, and that Tom James is liable to Green under CUTPA for utilizing the same unlawful policies to suppress competition from its former employees. It is this distinction that renders the preemption provisions of ERISA inapplicable to this instance, particularly at this stage of the pleadings. ERISA simply does not cover an employer's attempts to misuse its responsibilities as a plan fiduciary for a business purpose, the suppression of competition from its ex-employees.

In sum, Green's CUTPA claim does not "refer to" an ERISA plan, nor does it provide Green with alternative relief not afforded by ERISA such that preemption is warranted. Accordingly, Tom James' motion to dismiss on this basis must be denied.

C.  **THE COUNTERCLAIM ADEQUATELY STATES A CLAIM FOR CUTPA VIOLATIONS**

Tom James' final attempt to avoid liability for its blatant unfair and anti-competitive trade practices is to argue that (a) the alleged acts are not within its "trade or business" and are therefore not covered by CUTPA, and (b) that a simple breach of contract can not constitute a violation of CUTPA. While these propositions are certainly accurate statements of the nature of CUTPA law, Tom James misapplies them to Green's claims. Accordingly, the motion to dismiss must be denied.

CUTPA provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce." Conn. Gen. Stat. § 42-110b. "Trade or commerce" is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen.

Stat. § 42-110a.  The Act "must be liberally construed in favor of those whom the legislature intended to benefit." Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 492, 656 A.2d 1009 (1995), quoting Concept Associates, Ltd. v. Board of Tax Review, 229 Conn. 618, 623, 642 A.2d 1186 (1994).

    The Connecticut Supreme Court has not yet interpreted the "trade or commerce" provision of CUTPA, and cases addressing the issue have reached two diverging views in determining the definition of "trade" or "commerce."  Courts in this district have held that where the actions of the defendant are incidental to its primary business, it cannot be liable under CUTPA.  See Arawana Mills Co. v. United Technologies Corp., 795 F.Supp. 1238, 1252-1253 (D.Conn. 1992).  Conversely, other courts have followed the conclusion reached by Massachusetts courts in interpreting the Massachusetts Unfair Trade Practices Act, which is that a transaction need not take place in the defendant's ordinary course of business so long as it takes place in a "business context." Abely Waste Oil v. Ravenswood Development Corp., Superior Court, Judicial District of New Haven, Docket No. CV 95 0369487 S, 1995 WL 562203 (September 15, 1995) (Hartmere, J.).

    The factual allegations of the counterclaim demonstrate that Tom James' actions are more than incidentally related to its primary business, and certainly were

taken in a business context. Green alleges a number of actions taken by Tom James that directly relate to the manner in which Tom James uses its retirement and stock ownership plans to unfairly exercise control over the actions of its ex-employees. Tom James' actions are directly intended to suppress competition with its own sales operations, which Tom James itself contends is its primary business. <u>See</u>, Memo. Supp. Mot. Dismiss, <u>supra</u>, at 18 ("Tom James is in the manufacture and retail sale of garments and wardrobe accessories").

Further, Tom James cannot seriously contend that the manner in which it relates to its employees are not at the <u>heart</u> of its primary business. Obviously, as a sales company, Tom James relies on its salesmen and saleswomen to conduct its business. The compensation and benefits paid to these individuals, particularly when those programs are used to suppress competition, must be considered to be within Tom James' "primary" business.

In any case, the standard of review on a Rule 12 (b) (6) motion to dismiss requires that the Court accept Green's allegations as true. Green has alleged certain actions by Tom James, with certain consequences to Green. Indeed, Green specifically alleges that "[t]he actions taken by Tom James as specified above were taken <u>in an attempt to suppress competition</u>, and as such, were taken within the

-14-

course of Tom James' trade or business." Amended Counterclaim, supra, at ¶ 25 (emphasis added).  Tom James cannot quibble with the stated facts in an attempt to secure a dismissal; any such argument must be made in a motion for summary judgment or at trial.  Green has sufficiently alleged that Tom James' actions were in the course of trade or commerce, and as such, under the federal notice pleading standards, his claim under CUTPA is legally sufficient.

Tom James' further argues that a CUTPA claim can not simply incorporate a breach of contract claim as a violation of CUTPA.  This is a correct statement of the law.  See, Boulevard Associates v. Sovereign Hotels, Inc., 72 F.3d 1029, 1039 (2d Cir.1995).  However, Tom James' argument represents a gross simplification of Green's claim.

Unlike the Complaint in Boulevard Associates, Green's CUTPA claim does not simply incorporate the allegations of a breach of contract claim.  Indeed, the Amended Counterclaim details a number of actions taken by Tom James that constitute a violation of ERISA, as well as several breaches of contract.  See, Amended Complaint, supra, at ¶¶ 16 to 24.  Green further alleges that Tom James took these actions in an attempt to suppress competition by its former employees.  See, Amended Complaint, supra, at ¶ 25.  Together, these actions constitute a plan

by Tom James to unfairly use its compensation and benefit schemes to deprive its ex-employees of federal statutory and contractual rights, to minimize competition from these ex-employees.

Tom James argues that Green has not set forth what <u>additional</u> facts make Tom James' conduct into an unfair trade practice, rather than a simple breach of contract. Green submits that this argument has got it backwards. Green's allegations demonstrate that Tom James' has engaged in unfair trade practices that <u>also</u> happen to constitute a breach of contract. Accordingly, there is no need for additional allegations.

As noted previously, "at this stage of the proceedings, plaintiffs need not establish that they will likely prevail in their claim, but merely that they are entitled to present evidence in support of their claim." <u>Bish</u>, <u>supra</u>, 2003 WL 22351018, at *5 Under the notice pleading standard, a court may dismiss a complaint only if it is clear that no relief could be granted under <u>any</u> set of facts that could be proved consistent with the allegations. <u>Swierkiewicz</u>, 534 U.S. at 513-14.

The federal rules require only "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Green has detailed the acts Tom James has committed that, when

taken together, constitute a scheme to suppress competition from its ex-employees. Green has therefore placed Tom James on sufficient notice as to his claim, and has met the pleading burden of the federal rules.

IV. **CONCLUSION**

For the foregoing reasons, Tom James' motion to dismiss must be denied.

> THE DEFENDANT
> J. TRACY GREEN
>
>
> By: _____//ss//_____
> Thomas A. Rouse, Fed. Bar No. ct06128
> Peter S. Olson, Fed. Bar No. 16149
> Pullman & Comley, LLC
> 850 Main Street, P.O. Box 7006
> Bridgeport, CT  06601-7006
> 203.330.2000
> Facsimile 203.576.8888
> Their Attorneys

## **CERTIFICATION**

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on December 15, 2003 to all counsel and pro se parties of record.

For the plaintiff TOM JAMES COMPANY:

Thomas J. Finn
Paula Cruz Cedillo
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
860.522.6103
Facsimile 860.548.0006

_____//ss//_____
Thomas A. Rouse, Fed. Bar No. ct01326
Peter S. Olson, Fed. Bar No. ct16149

BPRT/67708.2/PSO/500130v1