**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TOM JAMES COMPANY, | CIVIL ACTION NO. |
| PLAINTIFF | 3:03cv00596 (JBA) |
| VS. | |
| J. TRACY GREEN, ET AL. | January 13, 2004 |
| DEFENDANTS | |

**MEMORANDUM IN OPPOSITION TO**
**MOTION TO COMPEL ELECTRONIC DISCOVERY**

The defendants J. Tracy Green (hereinafter, "Green") and Trace Apparel, LLC (hereinafter, "Trace") hereby file this memorandum in opposition to the motion to compel electronic discovery dated December 18, 2003 [Doc. 40] filed by the plaintiff Tom James Company (hereinafter, "Tom James" or the "Company"). Tom James' motion seeks to compel Green and Trace to provide unfettered access to its electronic data, to review electronically stored documents and to attempt to recover fragments of data that may no longer exist. The support for this request is nothing more than trumped-up conjecture, supported by misrepresentations to the Court.

Green and Trace had no obligation under the federal rules to accede to Tom James' unreasonable and intrusive request. Nevertheless, Green and Trace attempted to cooperate with Tom James' request. Green and Trace sought only a commitment from Tom James that a reasonable protocol would be implemented that

would protect Green and Trace's rights in the discovery process, including the right to review any recovered information for relevance, privilege, or other confidentiality concerns, and to produce only that which is responsive, relevant, and not protected. Tom James refused to even propose a protocol that did not include its right to review all of the electronic documents and recovered information, regardless of these important concerns.

This motion is merely the latest in a series of actions by Tom James that abuse the litigation process, to harass and intimidate Green. Accordingly, the Court must deny the motion.

I.    **FACTUAL BACKGROUND**

Tom James employed Green for over thirteen (13) years, both in a sales and in a management capacity. Tom James is in the business of the manufacture and sale of custom clothing and accessories, and Green had responsibility for its operations in the Hartford, Connecticut area. Beginning around 1999, Tom James began to strip Green of his management responsibilities, as well as the corresponding compensation. Green was left with no choice but to resign his employment, which he did in December, 2001.

Since Green left Tom James, the Company's behavior towards Green has been remarkably poor. Tom James has placed a hold on Green's 401 (k) retirement account, refusing to pay over the funds in the account, in direct violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. (hereinafter,

"ERISA").  Tom James has refused to redeem stock held by Green, in violation of its long-standing policies.  Tom James has paid dividends to its shareholders, but has refused to pay over such dividends to Green.

Most importantly, nearly eighteen (18) months after Green left Tom James, the Company brought this civil action purporting to enforce a non-competition agreement signed by Green when he was first hired, and alleging various tortious actions by Green.  The alleged non-competition agreement runs for two years, yet Tom James waited until nearly the end to file this action.  Astonishingly, even though the alleged non-competition agreement  has now expired, Tom James refused to withdraw its claim for injunctive relief.   See, Def.'s Mot. Prefiling Conference, December 17, 2003 [Doc. No. 38].

Tom James' intent in this litigation has become clear.  It seeks to make life so difficult for its former employees that they are forced to go out of business.  Indeed, the principal component of its settlement demand at a conference held on November 24, 2003 was that Green cease all sales activities for an additional period of two (2) years.  Tom James' actions against its former employees, (Green is not the only former employee facing litigation) are designed not only to force the former employee out of business, freeing the field from competition, but also to send a message to its current employees of the pitfalls should they seek to leave.

Tom James' actions concerning electronic discovery are the latest in this lengthy string of abusive tactics.  As will become readily apparent, Tom James'

claims in its motion are misguided at best, and false at worst. Tom James does not seek the production of documents relevant to this litigation, but seeks instead to put Green through an intrusive process, under which Tom James will have access to Green's entire electronic life. Tom James has not given any reason that such intrusion is necessary, particularly since Green has already produced in paper format all documents that are responsive to Tom James' discovery requests. As such, the motion to compel must be denied.

