Exhibit "A"

# PULLMAN & COMLEY, LLC

*Attorneys At Law*

ELIZABETH J. AUSTIN
RAYMOND E. BALDWIN, JR.
MORRIS W. BANKS
COLLIN F. BARON
DEBORAH S. BRECK
CHARLES K. CAMPBELL, JR.
FRANK B. CLEARY
SHEILA ANNE DENTON
JAMES C. DOWLING, JR.
ANDREW C. GLASSMAN
LAWRENCE J. GOLDEN
IRVE J. GOLDMAN
BARRY D. GREENE
NANCY A. D. HANCOCK
JOSHUA A. HAWKS-LADDS
DAVID O. JACKSON
GEORGE J. KASPER
JOHN J. KINDL
MICHAEL A. KURS
NANCY DeFONCE LAPERA

MICHAEL N. LAVELLE
JOSEPH M. LODATO
LISA A. MAGLIOCHETTI
THOMAS E. MAXWELL, JR.
EDWARD F. McCREESH, III
ANDREW J. McDONALD
ROBERT B. MITCHELL
HERBERT N. MOORIN
D. ROBERT MORRIS
ALAN S. PARKER
MARIE V. PHELAN
ELLIOTT B. POLLACK
MICHAEL G. PROCTOR
LEWIS RABINOVITZ
RICHARD C. ROBINSON
THOMAS A. ROUSE
GREGORY F. SERVODIDIO
RONALD CASE SHARP
MARGARET M. SHEAHAN
JAMES T. SHEARIN

H. WILLIAM SHURE
CHRISTOPHER J. SMITH
JOHN R. STAFSTROM, JR.
JAMES B. STEWART
OROVE W. STODDARD
MARSHALL J. TOUPONSE
JAMES W. VENMAN
WILLIAM J. WENZEL
BARRIE K. WETSTONE
JAMES B WHITE, JR.
DIANE W. WHITNEY
MARJORIE WILDER

SAMUEL A. GILLILAND
(1930-1994)

LAURA A. BELLOTTI
CHRISTIAN G. BELTZ
ALLISON M. BOGOSIAN
KATHERINE E. CAULFIELD
ADAM J. COHEN

AMY A. D'ADDETTA
JOSHUA A. DOLGER
ERIC J. GEORGE
DARYL L. GORDON
JESSICA GROSSARTH
MATTHEW M. HAUSMAN
LEE D. HOFFMAN
TRACY WHEELER LENNON
MATTHEW P. LUNDY
NORMA R. MANDULAK
JULIE A. MORGAN
PETER S. OLSON
GERALD C. PIA, JR.
MARY BETH KASPER RAPICE
BRIAN C. ROCHE
LORI L. UNDERBERGER
GWEN B. WEISBERG
MICHAEL L. WOLF
AIMEE J. WOOD

Reply to:  **Bridgeport**
Telephone: 203.330.2257
E-Mail:   polson@pullcom.com

December 22, 2003

**BY FACSIMILE**

Thomas J. Finn
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT  06103-4303

   Re:  **Tom James Company v. J. Tracey Green, et al.**

Dear Attorney Finn:

I am in receipt of your discovery responses dated November 24, 2003.  I am disappointed that Mr. Green's copious discovery responses and efforts to go beyond the minimum required by the federal rules in responding to Tom James' discovery requests have not been reciprocated by Tom James in responding to Mr. Green's requests.  As pointed out in my recent filings with the court, this has placed Mr. Green in the precarious position of having to defend against an application for prejudgment remedy without the relevant documents to prepare such defense.

Accordingly, please take this letter as part of my obligation under Local Rule 37 (a) (2) to confer with you in a good faith effort to eliminate or reduce areas of disagreement concerning our discovery requests.

I have reviewed your proposed protective order concerning information provided by Tom James Company in connection with this litigation.  I find it to be overbroad in relation to the protective orders that we negotiated concerning information produced by Mr. Green, and because it does not deal solely with specific discovery requests but rather gives Tom James carte blanche to file any document it wishes under seal. Obviously, I am happy to agree to a protective order concerning information that should be kept confidential, as detailed herein, but your proposed order is unacceptable. Please provide a new draft of a protective order that relates solely to Tom James' responses to the discovery requests that October 22, 2003.  We can deal with any future requests for confidentiality on a case-by-case basis.

850 MAIN STREET  P.O. BOX 7006  BRIDGEPORT, CT 06601-7006  (203) 330-2000 FAX (203) 576-8888
90 STATE HOUSE SQUARE  HARTFORD, CT 06103-3702  (860) 424-4300  FAX (860) 424-4370
ONE CENTURY TOWER  265 CHURCH STREET  NEW HAVEN, CT 06510-7000  (203) 773-3006  FAX (203) 776-7075
720 HOPMEADOW STREET  SIMSBURY, CT 06070-2225  (860) 651-9348  FAX (860) 651-1431
200 PEQUOT AVENUE  P.O. BOX 510  SOUTHPORT, CT 06890-0510  (203) 254-5000  FAX (203) 254-5070
300 ATLANTIC STREET  STAMFORD, CT 06901-3522  (203) 324-5000  FAX (203) 363-8659
*www.pullcom.com*

## PULLMAN & COMLEY, LLC

Page 2

This letter does not address the general objections asserted by Tom James in connection with each of the discovery requests. Although I understand and agree with the purpose of general objections, it makes the process of resolving discovery disputes nearly impossible. As such, I have ignored each of the general objections. If you believe that any of the general objections specifically applies to a particular request and should be taken into consideration in determining your compliance, you are free to bring that to my attention. Otherwise, I will assume that they are asserted for protective purposes only and have no bearing on your substantive compliance.

I will begin with the interrogatories and will offer my comments as to each of your discovery responses. I do note that you have not responded to these discovery requests under oath, as required by Federal Rule 33(b)(1).

Interrogatory No. 1. Your response does not comply with the definition of "identify" as to the individuals that you have named. Other than that, I assume that your objections are protective in nature, and assuming you rectify that problem I will accept your response as sufficient. However, if you believe your objection is more than protective in nature, please identify the specific issues, so that we can clear the objection.

