Exhibit "A"

Not Reported in A.2d                                                                                                               Page 1
(Cite as: 2000 WL 195097 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

EASTCOAST GUITAR CENTER, INC. dba
Eastcoast Music Mall,
v.
Richard TEDESCO.

No. CV 990337066S.

Feb. 7, 2000.

MEMORANDUM OF DECISION

PETRONI.

*1 The court held a hearing for a temporary injunction on November 4, 9 and 19, 1999 and December 9, 1999, after which the defendant (Tedesco) urges the court to deny the plaintiff's (Eastcoast Guitar) application or, in the alternative, limit it in scope to permit the defendant to operate his business known as Guitar Hangar, provided the business remain an Internet-based business only. Further, the defendant shall not solicit any business from any customers of the plaintiff located in Fairfield, Litchfield and New Haven counties in Connecticut, or otherwise compete with the plaintiff within a thirty (30) mile radius of the plaintiff's store in Danbury, Connecticut at 25 Hayestown Road.

The plaintiff, in its claims for relief, urges the court to enforce a non-compete contract signed by the parties on January 27, 1997 for one year in which the defendant, in consideration of his continued employment with the plaintiff, agreed not to compete with the plaintiff by either performing any similar services for any competitor of the plaintiff within a one hundred (100) mile radius of Danbury, which would extend to Rhode Island, Massachusetts, New York, and the entire state of Connecticut.

Connecticut courts have upheld agreements not to compete arising out of an employment relationship to protect its potential business interests in its market area, as well as its existing customers. *Torrington Creamery, Inc. v. Davenport*, 126 Conn. 515, 520 (1940). The plaintiff is required to prove with reasonable probability of succeeding on the merits, and not having an adequate remedy at law, will sustain irreparable injury. *Riley v. Liquor Control Commission*, 153 Conn. 242 (1965). The principal purpose of a preliminary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits. *Olcott v. Pendleton*, 128 Conn. 292, 295 (1941). For the plaintiff to be entitled to a temporary injunction, it must establish five factors to decide the reasonableness of the plaintiff's restrictive covenant set forth in the one-year contract with the defendant:
  (1) the length of time the restriction operates;
  (2) the geographic area covered;
  (3) the fairness of the protection accorded to the employer;
  (4) the extent of the restraint on the employee's opportunity to purse his occupation; and.
  (5) the extent of interference with the public's interest.
*Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 529 (1988).

This five-prong test is disjunctive, rather than conjunctive. If the court finds any one of these five factors unreasonable, the restrictive covenant in the agreement is unenforceable. *New Haven Tobacco Co. v. Perrelli*, 11 Conn.App. 636, 638-39 (1987); *Scott v. General Iron & Welding Co.*, 171 Conn. 132, 137 (1976).

There is no dispute that the plaintiff terminated the defendant's employment on August 16, 1999. The plaintiff now seeks an order to enforce the agreement not to compete for one year as he agreed.

*2 After hearing all the testimony and reviewing all the exhibits, the court finds the plaintiff has proven four of the five factors required to enforce this agreement not to compete set forth in *Robert S. Weiss & Associates, Inc. v. Wiederlight, supra*, 525, 529. The court finds that the geographic area in the agreement is too broad and is not reasonable or necessary to protect the plaintiff's business. For that reason, the court will permit the defendant to operate the business known as Guitar Hangar on the Internet only, and furthermore, the defendant shall not solicit any business from any customers of the plaintiff located in Fairfield, Litchfield and New Haven counties in Connecticut, or otherwise compete with the plaintiff by working for a competitor of the plaintiff or operate a retail business with a walk-in store in competition with the plaintiff in the aforesaid counties and within a thirty (30) mile radius of the plaintiff's store in Danbury, Connecticut at 25 Hayestown Road for a period of one year from this

Not Reported in A.2d  
**(Cite as: 2000 WL 195097 (Conn.Super.))**

Page 2

date.

