UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOM JAMES COMPANY,<br><br>PLAINTIFF<br><br>VS.<br><br>J. TRACY GREEN, ET AL.<br><br>DEFENDANTS | CIVIL ACTION NO.<br>3:03cv00596 (JBA)<br><br><br><br>March 18, 2004 |

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Tom James' opposition to the motion for judgment on the pleadings filed by the defendants J. Tracy Green and Trace Apparel, LLC (hereinafter, "Green" and "Trace", respectively) [Doc. No. 70] does not undermine that motion in any way, and in many respects, supports it. However, certain arguments asserted by Tom James are misleading, and as such, the defendants respond to those arguments below.

## I.    TOM JAMES' NON-CONNECTICUT AUTHORITY

The five cases from other jurisdictions on which Tom James relies fail to support Tom James' position, and in fact support defendants' position. [See Pl.'s Opp. at p. 9 (relying on *Perceptron, Inc. v. Sensor Adaptive Mach., Inc.*, 221 F.3d 913, 921 (6th Cir. 2000); *Basicomputer v. Scott*, 873 F.2d 507, 512-13 (6th Cir. 1992); *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371-72 (8th Cir. 1991); *Levitt Corp. v. Levitt*, 593 F.2d 463, 468-69 (2d Cir. 1979); *Thermatool Corp. v. Borzym*,

575 N.W.2d 334, 337 (Mich. Ct. App. 1998)).] Each of these cases only confirms what defendants demonstrated in their original memorandum – that the issue of available relief for an alleged breach of a restrictive covenant is one of state law.

In *Perceptron*, the Sixth Circuit looked to Michigan law, basing its extension of a covenant on Michigan Court of Appeals precedent. 221 F.3d at 921 (citing *Thermatool Corp. v. Borzym*, 227 Mich. App. 366, 575 N.W.2d 334, 338 (Mich. App. 1998)). Notably, despite the Michigan authority, the Court affirmed the *denial* of extended injunctive relief on the ground that the circumstances were not "appropriate."

*Thermatool*, on which the Sixth Circuit relied (and on which Tom James relies), also emphasized that this issue turns on varying state law. In reaching its decision, the court first looked to precedent that held that "Michigan courts *cannot* extend the terms of a noncompetition agreement," but recognized that this state court decision was essentially overruled by a subsequent state statute. *Id.* (emphasis added). The court then went on to compare jurisdictions that permitted such an extension with jurisdictions that did not, eventually concluding that Michigan would permit an extension under "appropriate circumstances." *Id.* at 374-75, 575 N.W.2d at 337-38. The decision in *Thermatool* (and, by extension, *Perceptron*) thus clearly recognizes not only that this issue is a matter of state law, but that there is a split among jurisdictions.

2

Similarly, in *Basicomputer*, the Sixth Circuit – at that time applying Ohio law – stressed the importance of looking to the decisions of the state supreme court, even if that meant disregarding its own prior decision, since "[t]he construction of the covenant and its enforceability are questions of Ohio law." *Basicomputer*, 973 F.2d at 513-14 (emphasis added). By reversing for relying on its precedent rather than relevant state supreme court authority, the Sixth Circuit confirmed defendants' argument that this Court must look only to relevant decisions of the state supreme court.[1]

*Overholt* is equally supportive of defendants' position. In *Overholt*, the Eighth Circuit Court of Appeals affirmed the district court's injunction, which extended beyond the original date set forth in the agreement. In reaching that decision, the Eighth Circuit – applying Minnesota law – expressly relied on the statements of the Minnesota Supreme Court. *Overholt*, 941 F.2d at 1372 (relying on *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 93 (Minn. 1979), which held that "there may be situations where injunctive relief extending beyond the expiration of the period established by the covenant is appropriate").

To the extent that any of these courts reached decisions on the merits of the issue in this motion, they did so under individual states' laws. Although those decisions might be considered persuasive in the absence of relevant Connecticut

---

[1] *Basicomputer* clearly shows that Tom James' reliance on the Second Circuit decision in *Levitt* is inappropriate, in light of state Supreme Court authority on point.

Supreme Court authority, the existence of such authority renders those decisions essentially meaningless.

Tom James' reliance on *Levitt* is also misplaced. Although Tom James stresses that *Levitt* was decided by the Second Circuit, that case – a New York case decided under federal trademark principles – carries no more authority or weight than the other decisions discussed above because it, too, was not decided under Connecticut law.

Even if there were no Connecticut Supreme Court authority on point, and this Court were to look to *Levitt* (along with the decisions of other jurisdictions) as persuasive authority, the *Levitt* case involved a different type of restrictive covenant – one which the courts are generally willing to enforce more strictly. The *Levitt* case involved the sale of a business, specifically a person's right to use his own name after selling the right to use that name and the goodwill associated with it to a corporation. The court specifically addressed the limited injunctive relief usually available with respect to a person's name, but noted that, "[w]here, as here, … the infringing party has previously sold his business, including use of his name and its goodwill, to the plaintiff, sweeping injunctive relief is more tolerable." *Id.* at 468 (citations omitted).

