IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------x
                                            :
TOM JAMES CO.                               :    3:03 CV 596 (JBA)
                                            :
                                            :
v.                                          :
                                            :
                                            :
J. TRACY GREEN and                          :    DATE: MARCH 23, 2004
TRACE APPAREL LLC                           :
-----------------------------------------------------------x
```

RULING ON DEFENDANTS' MOTION TO COMPEL

The factual and procedural history of this litigation is set forth in this U.S. Magistrate Judge's Ruling on Plaintiff's Motion to Compel Electronic Discovery, dated February 24, 2004, familiarity with which is presumed.  (Dkt. #76).   On January 8, 2004, United States District Judge Janet Bond Arterton referred this case to this Magistrate Judge for discovery purposes.  (Dkt. #48).

On February 2, 2004, defendants filed the pending Motion to Compel, brief and affidavit[1] in support (Dkts. ##61-62 & 68) as to which plaintiff filed its brief[2] and affidavit in opposition on March 4, 2004. (Dkts. ##83 & 85).  On March 18, 2004, defendants filed their reply.  (Dkt. #92).

_____For the reasons set forth below, defendants' Motion to Compel (Dkt. #61) is <u>granted</u>

---

[1]Attached are the following seven exhibits: copy of Requests for Production to Tom James Company, dated October 22, 2003 (Exh. A); copy of Interrogatories Directed to Tom James Company, also dated October 22, 2003 (Exh. B); copy of Objection and Response to Defendants' Interrogatories Directed to Tom James Company, dated November 24, 2003 (Exh. C); copy of Objection and Responses to Defendants' Requests for Production Directed to Tom James Company, also dated November 24, 2003 (Exh. D); copies of correspondence between counsel, dated December 22, 2003, January 19, and January 24, 2004 (Exhs. E-G).

[2]Attached are the following five exhibits: another copy of correspondence, dated December 22, 2003 (Exh. A); copies of case law (Exhs. B-C & E); and another copy of correspondence, dated January 27, 2004 (Exh. D).

in part and denied in part.

## I. FACTUAL BACKGROUND

On October 22, 2003, defendants served twenty-eight Requests for Production and twenty-four Interrogatories upon plaintiff. (Dkt. #68, Exhs. A-B). According to defendants, on November 24, 2003, plaintiff "provided incomplete responses" (Dkt. #68, Exhs. C-D) and after "several written and oral discussions" (Dkt. #68, Exhs. E-G; Dkt. #83, Exhs. A & D), including plaintiff's compliance with several outstanding Requests, plaintiff continues to "refuse[] to comply" with Interrogatories Nos. 2-7, and Requests for Production Nos. 5, 14, 18, 22 and 23. (Dkt. # 62, at 3). Plaintiff counters that its objections to Interrogatories Nos. 2-7 and Requests for Production Nos. 14, 22 and 23 are valid.[3] (Dkt. #83, at 4).

## II. DISCUSSION

Under the Federal Rules of Civil Procedure, the scope of discovery extends to "any matter, not privileged, that is relevant to the claim or defense of any party. . . . " FED. R. CIV. P. 26(b)(1). Thus, the party receiving a request must not only produce information which is admissible as evidence, but also information which "appears reasonably calculated to lead to the discovery of admissible evidence." Martin v. Valley National Bank of Arizona, 140 F.R.D. 291, 300 (S.D.N.Y. 1991)(citations omitted). "Reasonably calculated" in Rule 26 means "any possibility that the information sought may be relevant to the subject matter of the action." Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 122 F.R.D. 447, 449

---

[3]According to plaintiff, defendants' Motion to Compel is moot as to Requests Nos. 5 & 18, as plaintiff has agreed to provide relevant information responsive to these Requests. (Dkt. #83, at 4 n.1). Plaintiff avers that although plaintiff "initially objected" to Request for Production No. 5 because plaintiff thought that the requested information had previously been produced, plaintiff has since agreed to confirm that the documents had been produced. (Dkt. #85, ¶ 5). Additionally, according to plaintiff, defense counsel agreed to limit Request for Production No. 18. (Id.).

