Exhibit "A"

**Westlaw.**

Not Reported in F.Supp.2d  
(Cite as: 2002 WL 32114492 (D.Conn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,  
D. Connecticut.

Carleen AHERN  
v.  
TRANS UNION LLC ZALE CORPORATION

No. 301CV02313 (DJS).

Filed Dec. 11, 2001.  
Oct. 23, 2002.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for Carleen Ahern, plaintiff.

Ira W. Bloom, Wake, See, Dimes & Bryniczka, Westport, CT, Bruce Luckman, Satzberg, Trichon, Kogan & Wertheimer, Philadelphia, PA, for Transunion LLC, defendant.

Miles David Newman Esty, Tara M. Barbara, Esty & Buckmir, New Haven, CT, for Zale Corp, defendant.

SQUATRITO, J.

*1 Defendant has not met its burden of showing that the Magistrate Judge's order was clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A). The specific aspects of the order to which defendant objects are well within the discretion afforded the Magistrate Judge.

Motion to set aside Magistrate's Discovery Ruling Denied.

*RULING ON CROSS-MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER*

SMITH, Magistrate J.

The plaintiff, Carleen Ahern, has brought this action against the defendant, Transunion, LLC (hereafter "Transunion"), alleging that Transunion violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*; the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42-110a *et. seq.*; the Consumer Credit Reports Act ("CCRA"), Conn. Gen.Stat. § 36a-695; and common law. The parties' cross-motions to compel are pending before the court. In addition, Transunion has moved the court to enter a protective order in this matter. For the reasons set forth below, the plaintiff's motion to compel (Dkt.# 33) is GRANTED in part and DENIED in part and Transunion's motion to compel (Dkt.# 28) and motion for protective order (Dkt.# 37) are DENIED.

*I. THE SCOPE OF PERMISSIBLE DISCOVERY*

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y.1988). A party may not object to a discovery request on the grounds that the information sought will be inadmissible at trial so long as the material requested could lead to other information that may be relevant to the subject matter of the action. See *id.*

A party may object to a request if it is "overly broad" or "unduly burdensome." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2174, at 297 (2d ed.1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984). Instead, the objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations and quotation marks omitted).

*2 The objecting party may not leave it to the court to "sift each interrogatory to determine the usefulness of the answer sought." *Id.* To the contrary, the claims in the complaint defines the liberal guidelines for

determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections. *Id.*

II. PLAINTIFF'S MOTION TO COMPEL [FN1]

> FN1. Plaintiff has not identified Interrogatory Nos. 11 & 13 in her Memorandum of Law in Support of her Motion to Compel pursuant to D. Conn. L. Civ. R. 9(d)(3). Accordingly, the Court denies plaintiff's motion as to these interrogatories.

A. Discovery Requests Not Objected to: Interrogatory No. 10

Plaintiff asserts that Transunion has failed to respond to Interrogatory No. 10. Transunion did not object to this interrogatory. In addition, Transunion has not sought an extension of time to produce its response. No objection having been made, see *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992); *Smith v. United States*, 193 F.2d 201, 207 n. 19 (D.Del.2000) (failure to object results in waiver of objection), and no argument having been offered in opposition to plaintiff's motion, see Rule 9(a)1 Local Rules of Civil Procedure ("[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion ...."), the motion to compel is granted as to this item.

B. Disputed Requests For Production

*1. Requests for Production Nos. 14, 15, & 22*

Although Transunion objected to these requests in its initial response, the production requests are not opposed in Transunion's opposition papers. Absent objection, the court orders Transunion to comply with these production request.

*2. Requests for Production Nos. 6 & 12*

In Request for Production No. 6 the plaintiff seeks copies of all judgments, court opinions, complaints, and consent orders concerning Transunion's practices under the FCRA in or after the year 1997. Contrary to Transunion's objection, this request is not overbroad, vague, ambiguous or unduly burdensome; nor is the requested information not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff's request is reasonably limited as to scope and time. The material sought is clearly relevant to the state of mind with which Transunion acted. It is also relevant to whether Transunion alleged statutory violations occurred after it had actual notice that its practices were actionable. While it may be burdensome to require Transunion to compile and permit discovery of the various legal complaints and judgments against it from 1997 to the present, surely these documents are not so voluminous that it is an unreasonable or unfair burden for defendant to shoulder.