## II.        STANDARD OF REVIEW

The scope of discovery under Fed. R. Civ. P. Rule 26 is very broad, encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir.1992), quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party; relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. Rule 26 (b) (1).

The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. Rule 26 (b) (2). An order compelling

discovery is rendered only after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir.1996).

III.    **ARGUMENT**

Computer-stored information is discoverable under the same rules that pertain to tangible, written materials. Fed. R. Civ. P. Rule 26 (b); Fed. R. Civ. P. Rule 34. Indeed, the 1970 Advisory Committee Notes of Rule 34 (a) make clear that electronic data are part of the definition of "document". The dispute underlying this motion does not center on whether Tom James may obtain discovery of electronically stored documents, as the rules clearly provide that right.

However, it is important to understand that Tom James' request is vastly overreaching, and goes well beyond that contemplated by the federal rules. In fact, Tom James does not even seek to compel the production of electronic documents, because Green has already provided all relevant electronic documents to Tom James in the normal course of discovery responses. Green produced copies of all relevant e-mails in his inbox, sent items folder, and deleted items folder. Green also provided a complete printout of all data maintained in his accounting software, Quickbooks, that related to his customers. Tom James has not identified any other electronic documents, or classes of documents, that it seeks.

Instead, Tom James seeks to conduct a detailed examination of every bit, byte and sector on the hard drive of Green and Trace's computer. Tom James does

not seek merely electronic copies of the paper documents that have already been produced. Instead, Tom James desires to conduct a search for any documents that may not have been produced, either for legal reasons or because they do not exist any more. This is an important distinction.

When an electronic file is first created and saved, it is laid down on the hard drive in contiguous clusters of data. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 319 (2003), citing Sunbelt Software, Inc., White Paper: Disk Defragmentation for Windows NT/2000: Hidden Gold for the Enterprise 2, at http://www.sunbelt-software.com/evaluation/455/web/documents/idc-white-paper-english.pdf (May 5, 2003). Electronic files may be created intentionally, such as by saving a Microsoft Word Document, or by creating and updating a financial data file, such as by using Quickbooks. Electronic files may also be created latently, such as by Microsoft Outlook, which maintains a single file containing all active e-mail messages (those in the inbox, sent items or deleted items folders), or by the operating system itself, which creates many redundant copies of current or frequently used data, such as data caches or web images, and stores system information.

When a computer user <u>deletes</u> an electronic file, the computer simply removes a pointer to the body of the electronic data in a directory — it does not delete the body of the document itself. *See*, The Sedona Conference, The Sedona

Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (March 2003), ("Sedona Principles") at 4[1]. It is only when the computer requires the space that the particular file occupied will the content be partially or completely overwritten.  Sedona Principles, *supra*, at 4.

As a result, it can be seen that Tom James' request seeks undertake a fishing expedition.  There is no support for any contention that this search will uncover any documents that have not already been produced.  The process demanded by Tom James essentially obviates any legal protection that Green and Trace may have in the discovery process, to assert relevance, privilege or other objections, as it would require them to turn over every piece of information in their possession, whether within the scope of discovery or not.  As will be demonstrated, there is no basis for Tom James' motion, and it must be denied.

A.    **TOM JAMES HAS FAILED TO ATTEMPT TO RESOLVE THIS DISCOVERY DISPUTE IN GOOD FAITH.**

As a preliminary matter, the motion to compel must be denied outright because Tom James has failed to comply with its obligations under the federal rules to make good

---

[1] A complete copy of the Sedona Principles, dated March, 2003, is attached hereto as Exhibit A.  However, the website for the Sedona Conference indicates that a new version of the Sedona Principles will be available in mid-January.  This memorandum relies on the March, 2003 version, but the undersigned will undertake to review the new version when it is released to determine if an update to this memorandum is required.

faith efforts to resolve discovery disputes.  In particular, D. Conn. L. Civ. R. Rule 37 (a) (2) and Fed. R. Civ. P. Rule 37 (a) (2) (B) provides that a motion to compel may not be filed unless the moving party first makes a good faith attempt to resolve the discovery issue.  Notwithstanding the representations in Tom James motion, memorandum and the affidavit of its counsel, the facts detail a complete failure to make any attempt to secure a resolution of the issue.