Interrogatory Nos. 2-7. Tom James has failed to respond to these interrogatories at all, claiming that the defendants are already in possession of this information. With the exception of the incomplete information he has retained in his head, Mr. Green does not have this information in his possession, particularly since he left Tom James in 2001; the time period covered by the interrogatories are from 2000 to the present. Further, the fact that the information sought might already be in Mr. Green's possession is not a bar to discovery of relevant information. Obviously, even if Mr. Green had this information, he would not be a competent witness to testify. As for the relevance of the information, Tom James has claimed damages based on sales of products. It cannot demonstrate the extent of those damages unless it also puts on evidence as to the profit that it would have made on the sale of the items. Accordingly, Mr. Green is entitled to discovery of the underlying information that will enable him to conduct an analysis of Tom James' potential profit.

In response to Interrogatory No. 5, Tom James objected, stating that it was unclear what was meant by the term "actual costs" for purposes of that interrogatory. This term is fairly clear, but nevertheless, Mr. Green will accept whatever reasonable definition of "actual costs" Tom James believes is appropriate in these circumstances.

**PULLMAN & COMLEY, LLC**

Page 3

I also note that part of Tom James' claim in this litigation is that Mr. Green's actions had an effect on Tom James' production capabilities; accordingly, the actual sales figures for the years in question, as requested in Interrogatory No. 6, are clearly relevant.

I will expect compliance as to each of these interrogatories.

Interrogatory No. 8. I assume that your objection is merely protective in nature, and as such can be disregarded. Please let me know if this is otherwise. I will deem your response to be sufficient, assuming the objection is cleared.

Interrogatory No. 9. I assume that your objection is merely protective in nature, and as such can be disregarded. Please let me know if this is otherwise. I do note that your response is insufficient as to each of the individuals. Please indicate whether the individuals use any additional software programs to conduct Tom James related communications. Otherwise, I will deem your response sufficient.

Interrogatory No. 10. I assume that your objection is merely protective in nature, and as such can be disregarded. Please let me know if this is otherwise. I will deem your response to be sufficient, assuming the objection is cleared.

Interrogatory No. 11. I assume that your objection is merely protective in nature, and as such can be disregarded. Please let me know if this is otherwise. Please indicate whether Tom James has any sort of written backup and/or document retention policy. If it does not, then I will deem your response to be sufficient.

Interrogatory Nos. 12-18. The term "state the basis" is a defined term in the discovery requests. Your objection to each of these requests does not address the information required by the defined term. Additionally, it is clear that not all of the information sought by the requests can be privileged, otherwise Tom James would have no basis upon which it could present its case to the court. Further, you state that contention interrogatories are not appropriate. Putting aside for the moment that the term is specifically defined in such a way that it is not a contention interrogatory, I disagree that contention interrogatories are inappropriate. Your responses to these requests are wholly insufficient, and I will expect compliance therewith.

Interrogatory No. 19. I cannot fathom why you deemed this request to require such a broad objection. The entity that is the contracting party to the agreement that is the subject of your entire litigation is "Tom James of Hartford." The plaintiff is Tom James Company. Mr. Green is entitled to discovery as to the distinction between the two entities. Nevertheless, should you agree to clear your objections, your response that

## PULLMAN & COMLEY, LLC

Page 4

"Tom James of Hartford has no separate corporate identity" will be deemed sufficient for purposes of your response to this interrogatory.

Interrogatory No. 20. Again, Mr. Green is seeking to determine the distinction between Tom James Company and Tom James of Hartford. An itemization of each employee of the entity known as Tom James of Hartford will assist in determining that fact, a fact that is relevant to the resolution of the litigation. As noted earlier, it is not sufficient to state that Mr. Green is already in possession of this information. Although Mr. Green may have some recollection as to the people he worked over the course of 13 years, Tom James' information is surely more complete. Additionally, there is obviously value to a statement under oath by Tom James. I will expect compliance with this request.

Interrogatory No. 21. I cannot fathom why you deemed this request to require such a broad objection. The entity that is the contracting party to the agreement that is the subject of your entire litigation is "Tom James of Hartford." The plaintiff is Tom James Company. Mr. Green is entitled to discovery as to the distinction between the two entities. Nevertheless, if you agree to clear this objection, I will accept your response that "Tom James of Hartford was a 'doing business as' designation," so long as you produce a copy of a trade name certificate recorded with the Town Clerk of the City of Hartford.

Interrogatory No. 22. Mr. Green has brought a counterclaim seeking an injunction against the very behavior that is identified in Interrogatory No. 22. The interrogatory is clearly relevant. I do recognize the concern that such information may be confidential. As a preliminary response to this request, I will accept a response that identifies the individuals only by a designation number such as Individual No. 1 or Individual No. 2. Otherwise, I see no basis under which compliance with the interrogatory should be excused. I will expect compliance with this request.

Interrogatory No. 23. Mr. Green has brought a counterclaim claiming violations of ERISA. He is entitled to know whether or not Tom James is under investigation or has been under investigation in the past by any governmental agency for the same violations. None of the objections that you have interposed are sufficient to defeat what is a relatively limited and targeted interrogatory. As for your question as to the term "investigation," Mr. Green is willing to accept a whatever reasonable definition of the term "investigation" Tom James deems appropriate in the circumstances. As for your contention that the information is a public record, this is simply insufficient to constitute an objection. Tom James is clearly in possession of the information sought by the interrogatory and can produce it in a much more reasonable and convenient manner than Mr. Green can. Finally, I do not see any reason that any such investigations would

## PULLMAN & COMLEY, LLC

Page 5

be confidential, particularly since you respond that the information is a public record. I will expect compliance with this request.

Interrogatory No. 24. Again, I find it difficult to accept that on the one hand Tom James would assert the information as privileged, but on the other hand assert that it is a public record. Obviously, it is far easier for Tom James to identify each action, rather than require Mr. Green to undergo a nationwide search for the information. As for the relevance, a court reviewing the restrictive covenant that is at issue in this case may certainly be relevant to the enforceability and interpretation of such agreement by this court. I will expect compliance with this request.

I will now move on to the requests for production.

Request for Production No. 1. You have indicated that you will produce this information subject to a protective order. To the extent this information should be kept confidential, I will agree to a protective order, but I will expect compliance as soon as the protective order is entered by the court. However, I assume that your response will include documents relied upon or referenced in your responses to the interrogatories as such responses may be modified by the previous discussion. To the extent that you claim documents are privileged, I will expect a privilege log.

Request for Production No. 2. I do not see any reason that information needs to be subject to a protective order. As such, I will expect compliance.