2000 WL 195097 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Exhibit "B"

Not Reported in A.2d  
(Cite as: 1997 WL 583629 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

KX INDUSTRIES, L.P.  
v.  
Bruce SAASKI.

No. CV 960386806S.

Aug. 29, 1997.

MEMORANDUM OF DECISION

MEADOW.

*1 The plaintiff, KX Industries, L.P. (KXI), seeks a temporary injunction against the defendant, Bruce Saaski, a former employee of KXI.

On May 10, 1996, KXI filed an eight-count verified complaint against Saaski [FN1] along with, inter alia, an application for an ex parte temporary injunction. KXI's application asserts the following representations: [FN2] Saaski was employed by KXI as KXI's Technical Support Manager until April 24, 1996. [FN3] In this capacity, Saaski obtained confidential and proprietary information belonging to KXI with respect to KXI's current and prospective customers, material sources, research and development of KXI's product and manufacture and testing of KXI's product. [FN4] Saaski's employment agreement contained a covenant not to compete (restrictive covenant) which prohibited Saaski from using or disclosing such confidential and proprietary information without the prior written consent of KXI; from maintaining possession of any materials, and copies thereof, containing any confidential information after Saaski ceased employment with KXI; and, from working for, or rendering services to, any competitor in any line of work or activity in which Saaski was engaged during any part of his last two years of employment with KXI, for a period of one year from the date of Saaski's cessation of employment with KXI. [FN5]

FN1. Count one alleges breach of employment contract; count two alleges a violation of the Uniform Trade Secrets Act; count three alleges tortious conversion; count four alleges statutory conversion pursuant to General Statutes § 52-564; count five alleges a violation of the Connecticut Unfair Trade Practices Act; count six alleges slander per se; count seven alleges tortious interference with business expectations; and count eight alleges misuse of computer system information pursuant to General Statutes § 52-570b.

FN2. Additionally, KXI submitted three affidavits and a copy of the employment agreement in support of its application

FN3. Saask began working tor KXI in early December 1993.

FN4. KXI manufactures and distributes solid carbon block water filters, which remove chlorine and other contaminants from otherwise unpotable water.

FN5. The allegations in count one of the complaint parallel the representations made in the application. To wit, count one alleges that in consideration of his employment with KXI, Saaski executed a written employment agreement which required, inter alia, that Saaski protect KXI's confidential and proprietary information, return all of KXI's confidential and proprietary information upon termination of his employment, and not work for or provide services to a competitor of KXI for at least one year following cessation of his employment with KXI. Saaski breached his employment agreement by failing to return KXI's confidential and proprietary information upon termination of his employment; by failing to protect KXI's confidential and proprietary information; by disclosing KXI'S confidential and proprietary information; and, by working for, providing services to, or becoming, a competitor of KXI.

On May 10, 1996, the court, DeMayo, J., issued an ex parte temporary injunction commanding and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                                              Page 2
(Cite as: 1997 WL 583629 (Conn.Super.))

enjoining Saaski from: (a) disclosing, utilizing or disseminating KXI's trade secrets and other confidential information, as defined in his employment agreement, and any other trade secret, confidential or proprietary information of KXI; (b) working for or rendering services to any competitor of KXI, or acquiring or holding any financial interest in a competitor, until August 24, 1997; (c) retaining KXI's trade secrets and other confidential information and proprietary information and material, and any reproductions of the same, whether stored/or recorded on paper, electronic or computer media of any form (e.g., hard disk, diskette, cartridge) or in any other manner; and ordering Saaski (d) to return to KXI all such confidential and proprietary information and material within two business days of service of this order. DeMayo, J., further ordered that this "Ex Parte Temporary Injunction shall continue in effect until further order of this Court, pending a hearing on [KXI's] Application for Temporary Injunction and Order to show Cause ..." (Emphasis in original.) DeMayo, J., ordered that Saaski appear on June 10, 1996, to show cause why the temporary injunction, as applied for, [FN6] should not issue.