*Levitt* is thus distinguishable for several reasons. It involved the sale of a business, rather than an employment relationship, and it was decided in the context of a federal trademark claim, rather than a state law contract claim. Additionally,

4

*Levitt* was fact-specific: the court specifically recognized the defendant's "second refusal in as many years to abide by the bargain he struck when he sold his business," *id.* at 466, and held that the factual record "amply justifie[d] the district court's conclusion that 'strong and substantial restrictions' were required to protect the plaintiff," *id.* at 469, and to "counteract the damage done to the plaintiffs by [the defendant's] … actions, *id.* at 467.

Even the portion of the *Levitt* decision that Tom James paraphrases and selectively quotes fails to supports Tom James' position.    There, the court recognized that "it is beyond cavil that a district court sitting in equity may devise a remedy that extends or exceeds the terms of a prior agreement between the parties if it is necessary to make the injured parties whole." *Id.* at 469 (emphasis supplied) (relying on *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444, 448 (5th Cir. 1971)).  It is hardly "beyond cavil" that a party should be entitled to more than twice what they were originally entitled to receive.

Yet, Tom James seeks to recover substantial monetary damages for the two years after Green's employment, as well as two additional years after trial (if Tom James succeeds), in addition to the time between the date the restrictive covenant lapsed and the court's determination after trial. Tom James' request for double and triple relief is not supported by any principle of Connecticut law.  In Connecticut, the relief available in a breach of contract action "should place the injured party in the same position as he would have been in had the contract been performed." *Gazo v.*

5

*City of Stamford,* 255 Conn. 245, 264 - 65 (2001) (citation and internal quotations omitted). It is apparently the theme of Tom James' memorandum, however, to avoid discussing Connecticut Supreme Court authority.

## II.    TOM JAMES' DISCUSSION OF STATE SUPERIOR COURT AUTHORITY

In a failed attempt to steer this Court to some <u>binding</u> authority on the pending issue, Tom James has cited two Connecticut Superior Court cases. [*See* Pl.'s Opp. at p. 9 (citing *Eastcoast Guitar Ctr., Inc. v. Tedesco*, No. CV-99-0337066-S, 2000 WL 195097 (Conn. Super. Feb. 7, 2000) (decision attached to Pl.'s Opp.) and *KX Indus., L.P. v. Saaski*, No. CV-96-0386806-S, 1997 WL 583629 (Conn. Super. Aug. 29, 1997) (decision attached to Pl.'s Opp.)).] Tom James' reliance on these decisions is severely misplaced.

First, contrary to Tom James' characterization [*see* Pl.'s Mem. at p. 9], in *KX Industries*, the court did <u>not</u> extend injunctive relief beyond the time set forth in the original noncompete agreement. In that case, <u>the agreement itself</u> prohibited the employee from competing until March 10, 1998, and the <u>ordered injunction</u> ran only until March 10, 1998. *Id.* at *7. In other words, *KX Industries* is completely irrelevant to whether courts may extend restrictive covenants beyond the contracted date.

Tom James' reliance on *Eastcoast Guitar* is also misplaced. First, the court did not even address the issue of whether the lapsing of a restrictive covenant renders a request for injunctive relief moot. At the time of the decision, the covenant to compete had not, by its terms, lapsed. Second, and more importantly, the

6

covenant at issue in *Eastcoast Guitar* was found unenforceable for the time period prior to the court's decision. As the court explained, a restrictive covenant must satisfy all five prongs of the test set forth in *Robert S. Weiss & Assoc., Inc. v. Wiederlight*, 208 Conn. 525, 529 (1988). *See Eastcoast Guitar*, 2000 WL 195097 at *1. "If the court finds any one of these five factors unreasonable, the restrictive covenant in the agreement is unenforceable." *Id.* (citations omitted). Because the court found one of the factors unreasonable, the covenant was unenforceable prior to the court's decision. *Id.* at *2.

In other words, nothing the employee did prior to the court's decision could have violated the restrictive covenant. The court went on to reduce the geographic limitation, and then enforced the restrictive covenant, as reduced, for the time agreed to in the covenant – i.e., one year. Therefore, the *Eastcoast Guitar* court, like the *KX Industries* court, enforced the restrictive covenant only for the period provided in the agreement itself. This is significantly different than the relief Tom James requests, which includes damages for the first two years, as well as injunctive relief running until two years after trial (which is itself at least a year away). These cases therefore do not support Tom James' requested relief.

Even if those cases adequately supported Tom James' position, they are inconsistent with *Van Dyck Printing Co. v. DiNicola*, 43 Conn. Supp. 191, 191, 648 A.2d 898, 899 (Conn. Super. 1993), *aff'd*, 231 Conn. 272, 273 n.1, 648 A.2d 877, 878 n.1 (1994). As noted in defendants' original memorandum, the Supreme Court

7

has expressly recognized that the lapsing of a restrictive covenant renders injunctive relief under that covenant moot. [*See* Def.s' J. Mem. at p. 8 (citing *Van Dyck*).] When even a potential conflict exists between Connecticut Supreme Court authority and lower court authority, a federal court should not attempt to reconcile the two, but rather follow the decision of the Supreme Court. *See Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002) (federal court need not attempt to harmonize lower court cases with the Connecticut Supreme Court's controlling decision; federal court must defer to the Connecticut Supreme Court because it is the final arbiter on state law). Therefore, even if *Eastcoast Guitar* or *KX Industries* supported Tom James' position, this Court should instead follow *Van Dyck* and find Tom James' claim for injunctive relief moot.