Defendants counter that although plaintiff's statements are "accurate, to date, [plaintiff] has not actually produced the requested documents." (Dkt. #92, at 1). Accordingly, plaintiff shall produce such documents it has already agreed to produce **on or before March 30, 2004**.

(S.D.N.Y. 1988)(citations & internal quotation marks omitted).  Discovery, however, is not without limitations and this Court has a duty to ensure that discovery requests are reasonable. FED. R. CIV. P. 26(b)(2);  In re: Sur. Ass'n of Am., 388 F.2d 412, 414-15 (2d Cir. 1967).

Defendants contend that the discovery they seek is relevant to the issues raised in this matter as the "real workhorse of the Complaint is [plaintiff's] claim that [defendant] Green breached a covenant not to compete contained in an employment agreement." (Dk. #62, at 5).  Defendants argue that Interrogatories Nos. 2-7 and Request for Production No. 14 seek information related to plaintiff's damage analysis (id. at 4-8), and the information concerning the qualifications and employment history of David Wykle sought in Requests for Production Nos. 22-23 is relevant to defendants' asserted affirmative defenses.  (Dkt. #62, at 9-10). Moreover, defendants assert that a reasonable protective order will protect any confidentiality issues related to these Requests.  (Dkt. #62, at 7 & 10).  Defendants also seek sanctions for plaintiff's "baseless and obstructionist approach to discovery." (Dkt. #62, at 10-11).

According to plaintiff, plaintiff should not be compelled to respond to Interrogatories Nos. 2-7 and Request for Production No. 14 because they are overly expansive, unnecessary, and improper (Dkt. #83, at 5-7); and plaintiff should not be compelled to respond to Requests for Production Nos. 22 and 23 as the interrogatories seek "private, personal, and confidential information" concerning Wykle, who is not a party to this action. (Dkt. #83, at 7-9).  Additionally, plaintiff counters that sanctions are not appropriate because its objections are justified.  (Id. at 9-10).

A. INTERROGATORIES NOS. 2 -7 & REQUEST FOR PRODUCTION NO. 14[4]

Interrogatories Nos. 2-7 seek information relating to each item that was part of plaintiff's product line during 2000 to the present, the list and sales prices of these items, the actual cost to plaintiff of each item including the factors used to calculate the actual cost of these items and the number of sales of each item during 2000-2003, and identification and production of the documents upon which plaintiff relied in preparing its responses. (Dkt. #62, at 4-5). Plaintiff objects on grounds that these discovery responses are "overly broad and unduly burdensome insofar as [they] seek[] each and every item that was part of [plaintiff's] product line and inasmuch as [d]efendants are already in possession of this information by virtue of [defendant] Green's employment with [plaintiff]." (Dkt. #68, Exh. C, at 4 & Exh. D, at 8).

Defendants contend that they need this information so that they can "compare the sales that [defendants] have made with the profit [plaintiff] would have made on such a sale, and thereby determine the damages that [plaintiff] claims to have suffered." (Dkt. #62, at 5). According to defendants, this information is necessary to measure the damages for breach of a covenant not to compete and specifically, what damages plaintiff "would be entitled to in connection with [a] sale." (Id. at 5-6). Moreover, defendants assert that plaintiff can only evade production of its pricing information if it abandons its claim for damages. (Dkt. #92, at 2-3).

Defendants "have recognized that [plaintiff] has a proprietary interest in this information and ha[ve] agreed that a protective order would be appropriate in order to protect the information." (Dkt. #62, at 6-7). Plaintiff counters, however, that it has "a legitimate

---

[4]The Court presumes defendants' reference to Interrogatory No. 14 (Dkt. #62, at 5) is in error; defendants seek response to Request for Production No. 14.