In Request No. 12, the plaintiff requests formal and informal complaints, demands, or settlements concerning Transunion's furnishing or reporting information about an individual on someone else' credit file, involving identity theft. While the court concludes that it is permissible to permit discovery into formal complaints filed against Transunion regarding identity theft, it would be improper for the court to allow the production of informal documents containing sensitive information of third parties. Accordingly, Transunion is ordered to produce all judgments, court opinion and orders, complaints, consent orders, and non-confidential settlement agreements involving itself and identity theft matters that are of *public record.*

*3. Request for Production No. 16*

*3 Plaintiff also seeks financial material from Transunion including, all documents in and since January 2001 showing Transunion's net worth. Transunion has agreed to provide this information under seal with the Court to be held pending the disposition of a motion for summary judgment and/or directed verdict. Transunion's objection as to this request is not unreasonable and, therefore, is sustained. The court orders that Transunion shall produce this material under seal to be held pending a motion for summary judgment and/or directed verdict. Transunion shall provide this information to the plaintiff within one week after the court rules on any and all dispositive motions. Thereafter, the plaintiff is free to use such information at trial.

*4. Requests for Production Nos. 11, 17, 18, & 19*

Transunion contends that the court should strike these requests because the plaintiff has failed to make such a claim in this action. Transunion states that it should not be required to produce these documents because the plaintiff's information was properly sent to one of the entities in question. The plaintiff contends that these requests relate to Transunion's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

furnishing information to entities which had no permissible purpose. In addition, the plaintiff states that questions remain as to other entities which allegedly had no permissible purpose. The court orders that Transunion produce these documents. Moreover, Transunion has completely failed to substantiate its original objection to producing these documents and is not free to raise in its brief-almost as an afterthought-entirely new objections which it did not assert earlier. Davis v. Fender, 650 F.2d 1154, 1160 (9th Cir.1981); Eureka Financial Corp. v. Hartford Act. and Index. Co., 136 F.R.D. 179 (E.D.Cal.1991).

### III. TRANSUNION'S MOTION FOR PROTECTIVE ORDER

The plaintiff seeks a response to Interrogatories Nos. 14, 15, 16, & 18 as well as the production of documents corresponding to Request for Production No. 3. Transunion contends that its resistance to answering these interrogatories and producing the requested documents is based upon issues of confidentiality and "serious and substantial business concerns to avoid unfair competitive advantage in the industry." Accordingly, Transunion moves the court to enter a protective as to the discovery material in question.

A court need not grant a protective order unless it is satisfied that the order is being sought for an actual trade secret or confidential business information and that there is good cause for the protective order. Rule 26(c) of the Federal Rules of Civil Procedure, which authorizes the issuance of protective orders, provides that such an order may be issued in connection with discovery necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). As a prerequisite to the issuance of such a protective order, Rule 26(c) requires a showing of "good cause." Once good cause has been demonstrated, the burden then shifts to the party resisting the issuance of the order to show why the court should allow free dissemination of the disputed discovery materials. Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 300-01 (N.D. Ill.1993) (citation omitted).

*4 In addition, blanket protective orders, without a showing of specific harm from disclosure, are rarely justified. See e.g., Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir.1992) ("Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.") In addition, bald assertions of confidentiality, such as a statement by a movant that disclosure could harm the movant's competitive position, are insufficient for a court to enter a protective order.

In the present case, Transunion has not substantiated its assertion that the material it seeks to protect is either confidential or a trade secret. Nor has Transunion cited specific examples, or articulated reasoning, indicating it will suffer harm if the court does not enter a protective order in this case. Even assuming that the material contains confidential information, Transunion not demonstrated that it has met the good cause standard required by Rule 26(c).

It is apparent that Transunion failed to seek a protective order when the plaintiff originally sought the discovery material at issue. Transunion now attempts to circumvent the plaintiff's motion to compel and its discovery obligations as mandated by the Federal and Local Rules of Civil Procedure by seeking a protective order. The court finds that the requested information is relevant in this case. That Transunion considers documents proprietary and confidential falls short of establishing grounds for a protective order or any recognized immunity from discovery. More than a mere assertion is required to perfect an exemption or immunity from discovery. See e.g., Baxter International, Inc. v. Abbott Laboratories, 297 F.3d 544, 547 (7th Cir2002). Accordingly, the Transunion's motion for a protective order (Dkt.# 37) is DENIED and plaintiff's motion to compel as to Interrogatories Nos. 14, 15, 16, & 18 as well as the production of documents corresponding to Request for Production No. 3 is GRANTED.

### IV. TRANSUNION'S MOTION TO COMPEL

Transunion has not provided the court with a "specific verbatim listing of each of the items of discovery sought" as required by D. Conn. L. Civ. R. 9(d)(3). In addition, Transunion's memorandum also fails to follow each specification with the reasons why the item should be allowed. D. Conn. L. Civ. R. 9(d)(3). While it appears that Transunion offers some reasons for the requested material, the memorandum as a whole fails to comply with Rule 9. Accordingly, Transunion's motion to compel (Dkt.# 28) is DENIED.

### V. CONCLUSION

For the aforementioned reasons, the plaintiff's motion to compel (Dkt.# 33) is GRANTED in part and DENIED in part and Transunion's motion to compel (Dkt.# 28) and motion for protective order (Dkt.# 37) are DENIED. The defendant is

Not Reported in F.Supp.2d                                                                                           Page 4
(Cite as: 2002 WL 32114492 (D.Conn.))