This failure is evidenced by two principles underlying Tom James actions. First, it has used this attempt to obtain information as a weapon against Green.  The request is not designed to obtain discoverable information; but rather to harass Green, since Green has complied with Tom James' discovery requests.  Second, Tom James has refused to consider the implementation of a reasonable protocol to protect Green's rights under the federal rules.  When taken together, it is clear that Tom James has invoked the discretion of this Court without first making bona fide efforts to resolve the dispute.

The first attempt that Tom James made concerning electronic discovery was by letter dated November 7, 2003, in which Tom James counsel stated that

> we are going to be examining all the defendants' computer information, including all hard drives, computers, e-mail systems, portable devices, and any other data compilation Tracy Green used or uses in connection with his business or the business of Trace Apparel, LLC.

*See*, Letter from T. Finn to P. Oison, November 7, 2003, Exhibit A to Affidavit of Peter S. Olson, January 13, 2004.  Even though the letter was initially received by

facsimile on Friday, November 7, 2003 at 4:02 p.m.; Aff. Olson, *supra*, at ¶ 5; it demanded that such electronic devices be delivered to Tom James' counsel by the following Tuesday, November 11, 2003. *See*, Finn Letter, November 7, 2003. Tom James' counsel stated his intention to have the electronic devices reviewed by a third party in the presence of Tom James' corporate counsel. *See*, Finn Letter, November 7, 2003.

The undersigned responded to that letter on Monday, November 10, 2003. *See*, Letter from P. Olson to T. Finn, November 10, 2003, Exhibit B to Affidavit of Peter S. Olson. The response took issue with Tom James' attempts to gain unfettered access to Green and Trace's electronic data, without any protections for Green and Trace's rights under the federal rules. *See*, Olson Letter, November 10, 2003. Importantly, the undersigned also specifically requested that Tom James' counsel "identify what additional information you believe should have been produced so that we may make a good faith effort to respond to those concerns." *See*, Olson Letter, November 10, 2003.

On November 11, 2003, the undersigned met with Tom James' counsel to redact information from paper documents produced in discovery. *See*, Aff. Olson, at ¶ 7. During that conference, counsel discussed the electronic data issue in theoretical terms. *See*, Aff. Olson, at ¶ 7. Even in theory, Tom James' counsel was unwilling to agree to any procedure for the production of electronic data that allowed Green and Trace's counsel the opportunity to have the first review of the data

-9-

retrieved from any storage media, and decide whether it was privileged and/or responsive to any discovery request. *See*, Aff. Olson, at ¶ 7  After that conference, an additional telephone discussion was had, with the same obstacle. *See*, Aff. Olson, at ¶ 8.

On December 3, 2003, Tom James' counsel dropped a reference to the electronic data issue into a letter to the undersigned, stating "[i]n addition, we need to settle on an electronic data recovery procedure if we wish to avoid motion practice."  Letter, T. Finn to P. Olson, December 3, 2003, Exhibit C to Aff. Olson, *supra*.  Of course, Tom James was still unwilling to put even the most basic protections in place to protect privilege and relevance.

The matter came to a head in the middle of December, when Tom James' counsel began to send to the undersigned self-serving letters concerning this issue. Indeed, Tom James' entire position is summed up in the December 15, 2003 from Tom James' counsel to the undersigned.

> Although we did receive some printouts of emails from you today, according to your accompanying correspondence, these emails merely reflect those that were currently present on your clients' computer system.  Thus, we have no assurance that other relevant and properly discoverable information has not been deleted or otherwise erased from your clients' data systems prior to December 9, 2003, the date upon which these emails appear to have been printed.

Letter from T. Finn to P. Olson, December 15, 2003, Exhibit D to Aff. Olson, *supra.*  This comment speaks volumes.  Tom James cites no information that might indicate that documents had been deleted, merely to the vague possibility that it might have

occurred.  Tom James' entire motion is not premised on the discovery of relevant documents, but rather on obtaining "assurances" that the discovery is complete by conducting review of Green and Trace's documents and information and making its own determination of what it believes should have been produced.