Request for Production No. 3. As stated earlier, simply because the information may be in our possession does not mean that Tom James is excused from compliance. I also see no reason that such information need be subject to a protective order. Subsection C seeks all documents describing company policies or procedures that it required Mr. Green to execute. Although you have attached several such documents to the complaint, it is unclear whether there are any other documents reflecting policies and procedures, such as 401K plans, etc. I do not think that this request is particularly unclear. If you have any question as to whether any particular document is covered by the request, please feel free to address that individually. I will expect compliance with this request. I do not see any reason that this information should be subject to a protective order.

Request for Production No. 4. Mr. Green has raised a defense of breach of the employment agreement, a portion of which is based on Tom James reduction in Mr. Green's compensation. As such, this information is clearly relevant to the defenses asserted by Mr. Green. Again, it is not sufficient for Tom James to object to the request

**PULLMAN & COMLEY, LLC**

Page 6

on the grounds that it is in Mr. Green's possession. I will expect compliance with this request.

Request for Production No. 5. Although we have had discussions and exchanged some documents concerning these plans, the information is still incomplete. The information is clearly relevant, as Mr. Green cannot adequately present his counterclaim as to violations of ERISA, unless all permutations of Tom James' plan have been produced. As such, I will expect compliance with this request.

Request for Production No. 6. I see no basis for a claim that this information is protected by attorney/client privilege or work product, or that it is confidential. Mr. Green has a right to this information under the federal statutes. Additionally, it is clearly relevant to Mr. Green's claims for Tom James' violation of ERISA. There is no need for any limitation, as such agreements back to the inception of the plan may have bearing on Mr. Green's claims. I will expect compliance with this request.

Request for Production No. 7. Please see our discussion of Request for Production Nos. 5 and 6 above, which are equally applicable to this request. Additionally, I see no basis for a protective order concerning same. As such, I will expect compliance with this request.

Request for Production No. 8. Please see our discussion of Request for Production Nos. 5 and 6 above, which are equally applicable to this request. Additionally, I see no basis for a protective order concerning same. As such, I will expect compliance with this request.

Request for Production No. 9. Please see our discussion of Request for Production Nos. 5 and 6 above, which are equally applicable to this request. Additionally, I see no basis for a protective order concerning same. As such, I will expect compliance with this request.

Request for Production No. 10. I cannot understand how this information would be deemed to be overly broad and unduly burdensome, as Tom James obviously has corporate records concerning who received what dividends. Second, it does not seek employee information, but rather shareholder information, an important distinction. Third, I do not understand how you can assert that this information is irrelevant since Mr. Green's counterclaim clearly asserts a claim based upon the failure of Tom James to pay dividends to him. I will expect compliance with this request.

**PULLMAN & COMLEY**, LLC

Page 7

Request for Production No. 11. Again, I see no need for a protective order concerning this request. This information is clearly relevant to Mr. Green's defenses, and I will expect compliance therewith. If there is responsive information that you claim is subject to the attorney/client privilege, I will expect a privilege log.

Request for Production No. 12. Your complete lack of response to this request is quite duplicitous considering the fuss you have raised concerning e-mail discovery from Mr. Green. At this time, I am seeking copies of every e-mail between these individuals for a four-year period. Unlike you, I do not assume at the outset that Tom James has deleted this information or has engaged in any activities that can be considered "spoliation." Given Tom James' aggressiveness on this issue as to Mr. Green, I will not hesitate to raise such claims if this information is not provided in a timely manner. Obviously, I expect you to adhere to the same standards that you are seeking to enforce against Mr. Green. As for the substance of your objection, to the extent such information is privileged, I will expect a privilege log. I do not see how the request is irrelevant as it is narrowly tailored to e-mails and voicemails concerning Mr. Green. I additionally see no reason that this information should be subject to a protective order. Accordingly, I will expect compliance.

Request for Production No. 13. I assume that your objection is protective in nature. As long as you are willing to clear the objection, I will deem your response sufficient. However, I see no reason that this information should be subject to the protective order. As such, I will expect compliance.

Request for Production Nos. 14 and 15. Obviously, once your objections to Interrogatory Nos. 7 and 11 are resolved, I will expect compliance accordingly.

Request for Production No. 16. As for your objection concerning the term "claims similar," Mr. Green will accept whatever reasonable definition Tom James believes is appropriate in connection with its response to this request. As for the remainder, I do not see how complaints in publicly filed actions are protected by attorney/client privilege or the work product doctrine. Mr. Green's claims in this action relate to Tom James' actions to suppress competition among its former employees, and as such, such complaints are clearly relevant. Again, it is substantially easier for Tom James to assemble this information and provide it to Mr. Green than for Mr. Green to conduct a nationwide search. I will expect compliance with this request.

Request for Production No. 17. Mr. Green incorporates the discussion above concerning Request for Production Nos. 5-7, as they are equally applicable here. As for the definition of the term "investigation," please see my discussion of this term as set

# PULLMAN & COMLEY, LLC

Page 8

forth in the discussion above concerning Interrogatory No. 23. Finally, and again, just because the information is a public record does not mean it is easier for Mr. Green to secure the information than for Tom James. As such, I will expect compliance with this request.

**Request for Production No. 18.** Mr. Green has asserted a counterclaim asserting that Tom James is liable to him for its failure to redeem Mr. Green's stock. This request is directly relevant to the damages for such claim. As such, I will expect compliance with this request.

**Request for Production No. 19.** Mr. Green has asserted a counterclaim asserting that Tom James is liable to him for its failure to redeem Mr. Green's stock. This request is directly relevant to the damages for such claim. As such, I will expect compliance with this request.

**Request for Production No. 20.** I incorporate the discussion above concerning Interrogatory Nos. 12-18. Again, just because Mr. Green may have the information in his possession does not excuse Tom James from compliance with the request. As such, I will expect compliance with this request.

**Request for Production No. 21.** I incorporate the discussion above concerning Interrogatory Nos. 19-20. Again, just because Mr. Green may have the information in his possession does not excuse Tom James from compliance with the request. As such, I will expect compliance with this request.

**Request for Production No. 22.** Mr. Green has raised a defense to Tom James' claims that it breached its employment agreement. Mr. Wykle was instrumental in the proceedings that resulted in Mr. Green losing his leadership position with Tom James. Mr. Green has his theories as to why Tom James took these actions. Mr. Wykle's performance, before and after the reorganization took place, are directly relevant to Mr. Green's claims. As such, I see no reason for you not to produce this information. However, Mr. Green will consider a protective order concerning confidential information that may be required to be produced. Otherwise, I will expect compliance with this request.