  FN6. The relief applied for in the temporary injunction is substantially identical to the relief applied for, and granted, in the ex parte temporary injunction.

On June 10, 1996, counsel for KXI and Saaski appeared before the court, Booth, J. At that time, the parties represented that they were attempting to resolve this matter amicably and consented to Judge Booth's marking the matter "off unless it's reclaimed."

On April 4, 1997, KXI filed a motion for an order of contempt. KXI sought to have Saaski held in contempt of court for failing to comply with the terms of the ex parte injunction issued June 10, 1996 by DeMayo, J., based upon Saaski's employment with Water Safety. [FN7] Water Safety is a competitor of KXI. Thereafter, on August 13, 1997, the court, Meadow, J., found Saaski in contempt of court and ordered that Saaski cease working for Water Safety. [FN8] The court, Meadow, J., also ordered a hearing as provided on June 10, 1996, on the validity of the restrictive covenant contained in Saaski's employment agreement because there had never been a hearing on the merits of the ex parte temporary injunction issued by Judge DeMayo. [FN9]

  FN7. KXI claims that it learned of Saaski's employment with Water Safety on March 10, 1997, during an unemployment compensation hearing.

  FN8. The court, Meadow, J., heard three days of evidence on the motion for contempt.

  FN9. On August 20, 1997, the court, Meadow, J., heard an additional day of testimony on the validity and enforceability of the restrictive covenant.

DISCUSSION
A. Consideration

*2 As an initial matter, the court must determine whether the covenant not to compete agreement is supported by sufficient consideration. Saaski argues that prior to executing the employment agreement, he and KXI entered into a contract of employment for a term of two years. Saaski contends that KXI was already obligated to employ him pursuant to such prior contract, and therefore, the later employment agreement (not compete) is not supported by valid consideration. KXI vehemently denies that it entered into a prior written contract for a term of employment with Saaski. KXI maintains that the contract existing between itself and Saaski is the employment agreement, (Exh. I) dated December 9, 1993.

The employment agreement provides that "I [Saaski] am about to commence or have recently commenced employment with KX Industries L.P ... I acknowledge that I have been advised that the execution and delivery of this Agreement is a condition of my employment. Accordingly, in consideration of my employment and/or continued employment by the Company [KXI] as well as to induce the Company to afford me access to Confidential information ... I agree as follows ..."

Whether a contract is supported by sufficient consideration is a question of law based upon the evidence. *Town Bank & Trust Co. v. Benson, 176 Conn. 304, 307-08, 407 A.2d 971 (1978).* "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. E. Farnsworth, Contracts (1982) § 2.9, p. 89; A.

Case 3:03-cv-00596-JBA   Document 84-2   Filed 03/04/2004   Page 7 of 11

Not Reported in A.2d  
(Cite as: 1997 WL 583629 (Conn.Super.))
Page 3

Corbin, Contracts (1963) § 193, p. 188." *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987). In employment contracts, "past consideration" does not make a promise enforceable. *Dick v. Dick,* 167 Conn. 210, 224, 355 A.2d 110 (1974). A promise to do that which one is already bound to do does not constitute valid consideration for a new agreement. *Thermoglaze, Inc. v. Morningside Gardens Co.,* 23 Conn.App. 741, 745-46, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991).