III.    **THE "EXPRESS LANGUAGE" DOES NOT SUPPORT TOM JAMES**

Tom James argues that the "express language" of the contract supports extending injunctive relief beyond two years. This argument is faulty for several reasons. First, it is irrational to argue that the "express language" of the restrictive covenant permits the court to extend injunctive relief beyond the period expressly provided by the restrictive covenant. The fact is that the restrictive covenant "expressly" provides injunctive relief for only two years.

Tom James relies, however, on the provision of the agreement which reads: "[Tom James], in addition to all other remedies as provided by law, shall be entitled as a matter of right to injunctive relief in any court of competent jurisdiction." [Pl.'s

8

Opp. at p. 11.]  Obviously, the parties intended that this provision would be used to enforce the provided restriction, i.e., two years.  Although Tom James was certainly able to request injunctive relief during the two-year period directly subsequent to Green's employment, Tom James barely made it to court within that time frame. Tom James waited approximately 18 months after Green began his employment with Trace to seek injunctive relief prohibiting such employment, despite Tom James' claim that Green began competing "almost immediately."   After that extended delay, Tom James now wants substantial damages for that two-year period as well as injunctive relief for two <u>different</u> periods.  In other words, Tom James seeks to multiply the relief available by law and get more than twice what it bargained for.  As already noted, there is no support in Connecticut law for such multiple relief in a contract action. *Gazo,* 255 Conn. at 264-65.

## IV.    TOM JAMES' CUTPA CLAIM DOES NOT SUPPORT THE REQUESTED INJUNCTIVE RELIEF

Tom James attempts to avoid Connecticut Supreme Court authority by arguing, in the alternative, that CUTPA provides authority for extending the restrictive covenant.  [*See* Pl.'s Mem. at pp. 12-13.]  This argument must fail. Without addressing the applicability of CUTPA to Tom James' other claims for relief, it clearly does not apply to the relief being challenged in defendants' motion for judgment on the pleadings.  That relief obviously derives from the alleged breach of the Restrictive Covenant [*see* Memo. Supp. Mot. J. at pp. 7-9], which cannot

9

constitute a violation of CUTPA. *See*, *Gardocki v. Goldring Home Inspections, Inc.*, No. 315035, 5 Conn. L. Rptr. 126, 1991 WL 213769, *4 (Conn. Super. Oct. 11, 1991) (holding that CUTPA claim was not supported because, although defendant showed breach of restrictive covenant in employment agreement, breach of contract does not necessarily constitute violation of CUTPA); *Beekley Corp. v. Doyle*, No. CV-95-0466681-S, 1996 WL 57062, *5-6 (Conn. Super. Jan. 17, 1996) (violation of restrictive covenant cannot constitute violation of CUTPA unless plaintiff "demonstrate[s] aggravating circumstances or fraudulent conduct"); *see also United Components v. Wdowiak*, 239 Conn. 259, 264-65 (1996) (later confirming what *Gardocki* assumed – that CUTPA is inapplicable to employer-employee relationship); *City of Bridgeport v. Aerialscope, Inc.*, 122 F. Supp. 2d 275, 278 (D. Conn. 2000) (general rule is that "a breach of contract action does not constitute a claim under CUTPA"). Moreover, as noted, defendants' Motion for Judgment on the Pleadings does not address any claim for relief based on anything other than the Restrictive Covenant. Although Tom James' claims for relief are not itemized, the breach of the Restrictive Covenant is alleged in Count Two only. Defendants' motion is addressed to claims for injunctive relief arising out of that count only.

## V.    CONCLUSION

For the reasons set forth herein, and for the reasons set forth in defendants' original memorandum, the motion for judgment on the pleadings should be granted.

10

THE DEFENDANTS
J. TRACY GREEN
TRACE APPAREL, LLC

By: _____

Thomas A. Rouse, Fed. Bar No. ct06128
Peter S. Olson, Fed. Bar No. 16149
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
203.330.2000
Facsimile 203.576.8888
Their Attorneys

## CERTIFICATION

Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on March 18, 2004 to all counsel and pro se parties of record.

For the plaintiff TOM JAMES COMPANY:

>Thomas J. Finn
>Paula Cruz Cedillo
>Halloran & Sage LLP
>One Goodwin Square
>225 Asylum Street
>Hartford, Connecticut 06103
>860.522.6103
>Facsimile 860.548.0006

Thomas A. Rouse, Fed. Bar No. ct01326
Peter S. Olson, Fed. Bar No. ct16149

BPRT/67708.2/PSO/510770v1

12

Not Reported in A.2d
5 Conn. L. Rptr. 126
(Cite as: 1991 WL 213769 (Conn.Super.))

Page 1

**C**
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of
New Haven.

Michael GARDOCKI,
v.
GOLDRING HOME INSPECTIONS, INC.

No. 315035.

Oct. 11, 1991.

*MEMORANDUM OF DECISION*

HODGSON, Judge.

*1 The plaintiff, Michael Gardocki, ("employee")
has brought this action seeking declaratory and
injunctive relief from the terms of a restrictive
covenant contained in his written employment
agreement with his former employer, defendant
Goldring Home Inspections, Inc. ("employer").

The employer has counterclaimed seeking an
injunction against violation of the restrictive
covenant and money damages for claimed
misappropriation of its trade secrets in violation of
the Uniform Trade Secrets Act and for violation of
the Connecticut Unfair Trade Practices Act
("CUTPA").