interest in protecting such proprietary information from disclosure to [d]efendants, especially in light of [d]efendants' past unlawful and unscrupulous business conduct." (Dkt. #83, at 6)(emphasis added).  Moreover, plaintiff contends that "[t]he prejudicial effect and potential detriment to [plaintiff] of producing this highly confidential information to [d]efendants, who are presently unlawfully and unfairly competing with [plaintiff] to its detriment, far outweigh any justification set forth by [d]efendants."  (Dkt. #83, at 7).

"The proper measure of damages for breach of a covenant not to compete is the nonbreaching party's losses rather than the breaching party's gains." Robert S. Weiss & Assoc., Inc. v. Wiederlight, 208 Conn. 525, 542 (1988)(multiple citations omitted).  The Court must reconcile the acknowledged difficultly in ascertaining damages in a case such as this with plaintiff's significant burden of demonstrating damages with reasonable certainty.  Id. at 542-43 (multiple citations omitted). See In re Isbell, 27 B.R. 926, 929-30 (Bankr. W.D. Wis. 1983); Vermont Elec. Supply Co. v. Andrus, 135 Vt. 190, 192 (1977).

According to plaintiff, plaintiff "has already offered to produce to [d]efendants profit and loss statements which evidence [plaintiff's] profit margins on items sold," which defendants rejected.  (Dkt. #83, at 6 & Exh. D; see also Dkt. #68, Exh. G).  "Lost profits are generally recognized as a proper element of recovery for breach of a covenant not to compete" and it is "proper to admit evidence that profits have fallen off, even [if] it could be attributed to another source, if it is emphasized that the trier of fact must be satisfied that the competition was the cause of the decline." In re Isbell, 27 B.R. at 930 (citation omitted); see Hyde v. C M Vending Co., Inc., 288 Ark. 218, 224-25 (1986)(calculation of damages by using gross profit).  However, in analyzing profit and loss statements for this purpose, it is essential that such statements are itemized so that actual damages may be ascertained with "a reasonable degree of certainty and exactness." See D.W. Trowbridge Ford, Inc. v. Galyen,

5

200 Neb. 103, 106-07 (1978).

Plaintiff's production of itemized profit and loss statements will provide defendants with the numbers necessary for defendants to calculate plaintiff's damage analysis as such statements will reveal plaintiff's losses.  Such production shall be made **on or before March 30, 2004**.

### B. REQUESTS FOR PRODUCTION NOS. 22 & 23

Defendants' Requests for Production Nos. 22 and 23 seek copies of all documents concerning income earned by David Wykle from 1999 to 2003, including tax reporting statements issued to him, documents concerning his unit production, documents concerning his team production, and documents concerning any loans made to him. (Dkt. #68, Exh. A, at 11).    Plaintiff objects on grounds that these requests are "overly broad, unduly burdensome, seek[] the production of confidential information" and "David Wykle is not a party to this action." (Dkt. #68, Exh. D, at 10).

In defendants' First, Second and Third Affirmative Defenses, defendants allege that plaintiff engaged in conduct that discriminated against defendant Green, created a hostile work environment, and breached the employment agreement it seeks to enforce. (Dkt. #62, at 9.  See also Dkt. #14, at 15-17; Dkt. #15, at 15-17).    According to defendants, the information sought in Request for Production Nos. 22 and 23 "will demonstrate that Mr. Wykle was not as qualified as [defendant] Green to hold [a management] position and, in fact, has not and had not performed as well as [defendant] Green[,]" thus supporting defendants' defense that plaintiff preemptively breached defendant Green's employment agreement, leaving him free to leave the company without any restrictions. (Dkt. #62, at 9-10).    Moreover, defendants contend that this information is "directly relevant to [their] defenses" and a protective order will adequately protect the confidentiality issues. (Id. at

6

10).