ORDERED to produce the aforesaid information and material to plaintiff within twenty (20) days hereof. At the conclusion of this case, or upon application, the plaintiff is free to seek an award of attorney's fees in connection with successful prosecution of her motion to compel. See Fed.R.Civ.P. 37.

*5 This is not a recommended ruling. This is a discovery ruling and order which can be reviewed pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ.P. 6(a) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court unless reversed or modified by the district judge upon motion timely made.

IT IS SO ORDERED.

2002 WL 32114492 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Exhibit "B"

Westlaw.

2000 WL 60221                                                                                                Page 1
(Cite as: 2000 WL 60221 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

John F. BYRNES et al., Plaintiffs,
v.
EMPIRE BLUE CROSS BLUE SHIELD, Defendant.

No. 98 Civ. 8520 BSJ MHD.

Jan. 25, 2000.

MEMORANDUM & ORDER

DOLINGER, Magistrate J.

*1 Plaintiffs are former employees of the defendant Empire Blue Cross Blue Shield. They have sued under the Employee Retirement Income Security Act, 29 U.S.C. § 1101 et seq., challenging the denial by defendant of certain life insurance benefits allegedly promised to them.

At the tail-end of discovery, defendant has applied to the court for a protective order requiring that plaintiffs' counsel refrain from any public disclosure of eight documents produced to plaintiffs in the course of discovery. The requested relief would prohibit plaintiffs from using the documents or their contents for any purposes other than this litigation, and would also prevent the public filing of complete sets of their currently pending summary judgment motion papers because those papers attach copies of several of the documents as exhibits and either quote from or discuss some or all of the documents.

The documents at issue consist of three heavily redacted sets of minutes of meetings of the defendant's Board of Directors, a memorandum sent to the members of the Board by the President and Chief Executive Officer of defendant, a proposed resolution of the Board concerning the retiree benefits offered to employees of the company, a page of notes made by a Board member that describe a snippet of the deliberations of the Board on this issue, a portion of an internal company memorandum referring to the financial effects of the proposed changes, and a fax cover sheet that mentions the expressed view of one Board member about whether it would be difficult to persuade the Board to adopt one proposal for a change in benefits.

1. *The Legal Standard*

The test for entering a protective order under Fed.R.Civ.P. 26(c) is "good cause." See, e.g., Dove v. Atlantic Capital Corp., 963 F.2d 15, 18-19 (2d Cir.1992); Bank of New York v. Meridien Biao Bank Tanzania, 171 F.R.D. 135, 143 (S.D.N.Y.1997). In assessing a party's application for such relief, the court must balance the demonstrated interest of the applicant in the secrecy of the information in question against not only the prejudice, if any, to the opposing party, but also the recognized federal common-law interest of the public in access to court proceedings. See, e.g., Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-99 (1978); DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir.1997), cert. denied, 522 U.S. 1049 (1998); United States v. Amodeo, 71 F.3d 1044, 1053 (2d Cir.1995). [FN1]

FN1. The standard is somewhat different where the protective order has already been entered. In such a case, even for court records, the presumption appears to shift in favor of the maintenance of such limitations as were embodied in the order, although that presumption is also rebuttable by a demonstration of extraordinary circumstances or possibly even a less demanding test, depending on the circumstances. See, e.g., Palmieri v. New York, 779 F.2d 861, 862 (2d Cir.1985); Martindell v. Int'l Tel & Tel. Corp., 594 F.2d 291, 296 (2d Cir.1979). In this case we do not face a preexisting order. Accordingly, to the extent that the order it seeks would preclude public access to certain filings, defendant bears the burden of justification.

Since the articulated public interest is in court proceedings, the weight of the interest varies depending upon the role the information in question plays in the adjudicative process. At one end of the spectrum is information produced to a litigant in discovery. Most discovery, including document production, typically takes place privately. Moreover,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

given the liberal standards that govern discovery, it is often the case that much of the information actually turned over has little or no significance for the resolution of the claims and defenses or other issues presented to the court in the course of the litigation. *See, e.g., Amodeo,* 71 F.3d at 1048. For these reasons, the public interest in access to discovery materials is recognized as generally of a limited order, although most courts have held that the producing party still has the burden of demonstrating good cause for preventing public access to discovery materials. *See, e.g., Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 37 (1984); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 944-45 (7th Cir.1999) (citing cases); *In re Agent Orange Product Liability Litig.,* 821 F.2d 139, 145-47 (2d Cir.), *cert. denied sub nom. Dow Chem. Co. v. Ryan,* 484 U.S. 926 (1987). In contrast, the public interest in access to the proceedings of the court is a central and compelling policy consideration, *see, e.g., Amodeo,* 71 F.3d at 1048, and that policy dictates that the party seeking a protective order must satisfy a more demanding standard to justify sealing portions of trials, other court hearings or papers filed with the court, including motion papers. *E.g., id.; Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 27 (2d Cir.1994); *United States v. Myers (In re Nat'l Broadcasting Co.),* 635 F.2d 954, 952 (2d Cir.1980).