On December 16, 2003, this intent became even more clear.  Tom James' counsel stated in a letter to the undersigned:

> Tom James has been concerned with the preservation of relevant evidence and its deletion from Defendants' computer system, and particularly how that translates into Defendants' 'incomplete disclosure.

Letter from T. Finn to P. Olson, December 16, 2003, Exhibit E to Aff. Olson, *supra*.

This letter is the very first time that Tom James identified <u>any</u> issues as to any alleged incompleteness of the discovery responses.  In this letter, Tom James stated that it had reviewed third party discovery from The John H. Daniel Company, and determined that there were ten customers referenced in that discovery that were not mentioned in Green's production.  *See*, Finn Letter, December 16, 2003, supra, at 1. Tom James did not identify these customers, and did not even ask Green to investigate the issue, but instead jumped to the unwarranted conclusion that Green was withholding information. *See*, Finn Letter, December 16, 2003, supra, at 2. Indeed, this is the only substantive reason cited in Tom James' memorandum to justify its request. See, Memo. Supp. Mot. Compel, December 18, 2003 [Doc. No. 42], at 11-12.

On December 17, 2003, Tom James made one final threat.  In yet another letter to the undersigned, Tom James' counsel stated:

> The defendants' nondisclosure of responsive documents and their admitted failure to preserve relevant information and computer files are unacceptable as well as sanctionable conduct.  Tom James' request for such access for purposes of recovering deleted files and other relevant information is critical and justified under the circumstances. Should access not be permitted in a timely manner, we will have no alternative but to seek appropriate relief from the Court.

Letter from T. Finn to P. Olson, December 17, 2003, Exhibit F to Aff. Olson, *supra*. Even as these threats became more and more strident, Tom James still had failed to propose any procedure for the recovery of electronic data that would preserve the privilege and relevance issues.  The very next day, Tom James' definition of "timely" as used in the December 17, 2003 became clear, as it filed this motion to compel.

Tom James' failure to comply with the good faith requirement of the federal rules is amply demonstrated by this pre-motion correspondence. The court should not countenance insistence on unreasonable requests as compliance with the good faith requirement.

Tom James' motion purportedly seeks to assuage its "concerns" that discovery compliance is complete.  However, in its zeal to make life difficult for Green, Tom James has based this motion on self-serving representations from letters and affidavits that are not supported by the actual correspondence and discussions between the parties.  The first of these self-serving declarations was in the December 17, 2003 letter, where Tom James' counsel identified an "admitted

-12-

failure to preserve relevant information". Finn Letter, December 17, 2003, *supra*. This unsupported contention was reiterated in Tom James' counsel's sworn affidavit in connection with this motion:

> 4. In a telephone conference on November 7, 2003, regarding Defendants' production of documents, Defendants' counsel represented to me that emails were not produced by Defendants because they had either been deleted from Defendants' computer systems or that they were not relevant to the instant matter. Defendants' counsel further represented that no attempt was made to recover these deleted emails to determine their potential relevance or responsiveness to Tom James' requests for production. …
>
> 6. In a telephone conference on December 14, 2003, Defendants' counsel affirmatively represented that no measures had been taken to preserve potentially relevant information or to otherwise preserve the electronic data present on Defendants' computer systems.

Affidavit of Thomas J. Finn, December 18, 2003 [Doc. No. 43], at ¶¶ 4,6.

The record before this Court must be clear. At no time during this litigation did the undersigned state that relevant or responsive e-mails had been deleted from Green and/or Trace's computer system, or that efforts to maintain data had not been undertaken. Aff. Olson, *supra*, at ¶ 14-15. Indeed, Tom James' can not point to <u>any</u> evidence that such statements were made. Tellingly, Tom James' motion is supported only by Tom James' counsel's self-serving affidavit and letters. For example, Tom James baldly states

> Yet, in complete disregard for their affirmative duty to preserve information, Defendants have admittedly failed to take any measures whatsoever to ensure the preservation of potentially relevant information or electronic information. See Letter from Finn to Olson of 12/15/03 (attached to the Motion as Exhibit J); Finn Aff. at ¶ 6.