**Request for Production No. 23.** Mr. Green has raised a defense to Tom James' claims that it breached its employment agreement. Mr. Wykle was instrumental in the proceedings that resulted in Mr. Green losing his leadership position with Tom James. Mr. Green has his theories as to why Tom James took these actions. Mr. Wykle's performance, before and after the reorganization took place, are directly relevant to Mr.

**PULLMAN & COMLEY, LLC**

Page 9

Green's claims. As such, I see no reason for you not to produce this information. However, Mr. Green will consider a protective order concerning confidential information that may be required to be produced. Otherwise, I will expect compliance with this request.

Request for Production No. 24. Again, Mr. Green claims that Tom James reduced his compensation and reorganized the Northeast sales territory out from underneath him, and that this constituted a breach of the employment agreement. As such, the criteria for promotion within the Tom Green organization is directly relevant to his claims and should be produced. I also see no reason that this information should be subject to a protective order. I will expect compliance with this request.

Request for Production No. 25. Tom James has asserted that Mr. Green's actions caused a significant effect on its production capabilities. Surely the basis for these claims will be reflected in Tom James' financial statements. As such they are relevant. I will expect compliance with this request.

Request for Production No. 26. Mr. Green has raised a claim that Tom James failed to redeem his stock. The damages for this claim are determined only by Tom James' valuation of its stock during the relevant time period. As such, this request is relevant. I will expect compliance with this request.

Request for Production No. 27. Mr. Green's claim that Tom James failed to redeem his stock is dependent on the value of the stock. One manner in which the value of the stock can be determined is the redemption price for any other redemptions that Tom James is engaged in. As such, this information is clearly relevant. I will expect compliance with this request.

Request for Production No. 28. I will expect compliance with this request once the issues concerning Interrogatory No. 24 are resolved.

Throughout a number of the requests for production you indicate that production will be held at your office at Halloran & Sage. This is unacceptable. Mr. Green went to a significant expense to provide you with copies of his discovery responses. As such, I expect the same accommodation in return. I will expect that you will provide me with copies of all produced documents at my office in Bridgeport.

Obviously, the information sought in these discovery requests is very important to Mr. Green. You are seeking a prejudgment remedy in a grossly excessive amount, and this information is important to Mr. Green's response to that application. As such, until

**PULLMAN & COMLEY, LLC**

Page 10

you comply with these requests, Mr. Green will continue to seek relief from your application.

Additionally, we would like to begin the process taking depositions of your client in this matter. We are unwilling to do so until you have complied with our written discovery requests. Again, the prejudgment remedy application dictates that this happen sooner rather than later.

Accordingly, I cannot tolerate a lengthy delay in your response to this letter. Although I realize it is the holiday season, I will expect a response to this letter no later than Monday, December 29, 2003. To the extent that there are documents that you have agreed to produce absent a protective order, I will expect that that information is produced no later than Wednesday, December 31, 2003.

I will also expect that you have provided a new draft of a protective order with your response to this letter by December 29, 2003. Having reviewed all of the requests and responses, the only information that I believe should be subject to a protective order is the information requested in Interrogatory Nos. 2-7, Request for Production No. 1 (but only as it relates to Interrogatory Nos. 2-7), and Request for Production No. 14. I have repeatedly stated as to certain discovery requests that I see no basis for a protective order. The requests do not seek any information that is confidential, privileged, or constitutes a trade secret of any kind. As such, a protective order is not necessary, and Mr. Green will not agree to one.

I look forward to your response.

Sincerely yours,

Peter S. Olson

PSO:mrd

BPRT/67708.2/PSO/501844v1

Exhibit "B"

Slip Copy
(Cite as: 2003 WL 22326574 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

SECURITY INSURANCE COMPANY OF
HARTFORD, Plaintiff,
v.
TRUSTMARK INSURANCE COMPANY,
Defendant.

No. Civ. 3:00CV1247(PCD).

Sept. 20, 2003.

*RULINGS ON PLAINTIFF'S MOTION TO COMPEL
DEFENDANT TO PRODUCE DOCUMENTS AND
TO
MAKE OTHER DISCOVERY AND DEFENDANT'S
CROSS-MOTION TO COMPEL PLAINTIFF TO
PRODUCE DOCUMENTS*

DORSEY, J.

**\*1** Plaintiff moves to compel defendant to produce documents and to make other discovery. Defendant moves to compel plaintiff to produce documents. For the reasons set forth herein, plaintiff's motion is denied and defendant's motion is granted.

## I. BACKGROUND

Plaintiff is a Connecticut insurance company specializing in reinsurance, or providing insurance to insurers. In 1999, plaintiff entered into a reinsurance agreement ("TIG Agreement") with TIG insurance involving workers' compensation liability. The agreement involved covered losses during a two-year period starting January 1, 1999. On March 11, 1999, plaintiff entered into an agreement ("retrocession agreement") by which defendant would cover 100% of its total liability in the TIG Agreement during the same two-year period. Both agreements did not permit early termination.

During Fall of 1999, defendant notified plaintiff of its intention to terminate the agreement after twelve months based on TIG's failure to comply with the reporting requirements of the TIG Agreement. On September 17, 1999, plaintiff notified TIG that it was in breach of the TIG Agreement and was thus terminating the agreement as of January 1, 2000. On

October 12, 1999, TIG notified plaintiff that the breach had been cured and it rejected plaintiff's proposed termination. On November 16, 1999, defendant again notified plaintiff that TIG was not complying with reporting obligation and that it did not accept TIG's refusal to accept the cancellation.

Plaintiff sought and obtained a modification of the TIG Agreement, which shortened the term of the agreement to one year but included a subsequent run-off period which covered losses incurred by policies issued by TIG during the one year reinsurance period. Defendant accepted premiums paid during the run-off period. On May 9, 2000, defendant notified plaintiff that it was returning premiums paid after December 31, 1999, which it viewed as the expiration of the TIG Agreement. Defendant also characterized the modification with TIG as a "secret" agreement that constituted a material breach of the reinsurance agreement.

## II. DISCUSSION

Plaintiff and defendant separately move to compel the production of documents responsive to their discovery requests.

### A. Standard

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ' *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case. *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996).

**\*2** The present case was commenced on June 30,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                          Page 2
(Cite as: 2003 WL 22326574 (D.Conn.))