Saaski has not demonstrated that he and KXI ever reached an agreement or entered into a contract for a term of employment for two years. The present case is similar to *Van Dyck Printing Co. v. DiNicola,* 43 Conn.Supp. 191, 648 A.2d 898 (1993). In *Van Dyck Printing Co. v. DiNicola,* the court enforced a covenant not to compete that had been entered into approximately one month after the employee started working for the employer. *Id.* The court reasoned that the covenant not to compete was supported by sufficient consideration because "[a]t the time the defendant began work, he and the plaintiff had not concluded an agreement concerning the terms of his employment. They had, rather, agreed on some items and left open some others ... When the plaintiff presented the defendant with the proposed written contract, no completed contract was already in place." *Id.* 195-96, 648 A.2d 898; see also *Russo Associates, Inc. v. Cachina,* Superior Court, Judicial District of Fairfield, Docket No. 27 69 10 (March 1, 1995, Levin, J.) (When determining whether a restrictive covenant in the employment context is supported by sufficient consideration, the court must consider the temporal proximity between the employee's hiring and the signing of the employment agreement.) [FN10] Moreover, where a "preexisting contract of employment is terminable at will, no overt consideration is required to support an otherwise valid covenant not to compete." *Daniel V. Keane Agency, Inc. v. Butterworth,* Superior Court, judicial district of New Haven, Docket No. 31 31 81 (February 22, 1995, Levin, J.).

FN10. In the present case, Saaski signed the employment agreement on December 9, 1993. Saaski began his employment at KXI in early December 1993.

*3 Since Saaski has not demonstrated that he and KXI ever entered into a prior contract of employment for a term of two years, and since Saaski executed the employment agreement shortly after commencing his employment at KXI, the employment agreement is supported by sufficient consideration.

B. The Temporary Injunction & The Restrictive Covenant

"The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.) *Clinton v. Middlesex Mutual Assurance Co.,* 37 Conn.App. 269, 270, 655 A.2d 814 (1995). "[T]he requirements for a temporary injunction are ... establishing a legal right, which involves a determination of the probability of the plaintiff's succeeding on the merits and that there is no other adequate remedy at law; and ... the imminence of a substantial and irreparable injury to the plaintiff, considered together with the effect of a temporary injunction on the plaintiff and the defendant." *Connecticut Assn. Clinical Laboratories v. Conn. Blue Cross, Inc.,* 31 Conn.Supp. 110, 113, 324 A.2d 288 (1973). Furthermore, in *Waterbury Teachers Assn. v. Freedom Of Information Commission,* 230 Conn. 441, 446, 645 A.2d 978 (1994), our Supreme Court impliedly acknowledged that the requirements for a temporary injunction are: (1) the plaintiff had no adequate legal remedy; (2) the plaintiff would suffer irreparable injury absent an injunction; (3) the plaintiff was likely to prevail on the merits; and (4) the balance of the equities favored an injunction. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." *Advest, Inc. v. Wachtel,* 235 Conn. 559, 562-63, 668 A.2d 367 (1995). The trial court is afforded broad discretion in deciding whether to issue an injunction. *Bauer v. Waste Management of Connecticut, Inc.,* 239 Conn. 515, 534, 686 A.2d 481 (1996); *Nair v. Thaw,* 156 Conn. 445, 452, 242 A.2d 757 (1968) ("[T]he issuance of an injunction and the scope and quantum of the injunctive relief rests in the sound discretion of the trier").

In the present proceeding, the parties have agreed that KXI has no adequate legal remedy and would suffer irreparable harm absent an injunction, thus, the first two requirements for a temporary injunction have been satisfied. [FN11] Pursuant to this court's order of August 13, 1997, the issue now before the court is the validity and enforceability of the restrictive covenant. As discussed *supra,* with respect to the requirements for a temporary injunction, this issue falls within the ambit of the third and fourth requirements for a temporary injunction, i.e., that if the restrictive covenant is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d                                                                                         Page 4
(Cite as: 1997 WL 583629 (Conn.Super.))