The plaintiff's claim for preliminary injunctive
relief came before the court on the special
proceedings calendar, and the parties agreed to
close the pleadings and to try the merits of all of the
pending claims, for permanent as well as for
preliminary remedies. At the conclusion of the
trial, the defendant orally withdrew Count Four of
the counterclaim, which asserted a common law
cause of action for misappropriation of trade secrets.

The restrictive covenant at issue states as follows:

a. *Restrictive Covenant*

For a period of two (2) years after termination or

expiration of this Agreement, Employee shall not in
any of the areas of Connecticut highlighted in
yellow on the map attached hereto and marked
Exhibit A, or in the areas of Bedford, Lewisboro,
Mount Vernon, North Salem, Pawling, Pelham,
Pleasantville, Portchester, or Pound Ridge, New
York, directly or indirectly own, manage, operate,
contract, be employed by, participate in or be
connected in any manner with the ownership,
management, operation or control of any business
similar to the type of business conducted by the
employer at the time of the termination of this
agreement. In the event of the Employee's actual
or threatened breach of the provisions of this
paragraph, Employer shall be entitled to an
injunction restraining the Employee therefrom.
Nothing shall be construed as prohibiting Employer
from pursuing any other available remedies for such
breach or threatened breach, including the recovery
of damages from Employee.

The "restricted" areas are highlighted in yellow on
Exhibit A to the employment agreement. These
areas include all the towns in Fairfield County
except Sherman, all but one town in Middlesex
County, and all the cities and towns in New Haven
County except Bethany, North Branford, Prospect
and Wolcott. The covenant also identifies the City
of Hartford and the town of Simsbury as restricted
areas. Most of the cities and towns in Middlesex,
New London, Hartford, Tolland and Windham
Counties are not restricted.

The plaintiff began work with the employer in
April 1984 and resigned on April 13, 1990. He
resides in West Haven, and he wishes to operate or
be employed by a home inspection company in the
area near his residence. The employer's offices are
located in Trumbull.

The plaintiff claims that the restrictive covenant
should be declared invalid and that injunctive relief
should enter prohibiting its enforcement because it
is unreasonable as to the geographical area affected
and because it therefore impermissibly limits his
ability to pursue his occupation and interferes with
the public interest in competitive trade.

*2 The Connecticut Supreme Court has provided
the applicable standards for assessing the
enforceability of such an agreement in *Scott v.
General Iron and Welding Co.,* 171 Conn. 132 at

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
5 Conn. L. Rptr. 126
(Cite as: 1991 WL 213769 (Conn.Super.))

137 (1976):

In order to be valid and binding, a covenant which restricts the activities of an employee following the termination of his employment must be partial and restricted in its operation "in respect either to time or place, ... and must be reasonable--that is, it should afford only a fair protection to the interest of the party in whose favor it is made and must not be so large in its operation as to interfere with the interests of the public. *Cook v. Johnson,* 47 Conn. 175, 186; *May v. Young,* 125 Conn. 1, 5, 2 A.2d 385; *Samuel Stores, Inc. v. Abrams,* 94 Conn. 248, 253, 108 A. 541, 9 A.L.R. 1450." *Torrington Creamery, Inc. v. Davenport,* 126 Conn. 515, 519-20, 12 A.2d 780; see *Oregon Steam Navigation Co. v. Winsor,* 87 U.S. (20 Wall) 64, 66-67. The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family. See *May v. Young,* supra.

In a subsequent ruling on the subject, *Robert Weiss & Associates, Inc. v. Wiederlight,* 208 Conn. 525 (1988), the Connecticut Supreme Court suggested that time and geographical restrictions are to be reviewed as intertwined considerations in determining the reasonableness of the limitation of an employee's post-termination activities. In *Weiss, supra,* at 531-2, the Court noted that it had approved limitations of various durations and areas, suggesting, most logically, that the reasonableness of time and area restrictions is interrelated, such that a restriction covering a large area might be reasonable if in effect for a brief time, while a restriction covering a small area might be reasonable for a longer time.

The court in *Weiss,* at 531-532, however, also indicated that the reasonableness of a restrictive covenant must be assessed in light of the scope of the employer's business: that is, whether the geographical area specified in the limitation reasonably relates to the protection of the area in which the employer actually does business. Unless there is a close connection between the geographical area defined and the scope of the employer's business, such covenants unfairly restrict employees and serve the improper purpose of binding an employee to a particular employer

because of broad restrictions on his ability to pursue his occupation without moving his residence.

The employee claims that the geographical area subject to the restrictive covenant is unreasonable because it would preclude him from performing home inspections in areas in which the employer does little or no business, notably, the listed towns in New York State. A compilation of the number of home inspections performed by the employer in each of the restricted towns since 1984 (Ex. M) reveals that the employer has not succeeded in obtaining work inspecting property in any of the listed New York towns since 1989, and that between 1985 and 1988 it performed only five home inspections in these towns.

*3 The plaintiff did not prove, however, that the employer had ceased making efforts to secure work in the listed New York towns or that it had, in effect, abandoned that area as a market for its services. He conceded that during the course of his employment with the defendant he had frequently travelled as much as one hundred miles a day in order to perform inspections, and the listed towns therefore appear to be within a reasonable radius of the Employer's business location.