Plaintiff counters that defendants' "contention is unavailing and cannot properly support the production of the discovery sought as 'motive is irrelevant to a breach of contract claim.'" (Dkt. #83, at 8)(citation omitted). According to defendants, plaintiff's response "reflects a misunderstanding of [defendants'] defenses" as they allege that plaintiff "made employment decisions adverse to [defendant] Green because of his race." (Dkt. #92, at 6).

Plaintiff also contends that this information is not discoverable as CONN. GEN. STAT. § 31-128f prohibits an employer from disclosing information contained in an employee's personnel file to any person not affiliated with the employer without the employee's written authorization. (Dkt. #83, at 8-9). Defendants respond that because the requests "relate strictly to financial matters, they are excluded from protection by the terms of the statute" since CONN. GEN. STAT. § 31-128f permits disclosure of certain information, including wage or salary information, and this information may be readily available from sources other than the personnel file. (Dkt. #92, at 4-5). Moreover, although plaintiff is partly correct in its reliance on CONN. GEN. STAT. § 31-128f, disclosure may occur without an employee's consent when disclosure is made, inter alia, "pursuant to a lawfully issued . . . judicial order. . . ."

Defendants seek to show that Wykle was not qualified to assume defendant Green's position through examination of Wykle's compensation scheme which reflects how much plaintiff considered Wykle to be worth to the company and whether Wykle was in such a position so as to receive loans during the period of 1999 to 2003. Defendants contend that this information is relevant to their claim that plaintiff's "actions to promote and encourage a less qualified, but white, employee, while at the same time inhibiting [defendant] Green's career, may constitute" a course of alleged illegal conduct. (Dkt. #92, at 6. See also Dkt.

#15, at 15-17).

Documents concerning Wykle's unit production and documents concerning Wykle's team production are relevant to his qualifications as a manager and such request does not impede on personal and confidential information located in Wykle's personnel file. This information, coupled with the profit and loss statements for the requested time period, is relevant to defendants' claims relating to Wykle's performance in relation to the performance or lack thereof of defendant Green. (See Dkt. #62, at 9-10). To the extent the parties believe a protective order is necessary to protect this information, such order will be submitted to the Court by the parties **on or before March 30, 2004**. Plaintiff shall produce documents concerning Wykle's unit production, and documents concerning Wykle's team production **on or before April 2, 2004**.

However, defendants' requests for copies of tax reporting statements issued to Wykle and copies of documents concerning any loans made to him during the time period 1999 to 2003 (Dkt. #68, Exh. A, at 11), are overbroad in the absence of a showing of compelling need. In re Sunrise Sec. Litig., 130 F.R.D. 560, 578 (E.D. Pa. 1989)(citation omitted)(public policy favors nondisclosure of financial information, including tax returns as a party has a legitimate privacy interest in such documents); United States v. Bonanno Organized Crime Family, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)(citations omitted)(the "court must find that the [tax] returns are relevant to the subject matter of the action" and "that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.").

### III. CONCLUSION

For the reasons stated above, defendants' Motion to Compel (Dkt. #61) is granted in part as follows: plaintiff shall produce documents responsive to Requests Nos. 5 & 18 **on**

or before **March 30, 2004**; plaintiff shall produce itemized profit and loss statements to defendants **on or before March 30, 2004**; plaintiff shall produce documents concerning Wykle's unit production, and documents concerning Wykle's team production, as requested in Request No. 22 **on or before April 2, 2004**; to the extent the parties believe a protective order is necessary to protect this information relating to Wykle, such order will be submitted by the parties **on or before March 30, 2004**; and defendants' motion is denied in all other respects, including their request for sanctions.[5]

_____This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

_____See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 23rd day of March, 2004.


_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

_____

[5]The distrust and animosity between counsel here borders on shocking.  Such behavior is a disservice to the Court, to the attorneys themselves, and most importantly, to the clients they represent.  As officers of the Court, the attorneys here can, and should, do better in behaving like mature and responsible adults.