**\*2** For guidance, we look to the most recent and extensive elaboration of these principles by the Second Circuit in *United States v. Amodeo,* 71 F.3d at 1048-51. The Court there vacated a partial unsealing order for a report that had been directly submitted to the District Court by a court-appointed investigative officer and initially sealed. In doing so the Court of Appeals acknowledged the presumption of public access to "judicial documents". *See id.* at 1047, 1048 (citing *United States v.. Amodeo,* 44 F.3d 141, 146 (2d Cir.1995)). As explained by the circuit court, that presumption "is based on the need for federal courts ... to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* at 1048. In its view, "monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior." *Id.; see also id.* (quoting *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 161 (3d Cir.1993)).

Nonetheless, the presumption of access is not irrebuttable. As the Court noted, not all statements or documents generated in litigation are relevant to the exercise of judicial authority. *Id.* Moreover, public disclosure of some of those statements and documents could have unjustifiably adverse consequences not only for parties but for non-participants in the litigation. *Id.* at 1050-51. The court therefore concluded that, in the balancing of the competing interests of access and confidentiality, the weight to be given to the public interest in access should depend on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. And it further noted that even if the documents were sufficiently germane to the judicial process to trigger a significant presumption of access, that presumption could be overcome by a sufficiently compelling showing of a need for confidentiality. *Id.* at 1050-51.

In determining the weight to be given to public access, the Court in *Amodeo* suggested ranking the documents along a continuum ranging from those at the heart of the judicial process to those with little or no relationship to that process. Thus, it noted that the public has an "especially strong" interest in access to materials received in evidence at trial, *id.* at 1049 (quoting *United States v. Salerno (In re CBS, Inc.),* 828 F.2d 958, 960-61 (2d Cir.1987); *United States v. Myers (In re Nat'l Broadcasting Co.),* 635 F.2d 945, 952 (2d Cir.1980)), and that any materials that formed the basis for a court's adjudication--even if on motion--should also be accessible absent "exceptional circumstances." *Id.* at 1049 (quoting *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982), *cert. denied sub nom. City Trust v. Joy,* 460 U.S. 1051 (1983)).

Documents filed with the court and arguably pertinent to an adjudication should, according to *Amodeo,* be placed in the middle of the continuum, and "the weight to be accorded the presumption of access must be determined by the exercise of judgment ." *Id.* at 1050. Of particular relevance to judging the weightiness of the asserted need to protect this category of court-filed documents is the Court's observation about the role of "tradition"--that if the documents in question "are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.*

**\*3** At the far end of the spectrum are documents that "play only a negligible role in the performance of Article III duties." For these documents the weight of the presumption of public access is "low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.*

Finally, the court noted that certain documents-- specifically, those that are involved in the litigation

only as the subject of discovery--"lie entirely beyond the presumption's reach and 'stand[ ] on a different footing than ... a motion filed by a party seeking action by the court' ... or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." *Id.* (quoting *FTC v. Standard Finan. Mgt. Corp.*, 830 F.2d 404, 408 (1st Cir.1987); *Bank of America Nat'l Trust & Savings Assoc. v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir.1986)). In making this comment, the Court did not explicitly indicate whether a party seeking to preclude public access to documents produced in discovery must still make some showing of good cause, however diluted, or whether the burden is on the proponent of access to justify a refusal to seal, or whether the court has broad discretion to decide the matter without allocating a burden of persuasion to either side.

The ambiguity of *Amodeo* in this respect may be somewhat clarified by noting that the Second Circuit had previously and squarely concluded that a protective order sealing discovery materials must be supported by a showing of good cause, *see Agent Orange*, 821 F.2d at 145, and that the Court in *Amodeo* did not even mention that decision, much less purport to reject its analysis. Moreover, we note that the conclusion in *Agent Orange* with regard to this question is consistent with the conclusions of virtually all of the other circuits that have addressed the issue. *See. e.g., San Jose Mercury News*, 187 F.3d 1096, 1103 (9th Cir.1999); *Citizens First Nat'l Bank*, 178 F.3d at 944 (7th Cir.); *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406, 1411 (D.C.Cir.1996); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484-85 (3d Cir.1995); *Beckmann Indus. Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir.), *cert. denied sub nom. Int'l Ins. Co. v. Bridgestone/Firestone, Inc.*, 506 U.S. 868 (1992); *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir.1991); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 788-90 (1st Cir.1988); *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 162-64 (6th Cir.1987); *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985).