Mem. Supp. Mot. Compel, November 18, 2003 [Doc. No. 42], at 15.  It is startling that Tom James would aver to an "admission" and support that averment with its own counsel's letter.

It is troubling that Tom James would go to such lengths as to present misrepresentations and half-truths to the court in its quest to impose as great a burden as possible on its former employee.  Tom James has never sought to resolve this discovery issue in good faith, but merely insisted on its own unreasonable request.  This request does not seek the production of relevant documents, but rather seeks the key to the file room door with an accompanying license to root around.  The court must not permit such a blatant fishing expedition, and must deny the motion.

B.  **GREEN AND TRACE DID NOT HAVE AN OBLIGATION TO PERMIT TOM JAMES UNFETTERED ACCESS TO ITS ELECTRONIC INFORMATION.**

As pointed out earlier, Tom James does not seek the production of documents or classes of documents.  Instead, it seeks to fish through fragments of documents that no longer exist to try to recreate documents.  This form of electronic discovery is not contemplated by the federal rules.

Perhaps the most well reasoned and cited recent case concerning electronic discovery is *Zubulake*, from the Southern District of New York.  While *Zubulake* concerned the question of who would pay for the cost to restore a number of backup tapes, the court's discussion of the principles underlying electronic data production

are instructive.  The court in that case relied in part on the Sedona Principles for its explanation of some of the concepts.  "The Sedona Conference Working Group on Electronic Document Production was conceived as an effort to develop reasonable principles to guide organizational practices and legal doctrine."  Sedona Principles, *supra*, at 1.  A number of these principles are relevant to the discovery issue at hand, and should guide this Court in its decision.

**Principle 6. Responding parties are best situated to evaluate the procedures, methodologies and technologies appropriate for preserving and producing their own electronic data and documents.**

The motive behind Tom James' motion to compel appears not to be that it is seeking the production of documents, but rather that it has "concerns" that documents have not been produced.  The Sedona Principles specifically address Tom James' argument.  In the discovery process, it is the responding party's duty to take reasonable steps to facilitate production of documents, after review for privilege, trade secrets, or other appropriate bases for non-production.  Sedona Principles, *supra*, at 25.  Indeed, a party has a right to review its own files before producing them. *See*, *Van Westrienen v. Americontinental Collection Corp.,* 189 F.R.D. 440 (D. Or. 1999).

> There is no principled reason to require intrusive efforts beyond these merely because the party seeking discovery is suspicious of or concerned about the quality of the efforts undertaken by the producing party.

Sedona Principles, *supra*, at 25, citing *McCurdy Group v.American Biomedical Group,* 9 Fed. Appx. 822, 831[2] (10th Cir. 2001) (affirming denial of motion to compel production of hard drives based on fact that party seeking discovery was "skeptical" that all relevant and non-privileged documents had been produced); *see also*, *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171-1172 (7th Cir. 1998) (impermissible to expand scope of discovery by speculating that data had been altered or modified); *Stalling-Daniel v. The Northern Trust Co.,* 52 Fed. R. Serv. 3d 1406, 2002 WL 385566, at *1 (N.D. Ill. Mar. 12, 2002) (denying a request by plaintiff for an order permitting an expert to conduct an intrusive and detailed examination of discovery of defendant's systems where the bases for the claims were "speculations."); *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 532 (1st Cir. 1996) (affirming order denying electronic discovery where that discovery would be a "fishing expedition").

Tom James has provided no basis for its intrusive request other than its own "concerns" that its discovery requests have not been complied.  It has not cited a single example of a document the existence of which it has independent knowledge, but that was not produced.  The only example Tom James uses to support its motion

is the individuals identified in John Daniel's production that are not identified in Green's discovery response. Tom James continues to fail to identify these individuals so that Green may investigate this purported discrepancy, and has never asked Green to undertake any efforts to verify the discovery responses as to these individuals.