2000. At that time, Fed. R. Civ. P. 26(b)(1)(repealed 2000) provided that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." The order of the Supreme Court dated April 17, 2000 provided that "the ... amendment[ ] ... shall take effect on December 1, 2000, and shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." The present case proceeded for five months under the earlier version of Rule 26. There is evidence in the present motions that the parties conducted significant discovery under this standard. As such, the application of the current, more restrictive standard would not be just. The present motions shall therefore be considered under the earlier version of Fed. R. Civ. P. 26(b)(1).

B. Plaintiff's Motion

Plaintiff summarizes the material sought as follows: "(1) documents--including contracts, slips, premium and loss reports, and correspondence--relating to reinsurance arrangements produced for [defendant] by [WEB] ... and (2) documents relating to efforts by WEB and [defendant] to terminate or cancel other reinsurance arrangements procured for [defendant] by WEB because of allegedly inadequate reporting." Defendant argues that the request is overbroad, unduly burdensome and seeks production of irrelevant material.

Even judging this request under the "subject matter" standard of the former FED. R. CIV. P. 26(b)(1), it is not apparent how defendant's continuing in other reinsurance relationships involving noncompliance with reporting requirements is at all relevant to a determination as to whether plaintiff's compliance with reporting requirements was material to the agreement. Connecticut courts apply the standard set forth in 2 Restatement (Second) Contracts § 241 (1981), in determining whether a breach of contract is material. [FN1] A cursory review of the five-part test reveals that the relevant concerns do not include the conduct of other parties in separate agreements with the non-breaching party. It is beyond question that determinations as to whether a particular term in a given contract is material is fact-specific and case specific. See Bernstein, 213 Conn. at 672. It is conceivable, given identical contracts executed between different parties, that a term could be incidental to one contract and essential in another. Plaintiff therefore has not established the relevancy

of the discovery sought in determining whether the timeliness of loss reporting was material to the agreement.

> FN1. "In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Bernstein v. Nemeyer, 213 Conn. 665, 672, 570 A.2d 164 (1990)(quoting 2 Restatement (Second) Contracts § 241 (1981)).

Plaintiff's argument that the discovery sought is relevant to defendant's motive for cancelling the agreement is similarly unavailing. In general, motive is irrelevant to a breach of contract claim. See Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 547, 23 S.Ct. 754, 47 L.Ed. 1171 (1903) ("The motive for the breach commonly is immaterial in an action on the contract."); Koufakis v. Carvel, 425 F.2d 892, 906 (2d Cir.1970) ("A breach is a breach; it is of marginal relevance what motivations led to it."); Weiskopf v. Am. Kennel Club, Inc., NO. 00-CV-471, 2002 WL 1303022, at *6 n. 1 (E.D.N.Y. June 11, 2002) (motive irrelevant to claim of breach of contract); Athridge v. Aetna Cas. & Sur. Co., No. CIV. A. 96-270, 2001 WL 214212, at *3 (D.D.C.2001) (same).

*3 Nor is the difference between the former Rule 26 and the present Rule 26 a basis for ordering the production requested. Although the scope of discovery limited to "subject matter" [FN2] is broader than discovery limited by "claims or defenses," the breadth of discovery permitted under the earlier rule would not accommodate plaintiff's request. "Subject matter" would have to be construed as encompassing any agreement entered into by defendant rather than facts relevant to the particular

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22326574 (D.Conn.))

agreement in dispute but not necessarily the claims or defenses. The construction proposed would reach far beyond the "entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings" identified by the advisory committee. *See* Fed. R. Civ. P. 26(b)(1)(advisory committee notes). There is thus no basis for plaintiff's request. Plaintiff's motion to compel is denied.

> FN2. "Subject matter" is defined as "[t]he subject, or matter presented for consideration; the thing in dispute; the right which one party claims as against the other, as the right to divorce; of ejectment; to recover money; to have foreclosure.... Nature of cause of action, and of relief sought." *See* BLACK'S LAW DICTIONARY 1423 (6th ed.1990).

C. Defendant's Motion

Defendant moves for production of material sought for purposes of impeaching the deposition testimony of Edward O'Brien regarding loss reporting requirements. Plaintiff argues that the material sought is irrelevant for purposes of impeachment, applying to a distinct form of reinsurance agreements, *i.e.,* a treaty rather than facultative agreements.

Plaintiff concedes, as it must, that discovery sought for purposes of impeaching witness testimony is permissible. *See* Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Its fundamental contention is that with facultative arrangements, the reinsurer retains the right to accept or reject specified risks that the reinsured may attempt to cede to the reinsurer whereas no such right exists in treaty arrangements. [FN3] Plaintiff argues that O'Brien's testimony was limited to reinsurance treaties and it notified defendant that all documents it possesses relate to facultative arrangements have been produced.

> FN3. This definition is apparently not absolute. In its memorandum in opposition, plaintiff states that treaty reinsurance "is essentially the opposite of facultative agreements." Plaintiff's expert stated that in treaty reinsurance the reinsurer "typically" does not have the option to accept or reject individual risks.

It is not apparent from a reading of O'Brien's testimony that his reference to "treaties" connotes a form of insurance or is instead employed as a synonym for agreement. Plaintiff refused the request for production on the ground that O'Brien "meant" a form of insurance rather than a more generic reference to agreement. It was not plaintiff's place to do so. As such, and as loss reporting is an issue central to the dispute in question, plaintiff shall produce the documents requested in the Second Document Request within defendant's Second Request for Production.

III. CONCLUSION

Plaintiff's motion to compel (Doc. ___) is denied. Defendant's motion to compel (Doc. 47) is granted.

SO ORDERED.

2003 WL 22326574 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Exhibit "C"

Slip Copy
(Cite as: 2003 WL 22305133 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Richard F. MASSARO, Plaintiff,
v.
ALLINGTOWN FIRE DISTRICT, et al.,
Defendants.

No. Civ. 3:02CV537 (PCD).

April 25, 2003.

*RULING ON MOTION TO COMPEL*

DORSEY, J.

*1 Plaintiff moves to compel the production of documents by defendant Allingtown Board of Fire Commissioners. For the reasons set forth herein, the motion is granted in part.

I. BACKGROUND

On October 22, 2002, plaintiff served defendant with a request for production consisting of forty-five separate requests. On December 6, 2002, defendant was granted an extension of time, until December 28, 2002, in which to respond to the requests for production. On December 27, 2002, defendant was granted a second extension of time, until January 15, 2003, in which to respond. On December 30, 2002, defendant served plaintiff with its response and objections to the request for production. On January 21, 2003, defendant provided, in response to the request, four boxes of photocopied documents allegedly lacking any labeling associating the documents as responsive to one of the forty-five requests within the request for production.