found to be valid and enforceable, the plaintiff would be likely to prevail on the merits and the court would then proceed to balance the equities of issuing an injunction. The inquiry as to the validity and enforceability of the restrictive covenant itself requires a balancing of the equities between plaintiff and defendant. _Scott v. General Iron Welding Co., 171 Conn. 132, 137, 368 A.2d 111 (1976)_ (To be valid and enforceable, a restrictive covenant "should afford only a fair protection to the interest of the party in whose favor it is made and ... [t]he interests of the employee himself must also be protected ..."); _Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 529 n. 2, 546 A.2d 216 (1988)_ (The factors to be considered in evaluating the enforceability of a restrictive covenant include, inter alia, "the fairness of the protection accorded to the employer ... [and] the extent on the restraint on the employee's opportunity to pursue his occupation ..."). Accordingly, if the covenant is found to be valid and enforceable, KXI will be likely to succeed on the merits and the equities will favor issuing the injunction. Conversely, if the court determines that the covenant is invalid and unenforceable, not only will KXI be unlikely to prevail on the merits, but the equities will also disfavor KXI. Thus, whether the third and fourth requirements for a temporary injunction are satisfied is dependent on whether the covenant is valid and enforceable.

> FN11. The parties made this indication at the hearing before the court, Meadow, J., on August 20, 1997.

*4 "In order to be valid and binding, a covenant which restricts the activities of an employee following the termination of his employment must be partial and restricted in its operation in respect either to time or place, ... and must be reasonable--that is, it should afford only a fair protection to the interest of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public ... The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family." (Citations and internal quotation marks omitted.) _Scott v. General Iron & Welding Co., supra, 171 Conn. 137._ Thus, "[t]he five factors to be considered in evaluating the reasonableness of a restrictive covenant ancillary to an employment agreement are: (1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." (Citations omitted.) _Robert S. Weiss & Associates, Inc. v. Wiederlight, supra, 208 Conn. 529 n. 2._ "The five prong test of Scott is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." _New Haven Tobacco Co. v. Perrelli, 18 Conn.App. 531, 534, 559 A.2d 715,_ cert. denied, _212 Conn. 809, 564 A.2d 1071 (1989)._

The restrictive covenant in the present case provides: "Until the end of the Non-Competition Period (as herein defined), I will not, except with the prior written consent of an officer of KX Industries L.P.: (i) work for or render services to any Competitor (whether as an employee, consultant or otherwise) in any line of work or activity in which I was engaged at the company during any part of the two years immediately preceding the cessation of my employment with the Company or (ii) acquire or hold any financial interest (whether as partner, stockholder or otherwise) in any competitor. The Non-Competition Period shall run until the date one year after I cease to be an employee of the Company (i.e., until the first anniversary of the date on which I cease to be an employee of the Company). However, if, prior to such first anniversary, I propose to work for or render services to a Competitor, I shall give at least ten days advance notice of my intentions to the Director of Personnel of KX Industries, L.P. If I fail to give such notice, the Non-Competition period shall not end until the date one year after KX Industries L.P. learns that I have entered into an employment or consulting relationship with or acquired a financial interest in a Competitor."

1. The Time & Geographical Restrictions

*5 The "time and geographical restrictions are to be reviewed as intertwined considerations when a determination is made on the reasonableness of the limitations of an employee's post-termination activities. A restriction covering a large area might be reasonable if in effect for a brief time, while a restriction covering a small area might be reasonable for a longer time." _Van Dyck Printing Co. v. DiNicola, supra, 43 Conn.Sup. 197._

a. The Geographical Restriction

"The general rule is that the application of a restrictive covenant will be confined to a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

geographical area which is reasonable in view of the particular situation." *Scott v. General Iron & Welding Co., supra,* 171 Conn. 138. In the present case, the restrictive covenant states no specific geographic boundaries, rather, it prohibits Saaski from working for any competitor of KXI. The employment agreement defines a competitor as "any organization or person engaged in, or about to or planning to become engaged in, research, development, production, marketing, leasing or selling of a Competing Product." The employment agreement defines a competing product as "any product or process in existence or under development which is the same as, or similar to, or competes with, any product or process (i) which the Company manufactures, sells or licenses, or (ii) to which the Company has devoted a significant research or development effort and plans to manufacture, sell or license."