The area covered by a restrictive covenant is not rendered unreasonable merely because the employer has not actually secured customers in each and every town subject to the restriction. In *Scott, supra,* the Supreme Court upheld a finding of reasonableness as to a statewide restriction where the employer did business in only twenty-five to seventy-five of the 169 Connecticut cities and towns.

John and Carol Ghent, who own and manage the defendant corporation, credibly testified that the defendant expended funds over a period of years to promote the firm's presence in areas listed as restricted in the plaintiff's employment agreement. As drafted, the restriction leaves large areas of Connecticut, including areas within twenty miles of the plaintiff's home, in which the plaintiff is free to perform home inspections.

The covenant is reasonable as to time. It covers two years, a duration explicitly found to have been reasonable as to a wider geographical area in *Weiss, supra,* at 531. Since the plaintiff left the defendant's employ in April 1990, the restriction

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
5 Conn. L. Rptr. 126
(Cite as: 1991 WL 213769 (Conn.Super.))

expires by its terms in April 1992.

The court concludes that under all the circumstances shown, the employee has not established that the restrictive covenant is unreasonable as to duration or geographical area or that it is not reasonably necessary to protect the interests of an employer which in fact taught him the business of home inspection. The plaintiff's requests for declaratory and injunctive relief are therefore denied.

As to the defendant's counterclaim, the court finds that the employer has demonstrated that on three occasions the plaintiff has violated the terms of the restrictive covenant and has undertaken to perform home inspections in towns covered by the restrictive covenant. The employer has further established that when the plaintiff left its employ, he knowingly joined a firm engaged in the business of performing home inspections in the restricted area. That firm went out of business shortly after the plaintiff joined it.

The court has found the restrictive covenant is valid and binding and the plaintiff has admitted violating it.

While the defendant could maintain a claim for damages as to each violation that causes it injury, the difficulty of proof and the inefficiency of repetitive suits render inadequate the use of successive remedies at law, and injunctive relief is therefore warranted to protect the defendant from harm which the restrictive covenant was intended to prevent. *Berin v. Olson,* 183 Conn. 337, 342-3 (1981).

*4 The employer also seeks money damages as to the home inspections performed in violation of the restrictive covenant. One of those inspections was performed on behalf of the plaintiff's accountant in return for services rendered. A second was performed for a member of law firm that represents the plaintiff. Given the personal nature of the connection of the plaintiff with the source of the work, the court is unable to conclude that any of the three inspections would have furnished business for the defendant but for the plaintiff's breach of his agreement. Accordingly, the employer has not established entitlement to money damages in addition to injunctive relief as to the breach of the

employment agreement.

The defendant has likewise not proved its claims of violations of CUTPA or of Uniform Trade Secrets Act. The defendant has not identified any information constituting a trade secret within the definition of the latter statute, § 35-51(d) C.G.S. The evidence indicated that the defendant derives its potential customers from the telephone directory, and, like other home inspection companies, solicits business from lawyers and realtors. While the plaintiff retained logs that show the names of past customers of the defendant, there was no proof that any of these customers were exclusive customers of the defendant or that there was any information in the logs or other material retained by the plaintiff that would give him or the defendant any advantage over other home inspectors soliciting further business from realtors and attorneys. The potential need of past customers of the defendant for home inspection service in the future was not a trade secret of the defendant but was a fact easily ascertainable by inquiry using public documents such as the telephone directory.

The CUTPA claim is likewise not supported by the evidence. While the defendant has proved that the plaintiff **breached** the **restrictive covenant** in his employment agreement, a **breach** of a contract does not necessarily constitute a violation of **CUTPA.**

Section 42-110b C.G.S. defines unfair trade practices as "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce", and counsels adherence to the interpretations of the Federal Trade Commission and the federal courts of § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)) in determining whether conduct constitutes an unfair trade practice. CUTPA conditions recovery of statutory remedies on a showing that the claimant has suffered an "ascertainable loss ... as a result of the use or employment of a method, act or practice prohibited by Section 42-110b ... "It is well settled that in determining whether a practice or act violates CUTPA, the following criteria are to be applied:

(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
5 Conn. L. Rptr. 126
(Cite as: 1991 WL 213769 (Conn.Super.))

Page 4

words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness,

*5 (2) whether it is immoral, unethical, oppressive or unscrupulous,

(3) whether it causes substantial injury to consumers.

*Web Press Services Corporation v. New London Motors, Inc.,* 203 Conn. 342, 355, 525 A.2d 57 (1987); *Conaway v. Prestia,* 191 Conn. 484, 492-3, 464 A.2d 847 (1983). In *Web Press, supra,* the Connecticut Supreme Court has summarized the criteria for finding a CUTPA violation as follows: "[t]hus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., *Spray Foam, Inc. v. Durant's Rental Centers, Inc.,* 39 Conn.Sup. 78, 468 A.2d 951 (1983), or a practice amounting to a violation of public policy. See, *e.g., Sportsmen's Boating Corporation v. Hensley,* 192 Conn. 747, 756, 474 A.2d 780 (1984)."

The employer claims that the following conduct by the plaintiff constituted unfair trade practices:

1) he went to a job interview during his work day,

2) when he resigned, in order to secure a favorable recommendation he told the Ghents that the firm he was joining was in the environmental inspection business and that he would not be doing house inspections of the sort the defendant performed.

3) he left the defendant's employ and within two weeks breached the restrictive covenant.