In this case defendant seeks in effect two forms of relief. The first would preclude the public disclosure or other non-litigation use of specified documents turned over to plaintiffs in discovery. The second would preclude the public filing of unredacted summary judgment motion papers insofar as those papers make reference to, describe or quote from the identified documents or annex them as exhibits. We address the second request first, and determine that defendant has failed to demonstrate adequate cause to seal any parts of the motion papers filed with the court in connection with the pending summary judgment motion. To the extent that the defendant seeks to protect those documents obtained through discovery that have not been included or referred to in the motion papers, defendant's motion is granted.

*2. Sealing the Motion Papers*

*4 Our first step in balancing the competing interests leads us to consider the nature of the materials in dispute and the demonstrated interest of the movant in protecting their confidentiality. In this case defendant amply demonstrates that it has zealously protected the minutes of the meetings of its Board, and, we may infer, that it has equally protected other documents that recite or describe portions of those minutes. (Affirmation of Peter Liria, Jr., Esq., dated Dec. 19, 1999, at ¶ 5-18). Nonetheless, while the maintenance of confidentiality is a necessary precondition for demonstrating "good cause", by itself it is not a sufficient condition. *See, e.g., Bank of New York*, 171 F.R.D. at 143. At the very least, the proponent of a protective order must establish some meaningful prospect of injury absent the requested relief. *See, e.g., id.; Gelb v. American Tel. & Tel. Co.*, 813 F.Supp. 1022, 1034 (S.D.N.Y.1993) (quoting *John Does I-VI v. Yogi*, 110 F.R.D. 629, 632 (D.D.C.1989)); *Cuno Inc. v. Pall Corp.*, 117 F.R.D. 506, 508 (E.D.N.Y.1987).

Defendant proffers an affidavit that, as noted, offers considerable factual detail as to the lengths to which the company goes to protect the minutes of its Board. On the other hand, it offers little in the way of specific evidence to support its contention that disclosure of the unredacted portions of the eight documents in question would pose a meaningful threat of competitive or other harm to the company. The information contained in the documents at issue is, for the most part, unremarkable, readily available from other sources and in part quite stale. The only point made by defendant that requires some further consideration is its contention that disclosure of even a small snippet of information concerning the decision-making process of the Board of Directors on the benefits issue would significantly inhibit the future course of free deliberations and candid discussion by Board members since they could no longer rely on the assumption that their comments would be maintained in confidence. (Liria Aff. at ¶ 7).

This suggestion fails for several reasons. First, the confidentiality of the discussions pertinent to this lawsuit has already, and inevitably, been breached,

since defendant was required to produce the relevant portions of the Board minutes and related documents to plaintiffs, who are obviously vitally interested in their contents by virtue of the claims that they are advancing in this lawsuit. [FN2] Second, although it is possible that in some circumstances the disclosure of advice rendered to decision-makers or their pre-decisional discussions might inhibit the free flow of future discussions, *see, e.g., Flynn v. Goldman Sachs & Co.*, 1993 WL 362380, at *1 (S.D.N.Y. Sept. 16, 1993); *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 231 (S.D.N.Y.1987) (citing cases); *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249, 250-51 (D.D.C.1970), *aff'd mem.*, 479 F.2d 920 (D.C.Cir.1971), this type of argument must be viewed with some skepticism. *E.g., University of Pennsylvania v. EEOC*, 493 U.S. 182, 188-95 (1990). Such skepticism is particularly warranted in the absence of any compelling reason to suggest that the type of discussion in question is likely to be discouraged by the public availability of the particular documents at issue. *See, e.g., Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir.1992); *In re Salomon Inc. Secs. Litig.*, 1992 WL 350762, at *4 (S.D.N.Y. Nov. 13, 1992); *cf. Burke*, 115 F.R.D. at 228-29 (quoting *Mercy v. County of Suffolk*, 93 F.R.D. 520, 522 (E.D.N.Y.1982)).

> FN2. As noted, defendant contends that its competitors also are interested in the contents of those documents, and if they could learn their details, would be materially advantaged in their competitive posture. (Liria Aff. at ¶ 20). As we have noted, this conclusory assertion is unsupported either by the evidence in the record, which is threadbare or nonexistent on this point, or by our review of the documents in question.

*5 Here there is nothing in the redacted versions of the documents that is of such evident sensitivity that public disclosure of those documents is likely to deter members of defendant's Board from full and robust assessment of policy questions facing the company in the future. Indeed, the exigencies of managing a major corporate business and the consequent need for candid assessment by the decision-makers of key issues are not at all likely to be trumped by the fear that on rare occasions a limited extract of a few Board minutes may be disclosed to the public if the issue discussed becomes relevant to litigation and is thus subject to discovery. Such a scenario is still less likely in view of the fact that denial of protection in this case for portions of a court filing is based on the court's detailed assessment of the contents of the documents and the weak evidentiary showing proffered by the defendant. Plainly, in cases in which the documents are shown to be more sensitive, protection is far more likely to be extended. Thus, we view the argument that sealing is needed here to avoid future deterrence of internal discussions as entirely unproven. [FN3]

> FN3. If anything in this scenario might deter future discussion within the corporation, it is far more likely to be the prospect of disclosure to the opposing litigant, rather than to the public, but even defendant does not suggest that that fear would justify withholding relevant documents from the plaintiffs.