Rather than contemplate the possibility that there may very well be no documents concerning these individuals, Tom James uses this purported discrepancy to support its claims that items are being withheld. This is certainly not sufficient to justify the request, and the Court must deny the motion on these grounds.

Additionally, however, the procedure proposed by Tom James fails to consider this particular Principle. Green and Trace have repeatedly asked Tom James' counsel to propose a procedure that would permit them to review any recovered information first, before Tom James saw it, and allow them to produce only responsive information.

> Although plaintiff is entitled to view files that relate to him or to the claims or defenses asserted in this action, he has no right to rummage through the computer files of the defendants.

---

[2] Copies of unreported decisions referenced herein are attached as Exhibit B.

*Sabouri v. Ohio Bureau of Employment Services*, No. 2:97cv715, 2000 WL 1620915, at *5 (S.D. Ohio May 13, 2003).  Tom James has repeatedly failed to recognize that it does not have the right to such a search, especially without any protections for the discovery rights of the responding party.  Tom James insists on a blanket Rule 34 inspection of the storage media.  See, Finn Letter, November 7, 2003, *supra*.  As pointed out by the Sedona Principles, parties are not permitted to perform a Rule 34 inspection, because such an inspection:

> a) might encompass and invade trade secrets;
>
> b) might encompass other highly confidential information, including materials, such as personnel evaluations and payroll information, properly private to individual employees;
>
> c) might encompass and invade confidential attorney-client communications and other confidential material prepared and organized by the party's attorneys;
>
> d) would massively disrupt and could even halt the ongoing business; and
>
> e) if file-recovery software is permitted to be used, it could corrupt operating systems, software applications, and electronic files.

Sedona Principles, *supra*, at 32.  Each of these concerns underlies Green and Trace's concern in responding to Tom James' demands:  they would not be permitted to exercise their right to review their own files and determine which documents might be responsive.  As such, Green and Trace should not be required to allow Tom James unfettered access to his hard drive, and the motion to compel must be denied.

-18-

**Principle 7. When the responding party has shown that it has acted reasonably to preserve and produce relevant electronic data and documents, the burden should be on the requesting party to show that additional efforts are warranted under the circumstances of the case.**

This is perhaps the simplest of the principles involved here, since it differs minimally from the normal discovery process. As detailed in the undersigned's December 15, 2003 letter; Letter P. Olson to T. Finn, December 15, 2003, Exhibit G to Aff. Olson, *supra*; Green produced all of the e-mails present in his system. Additionally, Green produced a then-current printout of all financial data related to his customers that was present in his accounting software. This represents complete production of the electronic data on his hard drive.

Importantly, Tom James has provided absolutely no indication that this information is not complete. It instead relies on speculation and conjecture that other documents might exist. This is simply not an appropriate basis on which the Court should approve the proposed fishing expedition.

In *Zubulake,* the court was faced with the situation that the responding party had in its possession a number of backup tapes and optical disks. *Zubulake*, *supra*, 217 F.R.D. 313-315. The plaintiff had identified a number of e-mails in her possession that had not been produced by the responding party in response to a direct and specific question. *Zubulake*, *supra*, 217 F.R.D. 312-313. This established that the defendant had not produced all of the requested information. Accordingly, the court conducted an analysis to determine who should bear the burden of

restoring the data on the backup tapes to determine if additional responsive e-mails existed.

Such facts are not present here. Tom James has not presented any support for its claim that documents have not been produced. The only actual fact presented is the ten individuals identified from the third party discovery. As previously stated, this establishes nothing. There is simply no basis on which Tom James can claim that Green has not fully and fairly complied with its discovery requests.

**Principle 9. Absent a showing of special need and relevance, a responding party should not be required to preserve, review or produce deleted, shadowed, fragmented or residual data or documents.**

This principle is perhaps the most directly relevant point made by the Sedona Principles. In short, the very demand made by Tom James was determined to be contrary to what a group of legal, technical and judicial experts considered to be at the heart of electronic discovery. In fact, such information is not considered to be a "document" under the ambit of the Rules at all. In the context of arguing that the federal rules should be amended, Judge Scheindlin[3] stated that:

> Embedded data, Web caches, history, temporary, cookie and backup files--all of which are forms of electronically-stored information automatically created by computer programs rather than by computer users--do not obviously fall within the scope of the term "documents." Certainly they are not "documents" in any traditional sense.