II. DISCUSSION

Plaintiff argues that defendant should be compelled to respond to his discovery requests as its production was "inadequate, disorganized and incomprehensible," arriving as four boxes of photocopies lacking any markings that might indicate to what requests defendant considered the documents responsive. [FN1] Defendant responds that it fully complied with the request for production and that it possesses no other document responsive to the request

FN1. Plaintiff also argues that defendants did not timely provide a written response to their request as required by Fed. R. Civ. P. 34(b). As this Court expressly granted defendants an extension of time in which to respond, albeit to a request filed after the thirty day response period had lapsed, the extension will be considered granted *nunc pro tunc* thus rendering the response timely. If plaintiff argues that the date of actual production of the documents was untimely, his request for production indicates only that supplemental disclosures shall be made within thirty days and provides no guidance on the initial production as required. *See* Fed. R. Civ. P. 34(a) ("request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts").

Defendant, by providing four boxes of unlabelled photocopies, did not comply with Fed. R. Civ. P. 34(b), which requires that "[a] party who produces documents ... shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." The collected photocopies are not argued to be representative of how the documents are maintained by defendant in the normal course of business, and the absence of any labeling fails the alternative requirement. Defendant's written response to the request for production similarly fails to characterize the documents.

This defect in the manner in which documents are produced is not dispositive of the motion to compel. The documents were produced almost three months ago, [FN2] and the discovery deadline is now almost upon the parties. This Court could order defendants to mark the documents produced with references to specific production requests, but it is expected that plaintiff is well aware of the contents of those boxes at this time. The relevant question on the present motion to compel is whether defendant failed to produce documents requested without a legitimate basis for refusing to do so.

FN2. Although plaintiff sought and was granted expedited briefing for purposes of expeditiously resolving the present motion. After defendant filed its opposition, plaintiff

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                    Page 2
(Cite as: 2003 WL 22305133 (D.Conn.))

sought and was granted an extension of time in which to file a reply. The reply brief was never filed, causing this Court to wait until the reply period lapsed and further protracting the present dispute.

The standard for a granting a motion to compel is clear. "[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ' Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir.1992) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). An order compelling discovery may be tailored to the circumstances of the case. Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir.1996).

*2 Plaintiff argues that "there may yet be items provided or omitted." Defendant, initially objecting to forty-four out of forty-five requests, responds that the production represents "[f]ull compliance" with the requests and that "[t]here are no other documents ... responsive to Plaintiff's Request for Production ." Defendant does, however, indicate that it did not produce "those documents designated as [subject to] attorney client privilege."

Other than plaintiff's general claim that he suspects the production is not a complete response to the requests, he specifically argues that defendant has not produced
1. plaintiff's personnel file, which defendants contend was given to plaintiff when he left their employ, Request No. 1,
2. documents related to the termination/separation of plaintiff, which defendants argue do not exist, Request No. 2,
3. documents describing all positions held by plaintiff while employed by defendants and compensation therefor, Request No. 6,
4. documentation describing the training and

education of management on issues of diversity and employee discipline, Request No. 7,
5. documents describing defendants' performance evaluation procedures, Request No. 10,
6. documents pertaining to investigations of plaintiff while employed by defendants, Request No. 13, 29 and 33,
7. documents concerning this action or its subject matter, Request No. 14,
8. documents pertaining to discrimination claims lodged against defendants since 1990, Request No. 18 and 25,
9. documents detailing all benefits provided to plaintiff that accrued as of November 28, 2000, Request No. 21,
10. biographical details of all employees terminated by defendants during the term of plaintiff's employment, Request No. 22, and information provided to state or federal agencies in response to claims that such terminations were discriminatory, Request No. 23,
11. documents pertaining to Allingtown Fire District employees who have been disciplined and the reason for such discipline, Request No. 32,
12. documents pertaining to appointment of Calvin Deloatch and Aaron Haley as commissioner and chairman of board, respectively, Request No. 35-37,
13. documents pertaining to claims or defenses of defendant, Request No. 39,
14. documents pertaining to the return of the automobile provided plaintiff by Allingtown Fire District, Request No. 40,
15. documents pertaining to Allingtown Fire District locking plaintiff out of his office in November 2000, Request No. 41, and
16. documents pertaining to civil or administrative suits filed by Allingtown Fire District employees against their employer, Request No. 44.

Defendant alleges in its memorandum in opposition that it has fully complied with the requests for production except for documents that it has withheld as protected by attorney-client privilege. The only requests identified above that were objected to as protected are requests 14 and 39. These requests constitute blanket requests seeking all documents relevant to the case without qualification and cannot be read as possessing the degree of particularity required by Fed. R. Civ. P. 34(b). [FN3] As such represent the only requests to which defendant objects, it concedes its obligation to produce documents responsive to all other requests. Defendant is therefore ordered to comply with all requests for production, with the exception of Requests 14 and 39, to the extent it has not done so

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
**(Cite as: 2003 WL 22305133 (D.Conn.))**

already.

> FN3. A request need not specifically identify documents sought but may permissibly identify documents by "individual item or by category," Fed. R. Civ. P. 34(b). Serving two requests, one of which seeks all documents relevant to a sixteen-count complaint, the other seeking all documents relevant to the answer, satisfies neither requirement.

**\*3** Plaintiff also moves for sanctions against defendant for its refusal to produce the requested documents. *See* Fed. R. Civ. P. 37(d) (allowing sanctions in absence of violation of court order if party fails to address discovery request). Although defendant objected to substantially all discovery requests, it generally qualified its objections with a statement that documents responsive to the request would be produced. As there is no evidence that defendant has not in fact responded to all discovery requests, there is no basis for sanctioning defendant.

III. CONCLUSION

Plaintiff's motion to compel (Doc. No. 24) is granted in part consistent with the foregoing opinion.

SO ORDERED.