Because the definition of competing product is ambiguous regarding what is meant by "similar to" or competes with," the court heard parol evidence on the issue. [FN12] Dr. Evan Koslow, Ph.D., the CEO of KXI, testified that KXI manufactures and distributes solid carbon block water filters nationally and internationally. Dr. Koslow further testified that KXI has only four competitors for whom Saaski would be prohibited from working pursuant to the employment agreement. These four competitors are Honeywell, Water Safety, Culligan and Multipure. These four companies are competitors of KXI because they all manufacture and distribute solid carbon block water filters that are nearly identical to the filters manufactured by KXI. Finally, Dr. Koslow testified that Saaski would not be prohibited from working for a myriad of other companies in the water purification industry. The court finds that the instant geographic restriction is reasonable under the circumstances. See *Robert S. Weiss & Associates v. Wiederlight, supra,* 208 Conn. 531-32 (A restrictive covenant that fixes the geographical scope of the covenant by prohibiting an employee from soliciting accounts of his former employer was reasonable under the circumstances).

   FN12. "As we have so often noted, the parol evidence rule is not a rule of evidence, but a substantive rule of contract law ... The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud ... These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud. (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1 v. Insurance Co. Of Penn.,* 231 Conn. 756, 778-81, 653 A.2d 122 (1995).

Furthermore, the present case is similar to *Aetna Retirement Services, Inc. v. Hug,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 47 99 74 (June 18, 1997, Holzberg, J.). In *Aetna Retirement Services, Inc. v. Hug,* Aetna Retirement Services (ARS) applied for a temporary injunction prohibiting its former Head of Sales, Hug, from working for a competitor (The Equitable life Assurance Society of the United States) in violation of a restrictive covenant. The restrictive

covenant therein provided that Hug could not "become associated, whether as a principal, partner, employee, consultant or shareholder ... with any entity that is actively engaged in any geographic area in any business which is in substantial and direct competition with the business or businesses of [ARS] for which you provided substantial services during the two years prior to the termination of your employment ..." Hug argued that the restrictive covenant as drafted was too broad, and unenforceable, because it would prohibit him from working for any company that sold financial products and services. The court held that the restrictive covenant only prohibited Hug from working for the direct and substantial competitors of ARS and could not be read so broadly as to bar Hug from employment at other financial services institutions. The court concluded that "the geographic scope [of the restrictive covenant] is reasonable in light of [ARS'] business throughout the United States." *Id.*

*6 The geographic restriction in the present case is reasonable because it too is narrowly limited to the four direct competitors of KXI. Also KXI is a national and international product.

b. The Time Restriction

Here, the restrictive covenant provides two interrelated time restrictions. First, the restrictive covenant provides that the non-competition period runs for one year from the date that Saaski ceases to work for KXI. A one year time restriction is reasonable. See *Robert S. Weiss & Associates, Inc. v. Wiederlight, supra,* 208 Conn. (upholding a two year time limitation); *Scott v. General Iron & Welding Co., supra,* 171 Conn. 138 (upholding a five year restriction); *Torrington Creamery, Inc. v. Davenport,* 126 Conn. 515, 12 A.2d 780 (1940) (upholding a two year prohibition).

Second, the restrictive covenant provides that if within one year of ceasing work for KXI, Saaski proposes to work for, or renders services to, a competitor and Saaski fails to give the employer ten days advance notice of such proposal or work, the non-competition period shall not end until one year after the date on which KXI learns that Saaski has entered into an employment relationship with a competitor. Conceivably, Saaski could accept employment with a competitor within one year of leaving KXI, fail to notify KXI, then ten years later, KXI could learn of the employee's action and seek to enjoin Saaski from working for that competitor. While this second time restriction is potentially long, it is somewhat limited in that it only applies where Saaski begins work for a competitor of KXI within one year of leaving KXI. Furthermore, a lengthy time restriction may be reasonable under the circumstances when it is coupled with a narrow geographical restriction. *Van Dyck Printing Co. v. DiNicola, supra,* 43 Conn.Sup. 197. Here, although Saaski is subject to a potentially long time restriction, the time restriction is sharply curtailed in that it only applies if Saaski joins one of the four competitors of KXI within one year of leaving KXI. The time restriction of the restrictive covenant, when read in conjunction the narrow geographic restriction, is reasonable under the circumstances.