A federal judge interpreting CUTPA has ruled that the statute does not create a cause of action to redress misconduct in the employer--employee relationship. *Bannerjee v. Roberts,* 641 F.Supp. 1093 (D.Conn.1986). Counsel have not cited and the court has not located any Connecticut appellate precedent interpreting the conduct of an employee toward his employer as a "trade practice" within the scope of CUTPA. *In Delre Associates v. Thomas Adkins,* 2 C.S.CR. 1093, 1095 (1987) Judge Robert Burns denied a motion to strike a CUTPA count against employees, however the allegations of the complaint were that the employees had actually

started their own firm during their employment by the plaintiff (and were thus acting as a business entity) and had disparaged the plaintiff, misled its customers, and lured customers away through misrepresentations. By contrast, the conduct at issue in the case at bar was the conduct of an employee seeking new employment. There is no allegation that he had set himself up in trade and commerce in the home inspection business during his employment with the plaintiff but only that he sought to join another employer and use the same skills which he had been using in the plaintiff's employ. It does not seem appropriate to characterize the conduct of an employee in such circumstances as a "trade practice", nor to engraft on to an employment agreement the remedies of CUTPA as remedies for a breach of that agreement.

The court finds that the conduct complained of does not constitute a CUTPA violation.

Judgment shall enter in favor of the defendant as to the plaintiff's claims. As to the counterclaim, the plaintiff is hereby permanently enjoined from directly or indirectly owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by the defendant until April 14, 1992. Judgment shall enter in favor of Gardocki as to all remaining counts of the counterclaim. The defendant shall recover its court costs.

1991 WL 213769 (Conn.Super.), 5 Conn. L. Rptr. 126

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 57062 (Conn.Super.))

**c**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

BEEKLEY CORPORATION,
v.
Barbara DOYLE & Brian Doyle.

**No. CV 950466681S.**

Jan. 17, 1996.

HANDY.

I.    FACTUAL    AND    PROCEDURAL
BACKGROUND

**\*1** Beekley Corporation, the plaintiff, filed the
current action in five counts against Barbara Doyle
and Brian Doyle, the defendants. The November 1,
1995 amended complaint alleged: 1) breach of the
employment agreement; 2) misappropriation of
Beekley trade secrets; 3) tortious interference with
contractual relationships; 4) unjust enrichment;
and 5) CUTPA. The suit arose out of alleged
actions of the defendant while an employee of the
plaintiff and subsequent to her leaving plaintiff's
employ. The plaintiff alleges the defendant
Barbara Doyle, in conjunction with her husband,
defendant Brian Doyle, illegally solicited Beekley
customers from a proprietary customer list,
marketed competitive radiopaque markers, and
disparaged Beekley to Beekley customers. Lastly,
the plaintiff alleges that Brian Doyle used
proprietary Beekley products in developing the
Doyles' own products for a company they were
creating called Doyle Radiology Products &
Educational Services, LLC.

The plaintiff filed a Motion for a Temporary
Injunction against the Doyles, dated March 24,
1995. The motion was granted by the court
(Handy, J.) on April 10, 1995, effective through
September 30, 1995. In the order, however, the

court stated "The court finds no grounds to support
the plaintiff's application on the basis that the
defendants violated Section 35-52 of the
Connecticut General Statutes." On September 27,
1995, the plaintiff filed for an extension of the
temporary injunction, which was denied on October
4, 1995. The defendants filed a Motion for
Summary Judgment and memorandum of law, on
September 27, 1995 and a Supplemental Motion for
Summary Judgment with accompanying
memorandum of law, on November 17, 1995, No.
123. The plaintiff filed an objection to the
defendants' Motions for Summary Judgment with
accompanying memorandum of law, on December
4, 1995. The court heard oral argument on
December 4, 1995.

II. DISCUSSION

"Summary judgment shall be rendered forthwith if
the pleadings, affidavits and any other proof
submitted show that there is no genuine issue as to
any material fact and that the moving party is
entitled to judgment as a matter of law." *Miller v.
United Technologies Corp.,* 233 Conn. 732, 745,
660 A.2d 810 (1995). "A material fact has been
defined adequately and simply as a fact which will
make a difference in the result of the case."
(Internal quotation marks omitted.) *Catz v.
Rubenstein,* 201 Conn. 39, 48, 513 A.2d 661.
"The party moving for summary judgment has the
burden of showing the absence of any genuine
issues as to all the material facts, which under
applicable principles of substantive law, entitle him
to judgment as a matter of law. To satisfy his
burden the movant must make a showing that it is
quite clear what the truth is, and that excludes any
real doubt as to the existence of any genuine issue
of material fact." *Suarez v. Dickmont Plastics
Corp.,* 229 Conn. 99, 105, 639 A.2d 507 (1994);
*Miller v. United Technologies Corp., supra* 233
Conn. 744.

**\*2** The defendants move for summary judgment on
counts 2, 3, 4 and 5 as to the plaintiff. They further
seek to dismiss the entire complaint as to the
defendant, Brian Doyle. Each matter will be
addressed in order below.

1) Breach of the Employment Agreement

The plaintiff has provided evidence of a contract
entered into between itself and the defendant,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 57062 (Conn.Super.))