Looking next to the taxonomy of documents under *Amodeo*, it is evident that the documents in question in this case rest in the center of the spectrum insofar as they are incorporated in the parties' summary judgment motion papers. Since the District Court has not yet acted on that motion, we cannot say with certainty that those extracts or exhibits will form the basis of its adjudication, but they are plainly not so unrelated to the issues presented by plaintiff's claims as to be predictably irrelevant to that forthcoming adjudication. *Compare In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1342 n. 3 (D.C.Cir.1985) (holding that where court "denied the summary judgment motion, essentially postponing a final determination of substantive legal rights," the "public interest in access to such documents is not as pressing"). Moreover, summary judgment motion papers are required to be filed with the court and are usually filed publicly, that is, without sealing.

In sum, although we recognize that the parade of horrors suggested by defendant is not beyond all possibility of realization, we see no basis for inferring any reasonable likelihood of an untoward effect on the future operations of the company. Under the governing standards, therefore, we think it evident that defendant has not shown good cause to impose the extreme measure of requiring the sealed filing of unexpurgated motion papers despite the fact that some of those motion papers allude to or describe portions of the decisional process before the Board on the question of whether to reduce benefits offered to the plaintiffs and others.

3. *Protection of Discovery Documents*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Whether to adopt some form of protection for the documents as discovery materials is a closer question, since, as noted, there is a decidedly less acute public interest in access to the product of discovery as such. Nonetheless, the governing Second Circuit authority appears to compel granting defendant's application for a protective order with respect to the documents themselves, except to the extent that they are included in the motion papers on the pending summary judgment motion or may be introduced or alluded to at any forthcoming trial. Of particular pertinence, as we have observed, the Second Circuit in *Amodeo* indicated that documents exchanged in discovery are not subject to the presumption of access because such production is not directly related to the adjudicative function. 71 F.3d at 1050.

*6 In this case we need not definitively decide what impact *Amodeo* may have on the analysis in *Agent Orange*, which indicates that good cause must be shown to order sealing of discovery materials. Even if we conclude that good cause must be shown, under *Amodeo* there is no presumption against sealing, and thus even a minimal showing of possible harm from disclosure should trigger a sealing order unless an interested party, whether litigant or non-litigant, can demonstrate a legitimate interest in preventing such sealing.

In this case, as noted, defendant offers a very thin and speculative basis for sealing, but, absent any presumption against sealing, it should suffice for the limited purpose of protecting discovery materials as such. We reach this conclusion because plaintiff offers no meaningful justification for public dissemination of the documents to the extent that they are not included in or described in the parties' motion papers and will not be alluded to at any trial.

According to plaintiffs, their interest in disclosing the documents is based on the light that those documents may shed on the corporate decision concerning reduction in certain employee benefits, which is the issue that this litigation is designed to address. To the extent that the documents contain anything pertinent to that issue, such materials have presumably found their way into the summary judgment motion papers or will be included in or used at trial, and thus will be publicly available. If there are any segments of the redacted documents that have been ignored and will continue to be ignored in the litigation, we may safely infer that they have no meaningful role to play in elucidating whatever points plaintiffs may wish to convey about the management of the company. At the very least plaintiffs have made no effort on the current sealing motion to explain why such remaining document extracts, if there be any, should be made available to the public given even the concededly minimalist showing made by the defendant.

In sum, although the practical effect may be small in view of our ruling with respect to the motion papers, we will adopt a limited form of protection for the documents themselves. Thus, plaintiffs and their counsel will be directed to use those documents solely for purposes of this litigation and to refrain from the disclosure of their contents other than in the normal process of presenting their case to the court and preparing witnesses. In this manner, we believe that if any of the segments produced to plaintiff contain information that is so irrelevant to the issues in this case as to not merit mention in the motion papers or at trial, that information will remain undisclosed to the world at large. [FN4]

> FN4. Although of questionable practical effect, this is the limit of any relief that may be justified based on the evanescent showing proffered by defendant.

*CONCLUSION*

For the reasons noted, defendant's motion for a protective order is denied except to the extent noted.

2000 WL 60221, 2000 WL 60221 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Exhibit "C"

**Westlaw.**

2001 WL 789310                           Page 1
(Cite as: 2001 WL 789310 (D.Conn.))

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

REPUBLIC CREDIT CORP. I, Plaintiff,
v.
Anthony D. AUTORINO, et al., Defendants.

No. CIV399CV286PCD.

June 1, 2001.