---

[3] Judge Scheindlin also authored the seminal *Zubulake* opinion.

> Furthermore, they arguably do not constitute "compilations" of data, as that term is commonly understood.

Hon. Shira A. Scheindlin and Jeffrey Rabkin, *Electronic Discovery In Federal Civil Litigation: Is Rule 34 Up To The Task,* 41 B. C. L. Rev. 327, 372 (2000). As set forth in the Sedona Principles, the best approach to understanding what is a document is "to examine what information is readily available to the computer user in the ordinary course of business."

> If the employee can view the information, it should be treated as the equivalent of a paper "document." Data that can be readily compiled into information, whether presented on the screen or printed on paper, is also a "document" under Rule 34. However, data used by a computer system but hidden and never revealed to the user in the ordinary course of business should not be presumptively treated as a "document." Nor should data that is not accessible except through forensic means, such as deleted or residual data.

Sedona Principles, *supra*, at 30. This is not to say that such data should <u>never</u> be produced. Rather, the requesting party must simply satisfy a higher burden of showing a special need or relevance. As repeatedly stated above, Tom James simply has not met this burden here. It has presented no justification that would warrant review of residual data on the hard drive.

While there are many areas in which electronic discovery and paper discovery differ, it is sometimes helpful to analogize back to paper discovery principles. The problem with Tom James' argument can be summed up with a single quote from the Sedona Principles.

-21-

> No more duty exists to preserve and produce deleted electronic information after commencement of litigation than exists to sequester and search the trash bin outside an office building.

Sedona Principles, *supra*, at 32.  Rule 34 would have to be amended to provide for such a requirement. Tom James' request is unreasonable, and not permitted by the federal rules as currently written.  Tom James can not succeed in its motion to compel, and the motion must be denied.

C.    **THE RELIEF SOUGHT BY TOM JAMES IS OVERLY BROAD.**

As stated in its memorandum, Tom James seeks an order to "allow Tom James access to Defendants' computer systems so that a mirror image of the hard drives and pdas may be taken and for the recovery of any deleted data."  Memo. Supp. Mot. Compel, *supra*, at 17.  Nothing in any of the cases cited by Tom James, or in any case found by the undersigned, suggests that an appropriate response to a request for electronic data is to turn over a copy of the relevant storage media, or to permit unfettered access to it.

Rather, each court that has permitted the recovery of residual data present on a hard drive has imposed a strict protocol that protects the responding party's rights. This is what Green and Trace have sought all along in this discovery process.  As noted by one court, "[t]he challenge here is to arrange for this effort to be undertaken without undue burdens on defendant, in terms of its business, its relationships with its attorneys, and the privacy of its founders.*" Simon Property Group L.P. v.*

-22-

*mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D.Ind. 2000). The courts have consistently adopted a procedure similar to the following:

• Absent objection from the responding party, the requesting party selects and pays for an expert who will inspect the computers in question to create a "mirror image" or "snapshot" of the hard drives. The court appoints the expert to carry out the inspection and copying as an officer of the court.

• The experts uses his or her expertise to recover from the "mirror image" of the hard drive of each computer, and to provide in a reasonably convenient form to responding party's counsel, all available electronic documents, including e-mails, word-processing documents, accounting data, spreadsheets, and similar files. Files making up operating systems and higher level programs in the computer are not duplicated, and copying is limited to the types of files reasonably likely to contain material potentially relevant to this case. To the extent possible, the expert also provides to defendant's counsel: (a) the available information showing when any recovered "deleted" file was deleted, and (b) the available information about the deletion and contents of any deleted file that cannot be recovered.

• After receiving these records from the expert, responding party's counsel reviews these records for privilege and responsiveness to the discovery requests, and shall then supplement any responses to discovery requests, as appropriate.