2003 WL 22305133 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Exhibit "D"

# HALLORAN
# &SAGE LLP

A T T O R N E Y S   A T   L A W

Joseph G. Lynch
Joseph T. Sweeney
George Royster
John W. Lemega
Vincent M. Marino
Richard C. Tynan
William P. Borchert
Thomas J. Hagarty, Jr.
Brian J. Donnell
James J. Szerejko
William J. McGrath, Jr.
Dennis C. Cavanaugh
Christopher J. Lynch
Paul D. Meade
Joseph G. Fortner, Jr.
Stephen P. Fogerty
Peter G. Boucher

Steven H. Malitz
John B. Farley
David B. Losee
Mark T. Altermatt
Henry M. Beck, Jr.
Susan O'Donnell
Bruce H. Raymond
Kevin M. Roche
David G. Hill
Daniel P. Scapellati
James M. Sconzo
Robert B. Cox
Thomas P. O'Dea, Jr.
Gregory R. Faulkner
Dan E. LaBelle
Duncan J. Forsyth
Ann M. Catino

James P. Maher
Carl R. Ficks, Jr.
Robert M. Barrack
John W. Dietz
James C. Stearns*
Theresa W. Hajost***
Mark T. Livesay
Thomas P. Lambert
Reed A. Slatas
Thomas J. Finn
Janice D. Lai
Richard P. Roberts
Robert A. Rhodes

J. Randolph
MacPherson**
Mary L. Barrow
Kenneth R. Slater, Jr.
Michael K. Stanton, Jr.
Jeffrey F. Gostyla
James V. Somers
Laura Pascale Zaino
Melissa Rotenberg Arcaro
Ralph W. Johnson, III
Martin A. Onorato
Brett M. Szczesny
Alan P. Curto
Kevin J. Greene

James C. Celentano
Kathleen A. St. Onge
N. Kane Bennett
Kristin Alix Herzog
Patrick M. Birney
Bruce J. Gelston
Peter E. Strniste, Jr.
Steven J. O'Neill****
Stephen H. Broer
Alexei J. Plocharczyk
Kevin R. Brady
Gregory K. Holness
Paula Cruz Cedillo

COUNSEL
Irwin D. Mittelman
Robert C. Engstrom
Paul V. Knopf
Alan S. Rubenstein
John J. Ryan
Michael C. Collins
Lawrence P. Weisman
Lisa M. Kowtko

*Admitted in Washington, DC
only
**Admitted in Washington, DC
and California only
***Admitted in Washington, DC
and Maryland only
****Admitted in Massachusetts
and State of Washington only

Amy Sargeant Lang
Eric P. Daigle
Maria Alexander
June M. Sullivan
Jeffrey L. Forte
Joshua M. Auxier
Elizabeth E. Hackett
Regen O'Malley
Brian D. Rich
Laurie R. Steinberg
Jonathan C. Sterling
Kimberly F. Wells
Todd R. Regan
John C. Pitblado
Jude Francois
Thomas C. Blatchley
Patrick J. Mulroney

January 27, 2004

**VIA FACSIMILE AND U.S. MAIL CONFIRMATION**

Peter S. Olson, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, Connecticut 06601

> **Re:   Tom James Company v. Trace Apparel, LLC and J. Tracy Green**
> 3:03cv0596 (JBA)
> H&S File No.: 13233.0001

Dear Peter:

As a follow up to our meet and confer and subsequent conference call with the Court last week, this correspondence addresses the remaining issues concerning Tom James Company's ("Tom James") objections and responses to Defendants' discovery requests. All of this information will, of course, be provided subject to the execution of an acceptable protective order to protect Tom James' confidential information.

<u>Interrogatories Nos. 2 – 7:</u>

Defendants contend that the information sought in these interrogatories is essential to their evaluation of the damages claimed by Tom James. Notwithstanding Tom James' position that the detailed information regarding each item sold is unnecessary and burdensome, Tom James has legitimate and well founded concerns regarding the dissemination of this confidential information. As we discussed, it has been an ongoing practice among various former employee-defendants in litigation with Tom James to distribute information among other similarly situated former employees. Given this practice and the fact Mr. Green actively communicates with other former employee-defendants, Tom James believes the production of this information would be extremely prejudicial. As such, Tom James must maintain its objection to the disclosure of the detailed information sought.

Peter S. Olson, Esq.
January 27, 2004
Page 2

Tom James will agree, however, to produce profit and loss statements which indicate profit margins on items sold. This information should adequately provide Defendants with the damages information sought as well as protect against Tom James' legitimate concerns.

Interrogatory No. 22:

As previously discussed in our communications, some of the bases upon which Tom James' initially objected to this interrogatory was that it improperly sought confidential employee information, was overbroad, and unlimited in scope. Given the restrictions we have discussed, Tom James will agree to provide information concerning the number of individuals from 1993 to 2003 who have requested rollovers in a vested 401(k) account following a break in service of at least one year, to the extent that this information may be obtained.

Interrogatory No. 23:

Tom James will agree to provide this information.

Request for Production No. 10:

During our meet and confer, you limited the documents sought by this request to copies of minutes of meetings in which a dividend was declared and any direction instructing that payment not be made to any specific shareholders. Tom James will agree to produce this information as limited.

Request for Production No. 25:

Tom James will agree to provide this information.

Request for Production No. 27:

During our meet and confer, you limited the documents sought by this request in the same manner as Request for Production No. 10. As such, Tom James will agree to produce this information in the same limited manner.

Peter S. Olson, Esq.
January 27, 2004
Page 3


Please contact me if you have any questions.  Thank you.

Very truly yours,

Thomas J. Finn

TJF/pcc
cc:  Thomas A. Rouse, Esq.

Exhibit E

1998 WL 422858                                                              Page 1
**(Cite as: 1998 WL 422858 (D.Conn.))**

Only the Westlaw citation is currently available.


United States District Court, D. Connecticut.

Richard MESSIER, et al.
v.
SOUTHBURY TRAINING SCHOOL, et al.

**No. 3:94-CV-1706 (EBB).**

June 29, 1998.


*RULING ON PLAINTIFF'S MOTION TO COMPEL
AND FOR SANCTIONS*

BURNS, Senior J.

*1 Plaintiffs, three advocacy organizations and seven individual residents or former residents of Southbury Training School ("STS"), bring this class action for injunctive relief against defendants STS, Connecticut Department of Mental Retardation ("DMR"), Department of Public Health and Addiction Services and Department of Social Services. Plaintiffs allege violations of the Due Process Clause of the Fourteenth Amendment, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act and the Social Security Act. This Court denied a motion to dismiss by defendants DMR and STS on February 9, 1996, and granted plaintiffs' motion for class certification on July 8, 1996.

Now the plaintiffs move the Court to compel production of certain documents prepared by the defendants' experts at the request of the defendants' counsel. For the following reasons, the plaintiffs' Motion to Compel and for Sanctions (Doc. No. 340) is DENIED. The defendants' related Motion for Reasonable Expenses in Opposing the Plaintiffs' Unjustified Motion to Compel (Doc. No. 365) is also DENIED.