2. Protection to the Employer

"In order to be valid and binding, a covenant which restricts the activities of an employee following termination of his employment ... should afford only a fair protection to the interest of the party in whose favor it is made ..." *Scott v. General Iron & Welding Co., supra,* 171 Conn. 137. "[W]hen the character of the business and the nature of employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights ... Especially if the employment involves ... [the employee's] contacts and associations with clients or customers it is appropriate to restrain the use, when service is ended, of the knowledge and acquaintance, so acquired, to injure or appropriate the business which the party was employed to maintain and enlarge." *Robert S. Weiss & Associates, Inc. v. Wiederlight, supra,* 208 Conn. 533. "When, as here, a high degree of similarity between an employee's former and current employment makes it likely that the former employer's trade secrets and other confidential information will be disclosed either intentionally or inadvertently, by the employee in the course of his new employment, enforcement of a covenant not to compete is necessary to protect against such use and disclosure ..." (Citation omitted.) *Aetna Retirement Services v. Hug, supra,* Superior Court, Docket No. 47 99 74.

*7 In the present case, Saaski became familiar with KXI's particular expedited method of manufacturing standard and special order solid carbon block water filters. KXI understandably seeks to protect this information from its competitors. The restrictive covenant in this case provides a fair and reasonable degree of protection to KXI.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

### 3. The Employee's Opportunity to Pursue His Occupation

"The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and prevented from supporting himself and his family." Scott v. General Iron & Welding Co., supra, 171 Conn. 137.

The restrictive covenant herein does not preclude Saaski from earning a living because Saaski is only prohibited from working for the four companies that manufacture solid carbon block water filters. Saaski is free to work for other companies in the water purification industry. Furthermore, after the expiration of the non-competition period, the defendant is free to join any one of the plaintiff's four competitors that extends him an offer of employment. See Daniel V. Keane Agency, Inc. v. Butterworth, supra, Superior Court, Docket No. 31 31 81.

### 4. The Public Interest

"In order for such interference [with the public interest] to be reasonable, it must be determined that the employer is seeking to protect a legally recognized interest, and then, that the means used to achieve this end do not unreasonably deprive the public of essential goods and services." New Haven Tobacco Co. v. Perrelli, supra, 18 Conn.App. 536. "In determining whether a restrictive covenant unreasonably deprives the public of essential goods and services, the reasonableness of the scope and severity of the covenant's effect on the public and the probability of the restriction's creating a monopoly in the area of trade must be examined." Id.

KXI has a legally protected interest in protecting itself from the competition of a former employee who became familiar with KXI's product manufacturing process while employed by the plaintiff. See Daniel V. Keane Agency, Inc. v. Butterworth, supra, Superior Court, Docket No. 31 31 81. This restriction in this case does not create a monopoly or interfere with the public's ability to procure carbon block water filters. Id.

### IV. CONCLUSION

The employment agreement (covenant not to compete) is supported by sufficient consideration. The restrictive covenant contained therein is reasonable under the circumstances and is therefore valid and enforceable. Accordingly, the court issues a temporary injunction enjoining Saaski from working for Water Safety, or any other of KXI's three competitors, until March 10, 1998. [FN13]

> FN13. Because the court has determined that the restrictive covenant is valid and enforceable, the issues of whether, and to what extent, the court may "blue pencil" the restrictive covenant are moot.

1997 WL 583629 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works