Barbara Doyle. The plaintiff has further provided the court with evidence that the contract contained a non-competition clause, restricting the defendant's post-employment activities and evidence that the defendant solicited Beekley customers after leaving plaintiff's employ. Lastly, the court has previously ruled that the non-competition clause was enforceable, in its ruling on the injunction. The defendant, on the other hand, alleges that she was unaware of the non-competition clause in her employment contract. However, she does not dispute that she signed the contract with the restrictive clause.

Neither party disputes that the defendants were attempting to compete with the plaintiff. Thus, a genuine issue of material fact exists whether the defendants' competition violated the terms of the non-competition contract clause. Thus, summary judgment would be inappropriate as to the defendant, Barbara Doyle. However, no question of material fact exists as to Brian Doyle. There is no evidence of a contractual agreement between Brian Doyle and the plaintiff. The motion for summary judgement on Count One is granted as to Brian Doyle.

2) Misappropriation of Beekley Trade Secrets

Connecticut General Statutes ù35-51 defines trade secret as:

(d) Notwithstanding the provisions of sections 1-19, 31-40j to 31-40p, inclusive, and subsection (b) of section 12-62, "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The concept of a trade secret was expressed in *Allen Mfg. Co. v. Loika,* 145 Conn. 509, 516, 144 A.2d 306 (1958), where the court adopted the definition of a trade secret from the Restatement, 4 Torts 757; *New England Ins. v. Miller,* Superior Court, Judicial District of New Haven, Docket No. 285030 (April 16, 1991) (Healey, STR).

In *New England Ins., supra,* the court held that the plaintiff's monthly production statements did not constitute a customer list and thus was not protected as a trade secret. *Id.* The court stated "[T]he plaintiff has not demonstrated that it invested the time, effort and expenses in compiling the alleged customer lists that the cases indicate is necessary to factor into the conclusion they constitute a trade secret." *Id.*

*3 In the present case, the defendants allege that they obtained all of the names of the hospitals solicited from the American Hospital Association (AHA) Guide. The plaintiff has failed to demonstrate that the names came from any proprietary source, i.e. a Beekley customer list. Even though the defendants admit soliciting former customers of the plaintiff, all of the hospitals solicited appeared in the AHA Guide. The plaintiff has failed to present evidence that the names used by the defendants were not obtainable through ordinary business channels. "[W]here the identity of the customers is readily ascertainable through ordinary business channels or through classified business or trade directories, the courts refuse to accord the list the protection of a trade secret." *Town & County House & Home Service, Inc. v. Evans,* 150 Conn. 314, 320, 189 A.2d 390 (1963). Therefore, this court refuses to conclude that the defendants' solicitation of hospitals through the AHA Guide was the misappropriation of a trade secret.

Additionally, the plaintiff failed to demonstrate how it derived independent economic value, actual or potential, from the customer list not being generally or readily ascertainable. Further, the plaintiff's customers' names which were obtainable from the AHA Guide should not be protected as a trade secret. Since, the court has concluded that the defendants obtained the names from the AHA Guide, there is no genuine question of material fact as to whether the customer list constituted a trade secret. The defendants' Motion for Summary Judgment is granted as to any misappropriation of a customer list.

The radiopaque skin markers, the free edge skin markers, and other Beekley literature do not constitute trade secrets as defined, *supra.* The defendants have sustained their burden of demonstrating that the radiopaque technology and other Beekley literature and products were

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 57062 (Conn.Super.))

obtainable through ordinary business channels common in this field and in the public domain. "[M]atters which are generally or commonly known to the trade in which the putative trade secret owner is engaged cannot be viewed as trade secrets, ... a matter cannot be viewed as a trade secret 'if it is well-known or readily ascertainable.' 1 Milgrim on Trade Secrets, 2.07[1]." *New England Ins. v. Miller, supra.*

The plaintiff has failed to demonstrate just what the defendants misappropriated or what proprietary information was misappropriated by the defendants in the development of their product line of radiopaque skin markers and free edge skin markers. No question of material fact exists as to whether the defendants misappropriated radiopaque technology or free edge skin marker technology. Thus, the defendants' Motion for Summary Judgment is granted as to the misappropriation of radiopaque technology or free edge skin marker technology.

The court affirms its prior decision rendered at the hearing for the injunction, when the court stated: "The court finds no grounds to support the plaintiff's application on the basis that the defendants violated Section 35-52 of the Connecticut General Statutes." "Where a matter has already been ... heard and ruled on pursuant to a motion to suppress [in this case an injunction], the court on the subsequent trial, ... may, ... properly treat it as the law of the case, in the absence of some new or overriding circumstance." *State v. Hoffler,* 174 Conn. 452, 462-63, 389 A.2d 1257 (1978). Since the defendants have shown that no question of a material fact exists, the defendants' Motion for Summary Judgment is granted as to Count Two.

3) Tortious Interference with Contractual Relationships

*4 "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." *Beizer v. Goepfert,* 28 Conn.App. 693, 701, 613 A.2d 1336, same case 224 Conn. 901 (1992), cert. denied 113 S.Ct. 1416, 122 L.Ed.2d 786; *Solomon v. Aberman,* 196 Conn. 359, 364, 491 A.2d 193 (1985).