RULINGS ON DEFENDANT AUTORINOS
MOTION TO FILE UNDER SEAL AND MOTION FOR STAY OR
FOR PROTECTIVE ORDER

DORSEY, Senior District J.

*1 Defendant moves to file under seal. The motion is denied. Defendant moves for a stay. The motion is denied. In the alternative, Defendant moves for a protective order. The motion is granted in part.

I. BACKGROUND

Defendant, Anthony D. Autorino, is a Hartford businessman. The suit against him arises out of an alleged failure to repay a promissory note to Plaintiff, Republic Credit Corporation. [FN1] Defendant is also alleged to have converted the collateral that secured the loan, namely, shares of stock in the company he owned.

> FN1. Republic Credit Corporation replaced the previous plaintiff, Federal Deposit Insurance Corporation, on August 21, 2000.

II. MOTION TO FILE UNDER SEAL

Defendant moves for an order to file under seal an attached motion to stay or for a protective order and its accompanying memorandum of law. In those documents, he asserts that he is under a criminal investigation by the U.S. Attorney for fraud, misrepresentation, and conversion and that these claims center around the same facts as the present lawsuit. He asserts he is under immediate threat of indictment and that public disclosure of this investigation "will promote public scandal." He also asserts that there is "little to no public interest in these facts as they currently exist." Accordingly, he argues that the damage to his "right to personal privacy" and to his personal and professional reputation outweigh any need to make the attached motion and memorandum open for public access.

Both the common law and the First Amendment protect the public's right of access to court documents. *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 597-98 (1978). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 598-99. Defendant has the burden to overcome the presumption in favor of public access to the records of judicial proceedings. *See United States v. Amodeo (In re Newsday, Inc.),* 71 F.3d 1044, 1047 (2d Cir.1995). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. One countervailing factor to be balanced against the presumption is the privacy interest of the person resisting disclosure. *Id.* at 1050-51. This factor includes the degree to which the subject matter is traditionally considered private rather than public and the nature and degree of the injury that would be caused by disclosure. *Id.* at 1051.

Courts have the power to ensure that their records are not used to "promote public scandal." *Id.* Defendant seizes upon this to argue that public knowledge that he is under criminal investigation by the U.S. Attorney would "promote public scandal." Defendant, however, pulls these words out of a larger context. In discussing a "public scandal," the Second Circuit was not so much referring to whether public access to the information would be a social burden on the movant as to whether it would "cater to a morbid craving for that which is sensational and impure," *id.* (quotation marks and citation omitted), and whether the court file would "serve as reservoirs of libelous statements for press consumption," *id.* (citation omitted).

*2 "The possibility of 'adverse publicity' in and of itself does not justify sealing." *Vassiliades v. Israely* 714 F.Supp. 604, 606 (D.Conn.1989). "[A]dverse or otherwise unwanted publicity ... is simply one of the costs attendant to ... an action." *See id.* Defendant's failure to overcome the presumption is further reinforced where the details of the alleged criminal activity are already fully available through an inspection of the civil complaint in the present case and where the details of any ensuing criminal prosecution would themselves be available for public access.

III. MOTION TO STAY

Defendant moves to stay the proceedings until the U.S. Attorney's final determination in his criminal investigation [FN2]. He argues a stay is necessary to protect his right against self-incrimination under the Fifth Amendment.

> FN2. Defendant, in filing his motion, failed to comply with the Supplemental Order. Non-compliance is excused on this occasion.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.,* 299 U.S. 248, 254 (1936). Whether to stay civil proceedings pending the resolution of criminal matters is within the discretion of the trial court. *See United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1970); *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (it was within "sound discretion" of district court to grant a stay until U.S. Attorney declined to prosecute). A district court may weigh several factors: the timeliness of the motion; the extent to which the issues in the criminal case overlap with those presented in the civil case; the status of the criminal case, including whether the defendants have been indicted; the plaintiff's interest in proceeding expeditiously with the litigation as balanced against the prejudice to the plaintiff if delayed; the private interests of and burden on the defendant; the convenience to the courts; the interests of persons not parties to the litigation; and the public interest. *See United States v. Certain Real Prop. & Premises Unknown as: 4003-4005 5th Ave,* 55 F.3d 78, 84 (2d Cir.1995) ( "how and when the privilege was invoked"); *Gala Enters., Inc. v. Hewlett Packard Co.,* 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996); *Arden Way Assocs. v. Boesky,* 660 F.Supp. 1494, 1497 (S.D.N.Y.1987).

Defendant asserts that the facts underlying the criminal investigation will be at the very center of questioning by Plaintiff's counsel and therefore the civil case against him should be stayed. The stay is denied. The above factors weigh against granting a stay.

First, the timing of the motion is late, coming over two years after Defendant was served and near the close of discovery. [FN3] Defendant offers no explanation or justification for this delay.

> FN3. Discovery is scheduled to be completed by June 8, 2001.