• The expert signs a protective order in the case and retains until the end of the litigation the "mirror image" copies of the hard drives and a copy of all files provided to defendant's counsel. At the end of this litigation, the expert destroys the records and confirms such destruction. The expert may not disclose the contents of any files or documents to the requesting party or its counsel or other persons. Because the expert will serve as an officer of the court, disclosure of a communication to the expert is not deemed a waiver of the attorney- client privilege or any other privilege. The expert may designate assistants to help in this project. Each assistant signs the protective order in this case and shall be subject to all provisions applicable to the expert.

• The expert files a report with the court setting forth the scope of the work performed and describing in general terms (but without disclosing the contents) the volume and types of records provided to responding party's counsel. After the expert has been selected, all communications between the expert and the requesting party's counsel must take place either in the presence of the

responding party's counsel or through written or electronic communication with a copy to responding party's counsel.

*See*, *Simon Property*, *supra*, 194 F.R.D. at 641-642; *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 653-655 (D. Minn. 2002); *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1054-55 (S.D.Cal.1999).

Green does not mean to suggest that these are the only acceptable procedures for this process, merely that the court in each of these decisions undertook to protect the responding party's rights in the discovery process. This is something that Tom James wholly ignores.

In fact, it is over this issue that discussions to permit electronic discovery broke down. Tom James would not agree to a procedure that permitted Green's counsel to review the documents first and determine which documents were responsive. See, Aff. Olson, supra, at ¶ 7-8. For his part, Green attempted to cooperate with the request, even though it was not permitted under the federal rules, until Tom James went on the offensive after the settlement conference on November 24, 2003. Tom James' posture prior to that conference was that it sought documents to enable it to prepare for the conference in order to make a reasonable settlement proposal. Instead, Tom James made only an unreasonable proposal at the conference, one which went well beyond the relief sought and permitted in this litigation and that would put Green and Trace out of business. This was followed up

with Tom James' application for prejudgment remedy, making it clear that it was "playing possum" prior to the settlement conference.

At that point, it became clear that Tom James did not intend to seek a reasonable resolution to the issue, but merely intended to make this litigation as difficult as possible for Green. It was then that the undersigned declined to discuss further the production of electronic information, especially since Tom James had shown no sign of moving off its original position.

Until then, Green and Trace were not opposed to the production of electronic data, so long as a protocol was observed that protected their rights in the discovery process. Green and Trace continue to submit that Tom James' request is not permitted by the federal rules, and supported only by Tom James' counsel's self-serving and factually inaccurate contentions. However, should the Court decide that some form of electronic discovery should be permitted, any order must include a protocol such as that set forth above. It is only in this manner that Green and Trace's rights can be protected.

IV.    **CONCLUSION**

For the foregoing reasons, the Court must reject this latest attempt by Tom James to drive up the cost of this litigation.  It is apparent that Tom James had no interest in a good faith resolution of this issue, but merely sought to intimidate and harass Green and cause the unnecessary expenditure of legal fees.  For this reason, Green respectfully requests that the Court enter an award of attorney's fees in favor of Green for the costs to prepare this memorandum in opposition to the motion to compel, as permitted by Fed. R. Civ. P. Rule 37 (a) (4) (B).

THE DEFENDANTS/
COUNTERCLAIM PLAINTIFFS
J. TRACY GREEN
TRACE APPAREL, LLC


By: _____
Thomas A. Rouse, Fed. Bar No. ct01326
Peter S. Olson, Fed. Bar No. ct16149
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT  06601-7006
203.330.2000
Facsimile 203.576.8888
Their Attorneys

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on January 13, 2004 to all counsel and pro se parties of record.

For the plaintiff TOM JAMES COMPANY:

Thomas J. Finn
Paula Cruz Cedillo
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
860.522.6103
Facsimile 860.548.0006

_____
Thomas A. Rouse, Fed. Bar No. ct01326
Peter S. Olson, Fed. Bar No. ct16149

BPRT/67708.2/PSO/503515v1

-27-