I. Background

The current controversy relates to a request by the defendants' counsel to the defendants' experts to analyze the reports of the plaintiffs' experts and indicate which points each expert believes he or she can rebut. The plaintiffs contend that the "written analyses of plaintiffs' experts' reports," Plaintiffs' Mot. to Compel at 1, which resulted from this

request, are discoverable as material considered by an expert in forming his or her opinion pursuant to Fed.R.Civ.P. 26(a)(2)(B). The plaintiffs also argue that the defendants failed to assert a privilege in a timely manner and improperly directed their experts not to answer questions about the documents at issue during the defendants' experts' depositions.

The defendants disagree, contending that the documents in question are protected work product. The defendants claim that far from being written reports, the documents are simply questions and strategy suggestions. As such, the argument continues, they were written by the experts in a consultative role in this highly technical litigation and have nothing to do with the formation of their expert opinions about which they will testify at trial. Furthermore, the defendants assert that this claim of privilege was timely advanced, both during depositions and in writing in a letter from the defendants' counsel to the plaintiffs' counsel.

In order to fairly resolve this issue, the Court ordered the defendants to submit the documents for an *in camera* inspection. Review of the documents convinces the Court that the defendants are correct in their assertion that these papers were generated by the defendants' experts in a consultative capacity. Accordingly, the documents are not subject to discovery by the plaintiffs.

II. Legal Analysis [FN1]

> FN1. The Court notes briefly that the defendants' assertion of privilege was timely made. The defendants' argument that their written response of March 6, 1998 was within the thirty day period required under FED.R.CIV.P. 34(b) is persuasive since the documents in question could only have been requested by the plaintiffs as part of the rebuttal deposition phase and the March 6th letter was written within thirty days of the rebuttal deposition notices.

A. Discovery

The 1993 amendments to Fed.R.Civ.P. 26(a)(2)(B) contemplate that all materials "considered" by a testifying expert witness in forming her opinion are fully discoverable by the adverse party, notwithstanding the work product doctrine. *Karn v. Ingersoll Rand,* 168 F.R.D. 633, 639 (N.D.Ind.1996). This mandate of full disclosure stems from several

**(Cite as: 1998 WL 422858 (D.Conn.))**

policy concerns relating to expert testimony. [FN2] Underlying these concerns is a recognition that expert testimony is often determinative of one or more central issues in a case. _Intermedics, Inc. v. Ventritex, Inc.,_ 139 F.R.D. 384, 394 (N.D.Cal.1991). Therefore, it is critical that an adverse party have an opportunity to explore any biases or unreliabilities that might affect an expert's objectivity. _Id._ at 390.

> FN2. These policy issues include effective cross-examination of expert witnesses, the negligible impact on the underlying purposes of the work-product doctrine, and the desirability of litigation certainty, i.e. counsel will know what documents reviewed by their experts must be disclosed. _Karn,_ 168 F.R.D. at 639.

**\*2** Such broad discovery does not, however, completely foreclose application of the work-product doctrine to material provided by experts to counsel. [FN3] If an expert is retained as both a consultant and a testifying witness, the work-product doctrine may be invoked to protect work completed by the expert in her consultative capacity as long as there exists a clear distinction between the two roles. _Beverage Marketing Corp. v. Ogilvy & Mather Direct Response, Inc.,_ 563 F.Supp. 1013, 1014 (S.D.N.Y.1983). Any ambiguity about which function was served by the expert when creating a document must be resolved in favor of discovery. _B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.,_ 171 F.R.D. 57, 62 (S.D.N.Y.1997).

> FN3. The Court need not consider the application of the work-product doctrine to information provided by counsel to experts since the defendants' counsel provided all such material to the plaintiffs. _See_ Defendants' Brief in Opp'n at 2.

In _B.C.F. Oil,_ the Court placed documents related to experts into five categories: (1) documents created by or reviewed by an expert which are unrelated to her opinion or testimony; (2) documents generated by an expert in connection with her role as an expert; (3) documents given to an expert by counsel which contain data for the expert's review; (4) documents containing the mental impressions of attorneys presented to the expert by counsel; and (5) documents created by counsel to record oral conversations with an expert. _Id._ at 60-61. Only the

first two categories are implicated by the present factual situation since the documents in question were generated by experts rather than counsel.

It is the Court's task to determine whether the submitted documents fall into the first or second category. In other words, the Court must decide which role the experts were pursuing when they created these documents, that of consultant or testifying expert. The distinction is crucial because documents falling squarely within the first category are not discoverable by an adverse party, _Id._ at 62, whereas those documents belonging even marginally in the second category must be produced. _Id._ The Court finds that the submitted documents are exactly as the defendants' counsel represented them to the plaintiffs; they were clearly created by several of the defendants' experts in a consultative role, dealing strictly with strategy recommendations. Accordingly, the defendants are under no obligation to disclose them to the plaintiffs.

**B. Sanctions**

Each party asks the Court to grant sanctions against the other party. These requests are inappropriate inasmuch as both parties advanced principled arguments in support of their positions. The defendants' objections to the plaintiffs' discovery request were "substantially justified." Fed.R.Civ.P. 37(a)(4)(A); _The Bank of New York and JCPL Leasing Corp. v. Meridien BIAO Bank Tanzania Ltd.,_ 171 F.R.D. 135, 143 (S.D.N.Y.1997) (applying Rule 37).

Similarly, the Court finds that the plaintiffs' requests for these documents was not unreasonable given the intention of the Federal Rules of Civil Procedure to make all documents considered by an expert in the formulation of her opinion discoverable. Indeed, the application of the work-product doctrine to material created or reviewed by expert witnesses is extremely narrow as explained above. It was only after an _in camera_ inspection of the documents in controversy that the Court could resolve this dispute fairly. Under those circumstances a grant of sanctions against either party would be unfair.

**III. Conclusion**

**\*3** For the foregoing reasons, the plaintiffs' Motion to Compel and for Sanctions (Doc. No. 340) is DENIED. The defendants' related Motion for Reasonable Expenses in Opposing the Plaintiffs' Unjustified Motion to Compel (Doc. No. 365) is likewise DENIED.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1998 WL 422858
**(Cite as: 1998 WL 422858 (D.Conn.))**

SO ORDERED

1998 WL 422858, 1998 WL 422858 (D.Conn.)

END OF DOCUMENT