The plaintiff has failed to present to the court

evidence of actual losses which is an essential element of tortious interference with contractual relationships. Although the plaintiff has alleged losses, the defendants have provided counter-evidence that the plaintiff has experienced product growth in sales of radiopaque markers and other products, the subjects involved in this suit, during the entire period. Further, the defendants have provided the court with interrogatory responses of the plaintiff where the plaintiff was requested to specify the actual harm suffered and the plaintiff failed to so specify.

The plaintiff's allegation that the defendants made disparaging remarks to plaintiff's customers, which harmed the plaintiff's goodwill and sales, is insufficient proof of actual harm. "The law with regard to summary judgment can be clearly stated ... To create an issue of material fact, it is not sufficient that a party state legal conclusions or to state simply that a material issue of fact does exist." *United Oil Company, Inc. v. Urban Redevelopment Company,* 158 Conn. 364, 260 A.2d 596 (1969). *United Oil* made it clear that "some evidence is required in the counteraffidavits which shows the existence of such material facts either directly or in such a way that they may be 'warrantably' inferred." *Connecticut Bank & Trust v. Trolley Barn Corp.,* Superior Court, Judicial District of New London at New London, Docket No. 509221, 3 CONN. L. RPTR. 588 (January 4, 1991) (Leuba, J.). The failure to demonstrate actual damages is fatal. Since the plaintiff has failed to present evidence on every essential element of the cause of action, no question of material fact exists. The court grants the defendants' Motion for Summary Judgment as to count Three.

4) Unjust Enrichment

In order to recover under unjust enrichment, the plaintiff must prove: "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Polverari v. Peatt,* 29 Conn.App. 191, 200-01, 614 A.2d 484, cert. denied 224 Conn. 913, 617 A.2d 166 (1992); *CBS Surgical Group, Inc. v. Holt,* 37 Conn.Sup. 555, 558, 426 A.2d 819 (1981).

This count fails for the same reason the previous count failed. The plaintiff has failed to present to the court evidence of actual damages, i.e. that the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1996 WL 57062 (Conn.Super.))

defendants' action caused detriment to the plaintiff. Thus, no question of material fact exists, and the court grants the defendants' Motion for Summary Judgment as to count four.

5) CUTPA

*5 The Connecticut Unfair Trade Practices Act, General Statutes ù42- 110b(a), provides in relevant part: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

"[A] violation of CUTPA may be established by showing either an actual deceptive practice ... or a practice amounting to a violation of public policy." (Citation omitted.). *Web Press Services Corporation v. New London Motors, Inc.,* 203 Conn. 342, 355, 525 A.2d 57 (1987). "In determining when a practice is unfair, we have adopted the criteria set out in the 'cigarette rule' by the federal trade commission ... (1)[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwiseõwhether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ] ..." (Citations omitted, internal quotation marks omitted.) *A-G Foods, Inc. v. Pepperidge Farm, Inc.,* 216 Conn. 200, 215, 579 A.2d 69 (1990).

The plaintiff alleges that the defendants' conduct in obtaining Beekley products and trade secrets from Beekley customers for the purpose of copying and studying them in order to develop their own similar products for sale in competition constitutes unfair competition. The plaintiff further alleges that the aforementioned conduct, which violated an express covenant not to compete with Beekley, also constitutes an unfair trade practice. The defendants allege that their actions are not unfair. The Beekley products obtained were not trade secrets and the violation of the non-competition clause, which is a breach of contract, does not constitute a violation of CUTPA. The defendants argue in their memorandum that because the plaintiff's CUTPA claim is founded upon a breach of contract claim, it is legally insufficient.

"The same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation." *Lester v. Resort Camplands International, Inc.,* 27 Conn.App. 59, 71, 605 A.2d 550 (1992). However, when the court has permitted a CUTPA cause of action based on a breach of contract, there was generally some type of fraudulent behavior accompanying the breach or aggravating circumstances. *CNF Construc* tors, *Inc. v. Culligan Water Conditioning Co.,* 8 CSCR 1057, 1058 (September 9, 1993) (Blue, J.). In *CNF Constructors* the plaintiff was permitted to pursue a CUTPA cause of action based on breach of contract, however Judge Blue stated that the plaintiff in *CNF Constructors* had pled "more than a simple breach of contract" by alleging a number of misrepresentations. *Id.,* at 1058.

A majority of cases support the claim that "[a] simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances to recover under the Act." *Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc.,* 41 Conn.Sup. 575, 580, 595 A.2d 951, 3 CONN. L. RPTR. 711 (January 23, 1991) (Blue, J.).

*6 Applying the foregoing to the present motion for summary judgment, the plaintiff has failed to demonstrate aggravating circumstances or fraudulent conduct by the defendants. The court has previously determined in this decision that the plaintiff has failed to prove the existence of a material fact regarding the misappropriation of trade secrets, tortious interference or unjust enrichment. Thus, the only surviving count of plaintiff's complaint is the breach of contract as to the defendant Barbara Doyle. There are insufficient facts to support the CUTPA cause of action in this case.

Accordingly, the court grants the defendants' Motion for Summary Judgment as to count five.

III. CONCLUSION

No genuine question of material fact exists as to Counts Two, Three, Four, Five and part of Count One as it relates to the defendant Brian Doyle. Accordingly, the defendants' Motion for Summary Judgment is granted as to those counts. Further, since all counts involving Brian Doyle have been dismissed, the court dismisses Brian Doyle as a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 1996 WL 57062 (Conn.Super.))**

defendant in this action.

1996 WL 57062 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works