Second, in contrast to a grand jury indictment, Defendant merely asserts he is under a criminal investigation. A stay is not normally appropriate where an indictment has not been returned against the civil litigant. *See United States v. Private Sanitation Indus. Assh,* 811 F.Supp. 802, 805 (E.D.N.Y.1992); *see also United States v. Dist. Council of the United Bhd. of Carpenters,* 782 F.Supp. 920, 925 (S.D.N.Y.1992); *Trs. of the Plumbers Natl Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995) ("stays will generally not be granted before an indictment is issued"). Even when under indictment, stays have nonetheless still been denied. *See, e.g., Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118 (S.D.N.Y.1980).

*3 Third, the interests of Plaintiff are served by the expeditious resolution of this matter. This case comprises more than just Defendant's deposition. There is no meritorious reason why the entire rest of the case should be affected, as opposed to just his deposition. The Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of [related] criminal proceedings." *Kashi,* 790 F.2d at 1057 (quotation marks and citation omitted). This is even more so when the case against Defendant has apparently proceeded for over two years without infringing his Fifth Amendment rights.

Fourth, the interests of the public, both financial and otherwise, are served by the expeditious resolution of this matter. Fifth, the interests of the court militate against the granting of the stay. *Gala Enters., Inc.,* 1996 WL 732636, at *2 ("[t]he convenience of the courts is best served when motions to stay

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

proceedings are discouraged") (quotation marks and citation omitted). Sixth and as an additional factor, it is not clear how long the case would be stayed. Defendant asserts that because of expiring statutes of limitations, a decision by the U.S. Attorney "will be forthcoming shortly." No indication is made whether this means five weeks or five years [FN4]. Only the private interests of and burden on Defendant weigh against the granting of the stay [FN5].

FN4. Nor does Defendant note the criminal statutes at issue or their applicable statutes of limitation periods.

FN5. There is no assertion by either party of relevant interests of persons not parties to the litigation, so this factor plays no significant role. As to the extent to which the issues in the criminal case overlap with the those presented in the civil case, this factor also plays no significant role. As a preliminary matter, it would seem to be a factor that might only weigh against a stay, not in favor of one. PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. 201, 203 (1989); but see Trs. of the Plumbers Natl Pension Fund, 886 F.Supp. at 1139. Furthermore, if anything this factor would partially weigh against a stay as the issue of whether Defendant failed to repay a promissory note does not overlap with the potential criminal allegations arising from allegedly converting the collateral that secured the loan.

IV. MOTION FOR PROTECTIVE ORDER

In the alternative, Defendant moves for a protective order barring his deposition. He offers the same arguments as for a stay. The problem is that with deadline for the completion of discovery about a week away, it is unlikely that much other than his deposition remains. Also, given Defendant's alleged central role in the underlying financial dealings, it is unlikely that Plaintiff could proceed on to trial without this testimony. The net effect of barring his deposition would be the same as staying the whole case. For the same reasons as above, this is rejected.

Defendant's request for a protective order is granted but in a different form. [FN6] "[S]pecial consideration must be given to the plight of the party asserting the Fifth Amendment." Certain Real Prop., 55 F.3d at 83 (quoting SEC v. Graystone Nash, Inc., 25 F.3d 187, 194 (3d Cir.1994)). "[T]he court should explore all possible measures in order to select the means which strikes a fair balance and accommodates both parties." Id. at 84 (quotation marks, internal ellipses, and citation omitted). Instead of a protective order barring the deposition altogether, this court grants a protective order barring the use of Defendant's deposition responses in any criminal proceeding. See SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C.Cir.1980) ("[i]n some ... cases, ... the courts may adequately protect ... the private party by merely ... entering an appropriate protective order"); see also FED. R. CIV. P. 26(c); see, e.g., United States v. Parcels of Land, 903 F.2d 36, 44 (1st Cir.1990). The parties, counsel, and the court reporter are barred from discussing the contents of the deposition with anyone outside this civil litigation. The protective order may not apply to criminal proceedings for perjury, pending in camera review.

FN6. The protective order shall apply if and when the deposition is rescheduled.

*4 The protective order presumptively applies to the entire deposition. Upon appropriate motion by the U.S. Attorney, Defendant shall be required to put forward the portions of the deposition to which he does not assert his Fifth Amendment right. The protective order does not free Defendant from his obligation to support his assertion of Fifth Amendment privilege as to the remaining portions of the deposition with specific evidence if so challenged by the U.S. Attorney. See Certain Real Prop., 55 F.3d at 83 ("a litigant claiming the privilege is not freed from adducing proof of a burden which would otherwise be his") (quotation marks and citation omitted).

V. CONCLUSION

Defendant's motion to file under seal, (Dkt. No. 110), is denied. Defendant's motion for stay or for protective order, (Dkt. No. 112), is denied in part and granted in part.

SO ORDERED.

2001 WL 789310, 2001 WL 789310 (D.Conn.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works